THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOREEN MULLADY, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 1:26-cv-00573-SAG |
| | * | |
| RUSSELL VOUGHT, in his | * | |
| official capacity as Director of the United | * | |
| States Office of Management and Budget, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

**\*\*\*\*\*\*\*\*\*\***

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
AND PLAINTIFFS' REQUEST FOR A STAY PURSUANT TO 5 U.S.C. § 705**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................5

      A.  Executive Order 14151 ..............................................................................5

      B.  Procedural History - Plaintiffs and this Action.........................................8

III.  THE LEGAL STANDARD....................................................................................10

IV.   ARGUMENT ........................................................................................................11

      A.  Denial of the PI Motion is Warranted by Plaintiffs' Delay ......................11

      B.  The Preliminary Injunction Factors Applied ...........................................12

            1.  The Plaintiffs Are Unlikely to Succeed on the Merits of their Claims
                Because the Civil Service Reform Act Precludes This Court's
                Jurisdiction Over the Claims..............................................................12

                  a.  The *Thunder Basin* Framework at Both Steps Supports CSRA
                      Channeling Here ..........................................................................14

                        1.  Congress's Intent to Preclude District Court Jurisdiction Is
                            Clear..................................................................................14

                        2.  The Claims Are of The Type Intended For Review Within
                            the CSRA's Structure........................................................20

                              a.  Channeling Will Not Foreclose All Meaningful Judicial
                                  Review .........................................................................20

                              b.  Plaintiffs' Claims Are Not Wholly Collateral to the
                                  CSRA's Review Provisions .........................................22

                              c.  The Claims Are Not Byond the MSPB's Expertise.....23

      C.  The Plaintiffs Are Unlikely to Succeed on the Merits of the Due Process and
          APA Claims ..............................................................................................23

            1.  The Asserted Property and Liberty Interests Due Process Claims ......23

            2.  The Liberty Interest Claim................................................................26

            3.  The APA Claims............................................................................. 27

D. Plaintiffs Do Not Face Irreparable Harm.............................................................31

E. Balance of Equities and the Public Interest Disfavor A Preliminary Injunction
...............................................................................................................................32

F. Plaintiffs Should Be Required to Post A Bond If Granted Relief...................33

CONCLUSION............................................................................................................ 33

CERTIFICATE OF SERVICE................................................................................... 34

**TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Alder v. Tennessee Valley Auth.,*
  43 F. App'x 952 (6th Cir. 2002) ................................................................. 19-20

*Axon Enterprise, Inc. v. Federal Trade Commission*,
  598 U.S. 175 (2023) ................................................................. 14, 15, 20, 21

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972) ................................................................. 24, 27

*Benisek v. Lamone,*
  585 U.S. 155 (2018) ................................................................. 11

*Casa de Maryland*, *Inc. v. Wolf,* 486 F.Supp.3d
  782 (D.Md. 2020) ................................................................. 10

*Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985) ……………………………….. 24

*Dewhurst v. Cnty. Aluminum Co.*,
  649 F.3d 287 (4th Cir. 2011) ................................................................. 1

*Disney Enters.*, *Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ................................................................. 31

*Elev8 Baltimore, Inc. v. Corporation for National and Community Service*,
  804 F.Supp.3d 524 (2025) ................................................................. 15

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ................................................................. 16, 21, 22

*Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ................................................................. 29, 30

*Frazier v. Prince George's Cnty.*,
  86 F.4th 537 (4th Cir. 2023) ................................................................. 10

*Gibbs v. Brady*,
  773 F. Supp. 454 (D.D.C. 1991) ................................................................. 27

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ................................................................. 24

*Granny Goose Foods*, *Inc. v. Brotherhood of Teamsters*,
  415 U.S. 423 (1974) ................................................................. 1

*Hindes v. FDIC*,
  137 F.3d 148 (3d Cir. 1998) ................................................................. 28

*Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*,
  566 F.3d 138 (4th Cir. 2009) ................................................................. 24

*Jackler v. Department of Justice*,
No. DA-0752-25-0330-I-1 ............................................................................................. 16

*Kalispel Tribe of Indians v. U.S. DOI*,
999 F.3d 683 (9th Cir. 2021) ........................................................................................ 29

*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949) ...................................................................................................... 29

*Lundeen v. Mineta*,
291 F.3d 300 (5th Cir. 2002) (citations omitted) ......................................................... 28

*Lydo Enters.*, Inc. *v.* City of *Las Vegas*,
745 F.2d 1211 (9th Cir. 1984) ...................................................................................... 11

*Maryland v. AmeriCorps*,
785 F.Supp.3d 68 (D.Md. 2025) ................................................................................... 28

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ...................................................................................................... 25

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ...................................................................................................... 10

*Taylor v. Resolution Trust Corp.*,
56 F.3d 1497 (D.D.C. 1995) .......................................................................................... 32

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .................................................................................................. 29, 30

*Munaf v. Geren*,
553 U.S. 674 (2008) ...................................................................................................... 10

*Nat'l Ass'n of Immigration Judges v. Owen*,
139 F.4th 293 (4th Cir. 2025) ................................................................. 17, 18, 21, 23

*NetChoice v. Carr*,
789 F.Supp.3d 1200 (N.D.Ga. 2025) ...................................................................... 11, 12

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................................................. 11, 32

*NLRB v. Cal. Pac. Med. Ctr.*,
991 F.2d 536 (9th Cir. 1993) ........................................................................................ 11

*Nyunt v. Chairman, Broad. Bd. of Governors*,
589 F.3d 445 (D.C. Cir. 2009) ...................................................................................... 29

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
762 F.2d 1374 (9th Cir. 1985) ...................................................................................... 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .................................................................................................... 28-29

*Perez v. Cuccinelli*,
　949 F.3d 865 (4th Cir. 2020) ............................................................................ 28

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
　575 F.3d 342 (4th Cir. 2009) ....................................................................... 11, 12

*Ren v. U.S. Citizenship and Immigration Servs.*,
　60 F.4th 89 (4th Cir. 2023) ........................................................................ 29, 30

*Sampson v. Murray*,
　415 U.S. 61 (1974) ..................................................................................... 31, 32

*Sansotta v. Town of Nagshead*,
　724 F.3d 533 (4th Cir. 2013) .............................................................................. 23

*Sciolino v. City of Newport News*,
　*Va.*, 480 F.3d 642 (4th Cir. 2007) ..................................................................... 27

*Scotts Co. v. United Indus. Corp.*,
　315 F.3d 264 (4th Cir. 2002) ............................................................................. 10

*Thunder Basin Coal Co. v. Reich*,
　510 U.S. 200 (1994) ............................................................................. 14, 15, 20

*TK Elevator Corp. Drzewiecki*,
　2025 WL 776111 (D.Md. Mar. 11, 2025) ......................................................... 31

*United States v. Fausto*,
　484 U.S. 439 (1988) ..................................................................................... 15, 19

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
　435 U.S. 519 (1978) ........................................................................................... 30

*Vitkus v. Blinken*,
　79 F.4th 352 (4th Cir. 2023) .............................................................................. 10

*W. Watersheds Project v. Salazar*,
　692 F.3d 921 (9th Cir. 2012) ......................................................................... 11-12

*Weinberger v. Romero-Barcelo*,
　456 U.S. 305 (1982) .......................................................................................... 33

*Widakuswara v. Lake*,
　No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ............................... 32

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ........................................................................................ 10, 31

*Zimbelman v. Savage,*
　228 F.3d 367 (4th Cir. 2000) ....................................................................... 26, 27

## Constitutional Provisions

U.S. Const. amend. V ............................................................................................ 16

v

**Statutes**

5 U.S.C. § 705 ................................................................ 1, 5, 6, 7, 8, 9, 10, 13, 25, 34, 35

5 U.S.C. § 706(B) ................................................................................................... 9

5 U.S.C. § 706 ...................................................................................................... 28

5 U.S.C. § 1204 .................................................................................................... 16

5 U.S.C. § 3502 ............................................................................................. 7, 8, 25

5 U.S.C. § 7701 ................................................................................................ 16, 19

5 U.S.C. § 7703 .................................................................................................... 16

5 U.S.C. § 1204 .................................................................................................... 32

28 U.S.C. § 1331 .................................................................................................. 14

**Rules**

Fed. R. Civ. P. 25 ................................................................................................... 1

Fed. R. Civ. P. 65 ......................................................................................... 1, 10, 33

**Regulations**

5 C.F.R. § 351.402 ........................................................................................... 6, 7, 9

5 C.F.R. § 351.402 to ........................................................................................... 28

5 C.F.R. § 351.402(b) ........................................................................................ 8, 9

5 C.F.R. § 351.901 ............................................................................................... 19

**Other**

Executive Order 14151, 90 Fed. Reg. 8339 (June 20, 2025) ....................................... 5

Executive Order 14215, 90 Fed. Reg. 10447 ........................................................... 12

In accordance with Rule 65 of the Federal Rules of Civil Procedure and Local Rule 105.2, the Defendants, Russell Vought, Director of the United States Office of Management and Budget and as Acting Administrator of the United States Agency for International Development, Scott Kupor, Director of the Office of Personnel Management, Henry J. Kerner, Acting Chair of the Merit Systems Protection Board, Todd Blanche[1], Acting United States Attorney for the United States Department of Justice, Marco Rubio, Secretary of the United States Department of State, Linda McMahon, Secretary of the United States Department of Education, Markwayne Mullin, Secretary of the United States Department of Homeland Security, by their attorneys, Kelly O. Hayes, United States Attorney for the District of Maryland, and undersigned counsel, submit the following memorandum in support of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction (ECF No. 16, the "Motion").

## I. <u>INTRODUCTION</u>[2]

The grant of a preliminary injunction is an extraordinary remedy never awarded as of right. *Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). Accordingly, relief may be awarded only upon a clear showing that the plaintiff is entitled to the remedy. *Id.* The plaintiff bears the burden of proving the requirements for such relief by clear and convincing evidence. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 441 (1974). For decades Congress has expressly authorized federal agencies to engage in reductions in force. In this matter,

---

[1] Todd Blanche, the Acting Attorney General of the United States, has succeeded Pamela J. Bondi, the former Attorney General for the United States Department of Justice. Markwayne Mullin has succeeded Kristi Noem as the Secretary of the United States Department of Homeland Security. Both men are substituted automatically as the named defendants for their respective agencies pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the docketed pleadings and exhibits filed in this case by the plaintiffs, which exhibits are incorporated herein by reference, shall refer to the CM/ECF numbers assigned to the pleading and exhibit. Citations herein to "<u>Mem.</u>" are to the April 24, 2026 Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 16-2.

the plaintiffs, former employees of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the United States Agency for International Development ("USAID"), the Department of Education, the Department of Homeland Security ("DHS"), and the Department of State ("DOS") (collectively, "the Agencies"), respectively, have moved for a stay and a preliminary injunction to effectively reverse a personnel action taken by the Agencies and restore the plaintiffs to their "positions, pay, benefits and employment status" that existed before the reductions in force at issue. They also seek to enjoin the Agencies from further action against the plaintiffs in reliance on the reductions in force absent order of the Court. As explained below, and more fulsomely in the Argument section of this Opposition, the plaintiffs have not carried their burden for the relief sought because they have not made a clear showing of a substantial likelihood of success on the merits of their twin claims. Although the failure to satisfy the substantial-likelihood-of-success element of the test for issuance of a preliminary injunction relieves a court of the need to consider other factors informing the issuance of injunctive relief, the plaintiffs in this case have failed to establish another important element of the test; they have not shown that they will be harmed irreparably without injunctive relief and so their bid for relief must be denied.

As a threshold matter, binding legal precedent mandates that this Court lacks subject matter jurisdiction to grant injunctive relief on the plaintiffs' claims. This case belongs not here but in the forum established by Congress in the Civil Service Reform Act ("CSRA") because the crux of the plaintiffs' claims is tethered to the challenged employment action. As the case law makes plain, adequate judicial review does not usually demand a district court's involvement and that principle holds true here. Forty-eight years ago, Congress, in enacting the CSRA, created a then new framework for evaluating adverse personnel actions against "employees" and "applicants for employment" to rectify the hodgepodge of statutes and rules pertaining to the civil service system.

2

The CSRA governs the protections and remedies applicable to a myriad of personnel actions, including the availability of administrative review before the Merit Systems Protection Board and judicial review in the Federal Circuit Court of Appeals.  It is designed to preclude district court jurisdiction in favor of the statutory review scheme.  Although the plaintiffs maintain that their claims turn on the "unlawfulness" of the Agencies' actions and are thus rooted in alleged constitutional and statutory violations, including the Administrative Procedure Act ("APA"), Pls. Mem. at 23, no amount of wish-casting and artful use of descriptors can hide that preclusion of district court jurisdiction applies and that the CSRA controls even in cases where the employee asserts constitutional challenges to federal laws or federal action.  There is no basis for departure from this principle.  The remedy the plaintiffs seek principally – reinstatement to their jobs – is the remedy available to them through the statutory review process.

Even if this Court does not heed the teachings of years of precedent on the matter of the CSRA and district court preclusion, as regards their constitutional claims, the plaintiffs fare no better in establishing a substantial likelihood of success on the merits of their claims.  The reduction in force actions do not violate either the Fifth Amendment's guaranty of Due Process or the APA.  The plaintiffs were afforded constitutionally sufficient notice of the personnel actions; they were advised of the essential details of the action, that is, the nature of the action being taken and the basis for same.  Their claim that they were not afforded an opportunity to be heard pre-deprivation fails to acknowledge the valuable and safeguarding process available through the statutory review scheme that does not offend the Due Process Clause.

As for their APA claims—that the actions of the Agencies violated the law and were *ultra vires*—ignores that reduction in force actions can be instituted by agencies under federal law.  The actions taken were consonant with federal law.  Neither were the reductions in force action

3

arbitrary and capricious.  Even if judicial review is permitted under the APA's highly deferential standard, the Court cannot do what the plaintiffs invite it to do, that is, substitute its judgment for that of the Agencies.  The actions at issue were the result of reasoned decision-making and conformed with the applicable statutes and regulations.

The plaintiffs also fall short in establishing that they will be harmed irreparably by the absence of injunctive relief. Though the plaintiffs state that their lives are unstable and compromised in more than one way by the absence of revenue, the case law is clear that albeit such circumstances are regrettable, it does not amount to irreparable harm.  Finally, because this case properly belongs in the CSRA forum, Plaintiffs cannot establish irreparable harm when they have an adequate remedy at law, namely, money damages that may be awarded by the Merit Systems Protection Board should Plaintiffs prevail on their claims.  Furthermore, the balance of equities and public interest weigh against granting a preliminary injunction because the government's interest in protecting taxpayer dollars and managing its internal operations is weighty and suffices to compel the denial of injunctive relief.  For the reasons enumerated above, Defendants request that the Motion be denied.  Should the Court disagree and grant injunctive relief, such relief should be tailored narrowly to that necessary to provide the plaintiffs fair redress. Relief should be accompanied by more than a nominal bond.

## II.  BACKGROUND

### A.  Executive Order 14151

On January 20, 2025, the then newly elected President issued Executive Order 14151—*Ending Radical and Wasteful Government DEI Programs and Preferencing*.  Exec. Order No. 14151,[3] 90 Fed. Reg. 8339 (Jan. 20, 2025) (hereinafter, "EO").  The EO provided, in pertinent part, that "[t]he Director of the Office of Management and Budget (OMB), assisted by the Attorney General and the Director of the Office of Personnel Management (OPM), shall coordinate the termination of all discriminatory programs, including illegal DEI and 'diversity, equity, inclusion, and accessibility' (DEIA) mandates, policies, programs, preferences, and activities in the Federal Government, under whatever name they appear." *Id.* at 8339; EO at § 2(a).  The EO further provided, in relevant part, that "[e]ach agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM, as appropriate, shall . . . . terminate, to the extent allowed by law, all DEI, DEIA, and 'environmental justice' offices and positions (including but not limited to 'Chief Diversity Officer' positions)…." *Id.*  The EO also provided that it "shall be implemented consistent with applicable law and subject to the availability of appropriations." *Id.*; EO at § 4(b).

On January 21, 2025, OPM issued a memorandum entitled "Initial Guidance Regarding DEIA Executive Orders."  Off. Person. Mgmt., Initial Guidance Regarding DEIA Executive Orders at 1 (Jan. 21, 2025) (ECF No. 16-12 at 1-2).  The memorandum advised agencies of the steps that should be taken to close DEIA offices, including by planning for the execution of a reduction in force or "RIF."  Agencies were instructed to notify "all employees of DEIA offices

---

[3]  Executive Order 14151 repealed Executive Order 14035, *Diversity, Equity, Inclusion and Accessibility in the Federal Workforce* (June 25, 2021).

that they are being placed on paid administrative leave effective immediately as the agency takes steps to close/end all DEIA initiatives, offices and programs." *Id*. at 16-12, p.1, § 1b.  The OPM Initial Guidance further instructed agencies to submit to OPM "a written plan for executing a reduction-in-force action regarding the employees who work in a DEIA office." *Id*. at 16-12, p.1, § 3a.    Subsequently, on January 24, 2025, OPM issued another memorandum – "Guidance Regarding RIFs of DEIA Offices."   Off. Person. Mgmt., Guidance Regarding RIFs of DEIA Offices at 1 (Jan. 24, 2025) (ECF No. 16-14).  Referencing Section 351.402 of Title 5 of the Code of Federal Regulations, the regulation defining, *inter alia*, what constitutes a competitive area,[4] the January 24, 2025 OPM Guidance advised agencies that they could "and should begin issuing RIF notices to employees of DEIA offices now" and that "[a]gencies are reminded to define the competitive area solely in terms of the DEIA office where the employees worked.  *See* 5 C.F.R. § 351.402."  ECF No. 16-14 at 1, ¶ 3, lines 3-4.

In time thereafter, and in accordance with EO 14151 and the OPM Guidance, the agencies prepared and issued RIF notices to the plaintiffs.  On February 5, 2025, the ATF issued RIF notices to the ATF plaintiffs[5] identified in ECF No. 16-1, the Appendix to ECF No. 16.  The USAID plaintiffs, ECF No. 16-1, received RIF notices in March and April, 2025.  *E.g.*, ECF No. 16-3, Templeton Decl. (1-4) at p. 1, ¶ 3.  The Department of Education plaintiffs received RIF notices on April 10, 2025.  *See, e.g.*, ECF No. 16-3, Gilroy Decl. (1-29) at p. 1, ¶ 8.  The DHS plaintiffs

---

[4]  Specifically, 5 C.F.R. § 351.402(b) provides that a "competitive area must be defined solely in terms of the agency's organizational unit(s) and geographical location and, except as provided in paragraph (e) of this section, it must include all employees within the competitive area so defined. A competitive area may consist of all or part of an agency. The minimum competitive area is a subdivision of the agency under separate administration within the local commuting area.

[5]  For ease of reference, and to accord with how the set of plaintiffs are identified in the Motion for a Preliminary Injunction, the plaintiffs herein are referred to generally corresponding to their former employing agency.

were issued RIF notices on or about March 21, 2025. ECF No. 16-3, Batcha Decl. (1-31) at 1, ¶ 4. RIF notices were sent to the State Department plaintiffs on July 11, 2025. *See, e.g.* ECF No. 16-3, Gaertner Decl. (1-33) at 1, ¶ 15. The RIF Notices generally specified separation dates of 30 or 60 days from the issuance of the Notices. *See, e.g.*, ECF No. 16-3, Norin Decl. (1-21), at 1, ¶ 2; ECF No. 16-15 at 1, ¶ 1.

As for the content of the RIF notices, they set forth the action being taken – removal – and explained the reason for the separation from employment. The Notices sent to the ATF plaintiffs, for example, explained that the action affecting the plaintiff was a reduction in force. *See* ECF No. 16-15 at 1-3, ATF 2/5/25 Notice of Release Pursuant to 5 U.S.C. § 3502. The Notice set forth the reason for the action. Specifically, the Notice advised that the RIF was due to the "abolishment of [plaintiff's] position and the liquidation of [plaintiff's] employing diversity, equity, inclusion (DEI) office." *Id*.

The Notice also identified the competitive area, consistent with 5 C.F.R. § 351.402. *Id*. It stated that in conformity with EO 14151, and OPM Guidance Memoranda dated January 21, 2025, and January 24, 2025, "the Department of Justice has closed all DEIA offices, terminated all DEIA initiatives, and determined that for purposes of this reduction in force the competitive area required by 5 C.F.R. § 351.402 shall be Department DEIA offices." *Id*. The Notice also contained the affected plaintiff's retention standing and the criteria attendant to making that determination, *id*., and informed the ATF plaintiffs of their effective date of removal. *Id*.

The RIF Notices sent to the State Department plaintiffs contained similar information. The Notice issued to such plaintiffs conveyed the action being taken, that is, a reduction in force. *See*

7

G.E.1[6], 7/11/25 Gaertner Specific Notice of Reduction in Force.  The Notice further explained the basis for the RIF, stating "[t]he forthcoming reduction in force (RIF) action is necessary to better align the size, scope, and composition of the Department's domestic workforce with the foreign policy priorities of the Secretary and nation." *Id*. at 1, ¶ 1.  The Notice contained the effective date of separation, the competitive area affected, and how the RIF was conducted.  *Id*. at ¶¶ 2-3.  To elaborate, the Notice stated how retention registers were prepared and what information was used to determine retention standing, including length of civil service, veteran's preference, length of federal service, and performance ratings – all criteria required under 5 U.S.C. § 3502.  G.E.1 at 1, ¶ 3.  The RIF Notices further provided, among other information, the appeal rights of the plaintiffs and the time for noting an appeal.  *Id*. at 4; ECF No. 16-15 at 2-3.  Indeed, various of the plaintiffs have indeed exercised their appeal rights, noting appeals before the Merit Systems Protection Board, even while adjuring this Court to effectively conduct a parallel-type proceeding.

## B.  Procedural History – Plaintiffs and this Action

On February 13, 2026, a total of 142 plaintiffs, which includes the plaintiffs herein, filed suit in this Court, alleging, in a four-count Complaint, that their respective RIF-related removals constituted violations of their Fifth Amendment right under the Constitution to due process, the Administrative Procedure Act ("APA"), the Privacy Act, and the Declaratory Judgment Act.  ECF No. 1 at ¶¶ 119-148.  Thereafter, on April 24, 2026, to be precise, a subset of the plaintiffs, 84 from certain parts of the Agencies, filed the instant Motion for a Preliminary Injunction.  ECF No. 16.  The plaintiffs seek a preliminary injunction, or, alternatively, a stay pursuant to 5 U.S.C. §

---

[6]  All references to the exhibits appended to the defendants' Opposition to the Plaintiffs' Motion for Preliminary Injunction are denoted as "G.E.," followed by the page number of the exhibit as ordered chronologically.

705, on only Counts I and II of the Complaint – the Due Process Clause and APA-related counts. ECF No. 16-2 at 2, n.3.  Specifically, as pertains to the Fifth Amendment claim, the plaintiffs maintain that they have property and liberty interests protected under the Due Process Clause in their jobs and good names.  Mem. in Supp. of Pls.' Mot. for Prelim. Inj., ECF No. 16-2 (hereafter "Pls. Mem.") at 23, 31-40.  They contend that they were deprived of sufficient notice and an opportunity to be heard before the effectuation of their removals (the property interest claim) and a "name-clearing" hearing that they declaim was warranted by allegedly "stigmatizing" and disparaging statements that the President and certain others uttered publicly (the liberty interest-related due process claim).  *Id*.

Although the plaintiffs insist and devote numerous pages to such in their Memorandum in Support of the Preliminary Injunction, that they do not want this Court to weigh in on whether the Agencies complied with the governing statutory and regulatory requirements attendant to RIF actions, the plaintiffs nonetheless assert that the APA was violated because, in their telling, the RIF requirements, "by design," were not followed.  Pls. Mem. at 45-47.  They claim, among other things, that positions were not eliminated consistent with competitive area determinations in compliance with 5 C.F.R. § 351.402, by way of example.  *Id*. at 45.  The plaintiffs also maintain that the Agencies were "well aware" that the MSPB process is protracted because of the volume of cases before it and that by channeling the plaintiffs' claims to that body, the Agencies' actions were contrary to law and exceeded statutory authority in contravention of 5 U.S.C. § 706(2)(A), (B).  Pls. Mem. at 46-47.  They further contend that the APA was violated because the Agencies' actions were arbitrary and capricious in that their actions – purportedly "forcing" the plaintiffs to litigate before an MSPB that is no longer autonomous and will likely be unable to provide timely review because of the volume of cases – the Agencies failed to consider a relevant consideration.

*Id*. at 47-48.  These alleged ills can only be cured by the issuance of injunctive relief, the plaintiffs

vouchsafe.  Not so, as explained more fulsomely in the Argument Section below.

### III.  THE LEGAL STANDARD

Whether the remedy sought is a Temporary Restraining Order, preliminary injunction, or

a stay under 5 U.S.C. § 705, the standard for granting such is the same.  *Casa de Maryland, Inc. v.*

*Wolf*, 486 F.Supp.3d 782, 949-50 (D.Md. 2020) (citing cases).  Rule 65 of the Federal Rules of

Civil Procedure empowers district courts to issue preliminary injunctions. *See* Fed. R. Civ. P.

65(a).  That authority does not sweep broadly or reflexively as the case law makes clear.

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted) (emphasis in original).

Preliminary injunctive relief "involv[es] the exercise of very far-reaching power to be granted only

sparingly and in limited circumstances." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th

Cir. 2002) (quoting *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)).  Such

an injunction "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 690 (2008).  To this

end, a plaintiff seeking this form of relief must establish four elements.

Specifically, the plaintiffs here "must establish that [they] [are] likely to succeed on the

merits, that [they] [are] likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Frazier v. Prince George's Cnty.*, 86 F.4th

537, 543 (4th Cir. 2023).  *See also Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (citing

*Winter*, 555 U.S. at 20).  The last two factors – balance of equities and the public interest – "merge

when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The plaintiff must satisfy each of the *Winter* factors. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). The failure to satisfy the likelihood-of-success-on-the-merits factor relieves the court of considering the remaining prerequisites for injunctive relief. *NetChoice v. Carr*, 789 F.Supp.3d 1200, 1217 (N.D.Ga. 2025). The plaintiffs have not carried their burden here.

## IV. **ARGUMENT**

### A. **Denial of the PI Motion is Warranted by Plaintiffs' Delay**.

As a threshold matter, the Court should deny the preliminary injunction on the ground that the plaintiffs dallied too long in seeking this relief—a circumstance which militates against finding that irreparable harm or the balance of equities favor Plaintiffs. *Benisek v. Lamone*, 585 U.S. 155, 160 (2018). As noted in Section II of this pleading, the plaintiffs filed their motion for a preliminary injunction on April 24, 2026. ECF No. 16. This was months after they were separated from their federal employment which largely occurred in the first, second, and third quarters of the year 2025 and for the ATF plaintiffs, in particular, nearly a year after their receipt of the RIF Notices. *See* ECF 16-1 (plaintiffs' declarations identifying separation date). A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief"); *W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (holding that the district court properly considered the plaintiff's

11

"delay in seeking a preliminary injunction" when it found that "the balance of equities and the public interest" "weighed against issuing a preliminary injunction").  *But see NetChoice*, 789 F.Supp.3d at 1232 (recognizing that delay disfavors a finding of irreparable harm but is not dispositive).  Even if the Court is disinclined to deny injunctive relief on this basis, other grounds do support denial of relief.

**B.  The Preliminary Injunction Factors Applied.**

**1.  The Plaintiffs Are Unlikely to Succeed on the Merits of their Claims Because the Civil Service Reform Act Precludes This Court's Jurisdiction Over the Claims.**

With regard to the first element of the *Winter* test, the plaintiffs must "clearly demonstrate" the likelihood of success on the merits of their claims, rather than presenting a mere "grave or serious question for litigation."  *Real Truth About Obama, Inc*., 575 F.3d at 346-47.  Here, Plaintiffs are unlikely to succeed on the merits of their claims because binding precedent requires that they seek the relief that they ultimately say they want exclusively before the Merit Systems Protection Board (MSPB)—which most of them have done, and where appeals contesting their respective removals are pending.  The plaintiffs, nonetheless, in their bid for injunctive relief seek to skirt the special statutory review scheme that exists under the Civil Service Reform Act ("CSRA"), and to effectively proceed in parallel litigation, maintaining that they bring the sort of claims --"structural" and *ultra vires* -- that should not be channeled into the CSRA's integrated system of statutory review.  Specifically, and distilled to its essence, the plaintiffs argue that Executive Order 14215, 90 Fed. Reg. 10447, 10448-49 (Feb. 24, 2025),[7] has effectively neutered

---

[7] Executive Order 14215, *Ensuring Accountability for All Agencies*, aims, to the extent consistent with applicable law, to "improve the administration of the executive branch and to increase regulatory officials' accountability to the American people, it shall be the policy of the executive branch to ensure Presidential supervision and control of the entire executive branch."  EO 14215 at § 1.  Under the EO, The Director of OMB "shall establish performance standards and management objectives for independent agency heads, as appropriate and consistent with

12

the MSPB, stripping it of its independence as an adjudicator and therefore the CSRA is not functioning as Congress intended, allowing the statutory scheme to be bypassed in favor of federal district court disposition. Pls. Mem. at 7-10, 24-25. To bolster their contention in this regard the plaintiffs claim that EO 14215: inhibits an Executive employee from advancing a legal interpretation that conflicts with the President's or Attorney General's opinion on a legal matter; gives the OMB authority to establish performance standards for the MSPB Chair and to review agency obligations and adjust agency apportionments to align with Presidential policies and priorities; and agency heads are required to establish a White House liaison. *Id*. None of the listed reasons adumbrated by the plaintiffs suffice to displace the applicability of the CSRA's procedural protections and review provisions and to otherwise upend years of legal precedent. This is so under the framework established by the Supreme Court in determining district court jurisdiction preclusion.

---

applicable law, and report periodically to the President on their performance and efficiency in attaining such standards and objectives. *Id*. at § 4. Section 5 of the EO provides that the OMB Director shall periodically review agencies' obligations to assure that they align with the President's policies and priorities and consult with the agencies to adjust, as permitted by law, their apportioned appropriations. *Id*. at § 5(a)-(b). Under Section 7 of the EO, "The President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch. The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties. No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General." *Id*. at § 7, 90 Fed. Reg. 10447-49 (Feb. 18, 2025).

**(a).** **The *Thunder Basin* Framework at Both Steps Supports CSRA Channeling Here.**

**(1)** **Congress's Intent to Preclude District Court Jurisdiction Is Clear**

Ordinarily, federal district courts have exclusive "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As noted by the Supreme Court in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 185 (2023), Congress may, by way of an alternative scheme of review, preclude that district court authority. The preclusion of district court jurisdiction may be express or implied. *Id*. The latter may be apparent from the specification of a different mechanism to resolve claims about agency action. *Id*.

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994), the Supreme Court enunciated a two-part test for determining whether an alternative statutory review scheme is intended to supplant district court jurisdiction. There, a mining company objected to adhering to the Mine Safety & Health Administration's ("MSHA") directive, upon pain of the institution of a fine, that the company post information identifying mine workers' designated union representative. *Id*. at 204-05. The mining company sued in federal district court requesting pre-enforcement injunctive relief, asserting, *inter alia*, that requiring it to challenge the MSHA's interpretation of the Mine Safety and Health Amendment Act and certain of its regulations through the statutory review process established under that Act would violate the company's Fifth Amendment due process rights. *Id*. The Supreme Court held that district court jurisdiction was precluded by the Act despite its making no mention of applicability to pre-enforcement claims and that Congress intended to direct challenges under the Mine Act to a single review process. *Id*. at 208-15. In so holding, the Court drew on several considerations.

14

First, a court must consider whether there is "fairly discernable" Congressional intent to channel initial review to an administrative body. *Thunder Basin*, 510 U.S. at 207. *See also Elev8 Baltimore, Inc. v. Corporation for National and Community Service,* 804 F.Supp.3d 524 (2025) (discussing the factors). In determining whether the statute is intended to preclude judicial review, courts may consider its language, structure, purpose, and legislative history. *Thunder Basin*, 510 U.S. at 207; *see also Axon*, 598 U.S. at 185. If the court answers yes at the first step, it must move on to ask "whether the statutory review scheme, though *exclusive* where it applies, reaches the claim[s] in question." *Axon*, 598 U.S. at 186. In other words, the court must determine "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'" *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 212). In considering the second question, courts apply three factors identified in *Thunder Basin*: (1) whether "precluding district court jurisdiction" would "foreclose all meaningful judicial review of the claim," (2) whether the claim is "wholly collateral to [the] statute's review provisions," and (3) whether the claim is "outside the agency's expertise." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13) (alteration in *Axon*). "When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction.' . . . . . But the same conclusion might follow if the factors point in different directions." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489, (2010)).

### <u>Congressional Intent Evinces Preclusion</u>

There is no question that the statutory scheme laid out by Congress evinces its intent to preclude district court jurisdiction here. The CSRA "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *United States* v. *Fausto*, 484 U.S. 439, 455 (1988). It provides that "[a]n employee . . . may submit an appeal to the Merit Systems

Protection Board from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a).  The MSPB also has powerful remedies available to it should it find in the employee's favor.  The MSPB can order relief to prevailing employees that includes reinstatement, backpay, and attorney's fees.  5 U.S.C. § 1204(a)(2), 7701(g).  Under the CSRA's mixed administrative and judicial review scheme, the Federal Circuit has exclusive jurisdiction to review final decisions of the MSPB.  5 U.S.C. § 7703(b)(1).  In evaluating if the review scheme created in the CSRA divests district courts of their ordinary jurisdiction over cases like the instant one, the Supreme Court has answered that question affirmatively in *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012).  The Court there held, "[T]he CSRA's elaborate framework … indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Id*.  (quotation cleaned up). "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11–12.

The plaintiffs' implore this Court to cast aside *Elgin* at step one of the *Thunder Basin* analysis and accept their assertion that the MSPB is no longer functioning as Congress intended. They insist that the MSPB's independence has been vastly curtailed and subordinated by EO 14215's directive that the President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch.  Pls. Mem. at 8.  As proof, the plaintiffs maintain that in *Jackler v. Department of Justice*, No. DA-0752-25-0330-I-1, ECF No. 16-6, which involved the termination of two immigration judges and implicated the question of  whether the MSPB should address the question of whether immigration judges are inferior officers and can be removed without cause under Article II of the Constitution, the

Department of Justice argued that an Office of Legal Counsel ("OLC") opinion bore on the issue of whether the MSPB judges must consider constitutional issues raised by agencies and should be considered as binding on that issue.  ECF No. 16-7.  From this the plaintiffs conclude, and want this Court to follow suit, that the MSPB has sacrificed its independence as an adjudicator.  Such contention presumes far too much and should be rejected by this Court in the absence of far more probative evidence than this that the MSPB is not functioning independently and thus as Congress intended.  As plaintiffs acknowledge, the MSPB ultimately decided the case but declined to rule on whether the opinion of the OLC was binding on it.  Pls. Mem. at 9, n.4.

So too should the Court reject the plaintiffs' principal argument that the MSPB is insufficiently "independent" from the head of the Executive Branch to support applying the premise upon which *Elgin's* channeling analysis depends and so they should not be required to submit to the CSRA's review scheme.  Pls. Mem. at 7, 26.  For this proposition, the plaintiffs rely upon *Nat'l Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025), *stay denied sub nom. Margolin v. Nat'l Ass'n of Immigration Judges*, No. 25A662 (U.S. Dec. 19, 2025) (hereinafter, "*NAIJ*").  There, the plaintiffs assert, the Court of Appeals declined to channel the employment related claims of immigration judges to the MSPB, electing to remand the case to the district court to conduct a factual inquiry into whether the CSRA continues to provide a functional adjudicatory scheme as Congress intended.  Pls. Mem. at 7.

In pointing to *NAIJ*, the plaintiffs seemingly want this Court to construe it as a decision that strips the CSRA of its jurisdiction-channeling effect in this case.  Pls. Mem. at 7, 26.  A fair reading of the opinion establishes that their presumption is not a proper construction of the case. In *NAIJ*, immigration judges brought a pre-enforcement challenge to an employee policy requiring the judges to obtain permission before speaking publicly on immigration-related issues, arguing

that the policy constituted a prior restraint and was void for vagueness and so violated their First and Fifth Amendment rights. 139 F.4th at 299. The district court dismissed the case for want of jurisdiction, concluding that the policy could be contested through the CSRA. *Id*. The immigration judges appealed that decision, thereby calling upon the Court of Appeals to weigh in on whether the CSRA stripped the district court of jurisdiction.

In considering that issue, the Fourth Circuit traced the history of the CSRA in the context of applying the *Thunder Basin* analysis for district court jurisdiction preclusion. *Id*. at 302-05. Although the Fourth Circuit concluded that the second step of the *Thunder Basin* framework was satisfied, it noted that during the pendency of the case, whether the CSRA was functioning as Congress intended—step one of the *Thunder Basin* test—was called into question. *Id*. at 305. It's reasoning in this regard was predicated on two circumstances. First, the Fourth Circuit noted that the MSPB then lacked a quorum because the Special Counsel and two MSPB members had then been removed.[8] *Id*. The Fourth Circuit went on to say that these removals suggested that the CSRA's "framework" might not function "[i]f … the Senate-confirmed roles in the MSPB and Special Counsel go unfilled." *Id.* That concern is not implicated in this case where the Special Counsel plays no role and the Board now has a Senate-confirmed quorum. Secondly, the Court of Appeals suggested that "Congress may well have intended the CSRA to strip district courts of jurisdiction only because it understood that the President could not exercise unfettered control over the Special Counsel and MSPB." *Id*. at 307. It then observed that, "[i]f that understanding proves to be incorrect, then a reevaluation of Congress's intent under *Thunder Basin* may be required. We leave that issue, should it arise, to the district court to address in the first instance." *Id*.

---

[8] The Board's quorum was restored in 2025. *See* MSPB FAQ About the Lack of Quorum Period and Restoration of the Full Board (Nov. 14, 2025) at http//www.mspb.gov (last visited June 2, 2026)

Irrespective of the head of the Executive Branch's exercise of his removal power, the CSRA is still best understood to maintain its preclusive effect because the MSPB continues to perform the essential task that Congress envisioned for it prefatory to the enactment of the CSRA: providing a single administrative body for federal-employment disputes and thereby ensuring a uniform system of remedies and body of law.  In creating the MSPB, Congress sought to do away with the "wasteful and irrational" system of judicial review that had preceded it.  *Fausto*, 484 U.S. at 445.

Importantly, and by Congressional design, adequate and independent review of any claim brought to the MSPB remains available in the Federal Circuit.  That certain of the plaintiffs have availed themselves of the CSRA's review scheme serves as a tacit acknowledgement of the legitimacy of the forum.  Creating, as plaintiffs would have it, a second, *parallel* avenue to relief in district court without necessarily depriving the MSPB of its legitimacy is not effectuating Congress's intent in enacting the CSRA.

As for the curious argument made by the plaintiffs that the MSPB's jurisdiction stems entirely from promulgated regulations under 5 C.F.R. § 351.901 but regulations cannot remove jurisdiction from Article III courts and there is nothing in the CSRA demonstrative of Congress's intent to channel review of RIF actions exclusively to the MSPB, Pls. Mem. at 26-27, the argument does little to undercut jurisdiction preclusion.  This is because Congress expressly authorized MSPB review of "any action which is appealable to the Board under any law, rule, or *regulation*." 5 U.S.C. § 7701(a) (emphasis added).  Given such authorization, there is no reason to think that allowing federal employees to bypass available review in the MSPB and the Federal Circuit based merely on the source of their right to seek MSPB review was intended by Congress.  *See also Alder v. Tennessee Valley Auth*., 43 F. App'x 952, 956 (6th Cir. 2002) (describing a "reduction-in-force decision" as "a fundamental employment claim subject to MSPB review"), *cert. denied*, 537 U.S.

19

1112 (2003). In sum, Congress's intent to preclude district court jurisdiction is "fairly discernible" in the CSRA's statutory scheme and so the first step of the *Thunder Basin* test is satisfied.

2. **The Claims Are Of The Type Intended For Review Within the CSRA's Structure.**

With regard to the second step of the analysis, *Thunder Basin* instructs that the question to be answered is whether the particular claims asserted are "of the type Congress intended to be reviewed within this statutory structure." 510 U.S. at 208, 212. In considering the second question, courts apply three factors identified in *Thunder Basin*: (1) whether "precluding district court jurisdiction" would "foreclose all meaningful judicial review of the claim," (2) whether the claim is "wholly collateral to [the] statute's review provisions," and (3) whether the claim is "outside the agency's expertise." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212–13) (alteration in *Axon*). When the answer to all three questions is yes, it is clear that Congress did not intend to limit jurisdiction. *Id*. Here, all three factors weigh against this Court retaining jurisdiction over the plaintiffs' request for a preliminary injunction.

(a). **Channeling Will Not Foreclose All Meaningful Judicial Review.**

Whether meaningful judicial review of a claim is available is the "most important" factor in the second step of the *Thunder Basin* test. *NAIJ*, 139 F.4th at 308 (quoting *Bennett v. SEC*, 844 F.3d 174, 183 n.7 (4th Cir. 2016). Precluding district court jurisdiction in this case would not foreclose all meaningful judicial review of the plaintiffs' claims. The Supreme Court decided that question in *Elgin*. "The CSRA makes MSPB jurisdiction over an appeal dependent *only on the nature of the employee and the employment action at issue.*" *Elgin*, 567 U.S. at 18 (emphasis added). The plaintiffs nowhere assert that they are not covered by the CSRA and that their removals, whether effected by the vehicle of a RIF or not, fall outside of the CSRA. They do

20

contend that they bring claims that are different than that for which the statutory scheme is designed. Specifically, they state that one of their claims is constitutional, namely, that they were denied due process. Pls. Mem. at 28.

To elaborate, Plaintiffs maintain that they were denied notice and the opportunity to be heard prior to the loss of their "employment, pay, benefits, and professional standing." *Id*. They argue that they suffered thereby a "completed" due process violation that cannot be cured through administrative review. *Id*. As was observed in *NAIJ*, in relevant part, "[m]eaningful judicial review . . . does not require the involvement of a district court." 139 F.4th at 310. *Elgin* has held that the CSRA provides meaningful judicial review where its administrative processes authorize the Federal Circuit to consider and decide constitutional claims. 567 U.S. at 21. "Review of an agency's action in a court of appeals can alone meaningfully address a party's claims." *Axon*, 598 U.S. at 190 (quoting Thunder Basin, 510 U.S. at 215).

Plaintiffs also repeat their contention that they allege a structural injury "from compelled submission to an Executive-controlled adjudicatory process that cannot provide meaningful, independent relief." Pls. Mem. at 28. They argue that the availability of eventual Federal Circuit review is not a course corrector because Federal Circuit review "presumes a record developed before an adjudicator exercising independent judgment within the statutory scheme" but the MSPB has subordinated its independence. *Id*. at 29. They go on to suggest that the administrative process has become so "captured and corrupted" that Federal Circuit review may never occur. *Id*. This Court is not obligated to accept the plaintiffs' framing or their characterizations about the independence of the MSPB. In any event, as the Supreme Court noted in *Elgin*, the Federal Circuit has the ability to develop facts relevant to a constitutional question; it may take judicial notice of

21

relevant facts.  567 U.S. at 19.  Moreover, protracted adjudicatory proceedings on a claim does not justify overlooking the applicable statutory review scheme.

**(b).  <u>Plaintiffs' Claims Are Not Wholly Collateral to the CSRA's Review Provisions.</u>**

Plaintiffs' claims are not wholly collateral to the CSRA scheme.  Although the plaintiffs repeatedly assert that their claims raise structural and *ultra vires* questions unrelated to MSPB merits determinations and that they are not seeking this Court's evaluation of whether the plaintiffs were properly ranked and scored for retention purposes, Pls. Mem. at 29, they nonetheless expounded exhaustively in their Memorandum in Support of the Motion for a Preliminary Injunction all of the perceived errors that they contend accompanied their respective RIF actions. *Id*. at 10-23.  Such is a testament to the fact that at root what the plaintiffs challenge is their removals.

As the Supreme Court explained in *Elgin*, what matters for purposes of the collateralism inquiry is whether the subject of Plaintiffs' challenge is a matter covered by the CSRA, not how Plaintiffs choose to describe the claims they are advancing.  567 U.S. at 22.  Here, the subject of the plaintiffs' actions is fundamentally their RIFs.  "A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme."  *Id*.  Furthermore, the remedies they urge this Court to provide them if it grants them preliminary injunctive relief are the same as could be provided through the CSRA statutory scheme – restoration to their positions with backpay and benefits.  *See* ECF No. 16-25, Plaintiffs' Proposed Order.   As in *Elgin*, Plaintiffs' "constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the employment action.  567 U.S. at 22.  In *NAIJ*, the Fourth Circuit Court of Appeals made clear the plaintiffs cannot bypass the CSRA's post-enforcement procedures

"simply by alleging a constitutional challenge and framing it as 'structural,' 'prophylactic,' or 'preventative.'" 139 F.4th at 310.

**(c).  The Claims Are Not Beyond the MSPB's Expertise.**

Lastly, the claims alleged by the plaintiffs are sufficiently intertwined with matters on which the MSPB can bring to bear its expertise.  As referenced above, despite the constitutional garb in which the plaintiffs dress their claims, the subject of the claims are their removals and that the RIFs were effected contrary to law.  The application of the RIF regulations, and the statutes governing agency operations are indeed matters on which administrative agencies have expertise even if only to address preliminary questions pertinent to the issue.  Under such circumstances, there is no reason to conclude that Congress intended to exempt the plaintiffs' claims from exclusive review within the CSRA scheme.  Given that all factors of the *Thunder Basin* favor preclusion of district court jurisdiction, the plaintiffs cannot establish a clear likelihood of success on the merits of their claims and the Court should deny their request for a preliminary injunction.

**C.  The Plaintiffs Are Unlikely to Succeed on the Merits of the Due Process and APA Claims.**

**1.  The Asserted Property and Liberty Interests Due Process Claim.**

Even if the Court is unconvinced that the CSRA divests it of jurisdiction over the plaintiffs' claims, the plaintiffs' are nonetheless unlikely to succeed on the merits of their due process and APA claims.  First the Fifth Amendment claims.  To succeed on a procedural due process claim, a plaintiff must satisfy three elements.  *Sansotta v. Town of Nagshead*, 724 F.3d 533, 540 (4th Cir. 2013).  They are: "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest 'by some form of state action'; and (3) that the procedures employed were constitutionally

inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).

Citing *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542-46 (1985) and *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972), the plaintiffs contend that they possess a cognizable protected property interest in continued employment and pay but were deprived of the notice and opportunity to be heard prior to such losses that the Fifth Amendment's Due Process Clause demands. Pls. Mem. at 31, 36-39. They assert that sufficient notice required that they be told a myriad of things that in actuality represent something far from what may be constitutionally required. Specifically, they insist that in order to make a meaningful choice about how to respond they needed to be informed that: once separated from employment they would have "no mechanism to halt enforcement," the MSPB was "no longer operating as an independent agency under the CSRA," and that "any effort to get before an Article III court would be effectively blocked by the crush of cases being channeled into the MSPB process." *Id*. at 37.

Consistent with the teachings of *Loudermill* and *Goldberg v. Kelly*, 397 U.S. 254, 267-68, 271 (1970), the RIF notices received by the plaintiffs were constitutionally sufficient. As discussed in Section II of this pleading, the RIF notices provided the plaintiffs with the essential facts surrounding their separations from employment, that is, the nature of the action and the reasons underlying the decision. Such notices informed that the plaintiffs' separations were pursuant to reductions in force. *See* Section II, Background, at 5-6. The notices identified the competitive area subject to the RIF. *Id*. With respect to the State Department RIF notices, they too explained the basis for the RIF, noting that "[t]he forthcoming reduction in force (RIF) action is necessary to better align the size, scope, and composition of the Department's domestic workforce with the foreign policy priorities of the Secretary and nation." *Id*. The notices also

24

advised how retention registers were prepared and what information was used to determine retention standing, including length of civil service, veteran's preference, length of federal service, and performance ratings – all criteria required under 5 U.S.C. § 3502.  The notices contained the effective date of separation.  Further they specified the appeal rights available to the plaintiffs, the forum, and the time frame within which such rights should be exercised.  *See* Section II, Background, at 5-6.  That is all that needed to be provided in that reasons for the separations were given and the basis relied upon for the decision was made known.  The plaintiffs' accusation that the "real" reason for their separations was concealed or incomplete thus rendering their notices infirm is mere supposition ill-sufficing to elevate the merits of their due process claim from fantasy to legally sustainable.

As for the opportunity to be heard before the separations occurred, the plaintiffs assert that they were denied such and that the due process violation was thus "complete" at the moment of "deprivation" and post-deprivation process serves as no cure because due process requires a hearing at a meaningful time to prevent a mistaken decision.  Pls. Mem. at 38-39.  In making that assertion, the plaintiffs once again hearken to their theme that the MSPB is no longer "independent" and neutral and unlikely to provide prompt relief because of the volume of cases before it.  *Id*. at 41-42.  Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).

In the instant case, the plaintiffs have available additional process sufficient to safeguard any procedural due process right.  The CSRA review scheme provides valuable process.  Plaintiffs' contention that post-deprivation process would be futile is not proof; it is speculation.  The CSRA review process offers the plaintiffs the opportunity to put before decisionmakers at the various

levels of appeal why the employment decision was, in the plaintiffs' view, incorrect. Put simply, the plaintiffs are unlikely to succeed in showing that the process afforded by the CSRA does not provide adequate due process. Moreover, the remedies the plaintiffs say are warranted if a due process violation is found, Pls. Mem. at 43, are the very same remedies that can be provided should they prevail before the MSPB – reinstatement, pay, and restoration of benefits. The fact that various of the plaintiffs have cases pending before the MSPB belies their claim that such process fails to adequately safeguard any due process rights they possess and that invoking the CSRA review process is futile. G.E.2. Plaintiffs have not carried their burden in establishing that their Due Process claim will likely meet with success on the merits.

## 2. The Liberty Interest Claim.

The plaintiffs are also unlikely to succeed on the merits of their claim that they were denied due process in the form of a "name-clearing" hearing necessitated by statements that they allege besmirched their reputations. Pls. Mem. at 32-34. Importantly, and as discussed herein in Section IV.B, the plaintiffs' liberty-interest claim, like every other claim in this case, is an effort to effectively vindicate the plaintiffs' removal from the federal civil service. Such a claim plainly arises out of an adverse action covered by the CSRA. As *Elgin* makes clear, that claim belongs in the MSPB. Even before *Elgin*, the Fourth Circuit recognized as much.

In *Zimbelman v. Savage*, the plaintiffs, former federal employees, alleged a violation of their Fifth Amendment "right to preserve their reputations" much like the plaintiffs here and that "they did not have the constitutionally required opportunity to clear their names." 228 F.3d 367, 370 (4th Cir. 2000). The district court denied the government's motion to dismiss as to the Fifth Amendment claim; the Fourth Circuit unanimously reversed. "[F]ederal personnel matters are governed by the CSRA," it explained, which "constitutes a comprehensive set of procedural and

26

substantive provisions governing the rights of federal employees." *Id*. Accordingly, the plaintiffs' claims that they were not "grant[ed] … a name-clearing hearing" "before losing their federal jobs" could not proceed: the plaintiffs' claims, the Court observed, "*indisputably* [arose] from a federal employment relationship." *Id.* (emphasis added). Given that the CSRA is the "*exclusive* remedial framework" for such claims, the Court "reversed and remanded with instructions to dismiss [the] plaintiffs' Fifth Amendment claim." *Id.* at 370–71 (emphasis added). Here too, district court jurisdiction preclusion applies to the plaintiffs' liberty interest-related claim.

Even if that is not the case, to state a liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007). *Accord Roth*, 408 U.S. at 573 (public employer cannot deprive employees of freedom to take advantage of other employment opportunities). Although the plaintiffs declare that the statements made by the President and certain others caused them reputational harm, Pls. Mem. at 34-35, none of the statements framed as stigmatizing were specifically and directly tied to each plaintiff individually such that the statements placed a stigma on that individual's reputation. More to the point, an opportunity for name-clearing is effectively available through the CSRA process. *See Gibbs v. Brady*, 773 F. Supp. 454, 457 (D.D.C. 1991) ("following a personnel action that implicates a liberty interest … Plaintiff received an adequate opportunity to address the charges against her and to clear her name at the hearing before the MSPB").

### 3. **The APA Claims**.

Regarding their APA claims, here too the plaintiffs are unlikely to succeed on the merits of their claims that the defendants' actions were *ultra vires* "by design" and arbitrary and

27

capricious.  Pls. Mem. at 45-47.  Under the APA, courts may "hold unlawful and set aside agency action, findings, and conclusions found to be" (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" (2) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and (3) "without observance of procedure required by law[.]"  5 U.S.C. § 706(2)(A), (C), (D).  "[W]here an agency's decision does not comport with governing statutes or regulations, that decision is 'not in accordance with law' and must be set aside." *Maryland v. AmeriCorps*, 785 F.Supp.3d 68, 111 (D.Md. 2025) (quoting *J.E.C.M. ex rel. Saravia v. Lloyd*, 352 F. Supp. 3d 559, 583 (E.D.Va. 2018)).  In determining whether agency action is "not in accordance with law," the court must "decide all relevant questions of law" and "interpret constitutional and statutory provisions." *Perez v. Cuccinelli*, 949 F.3d 865, 872 (4th Cir. 2020) (quoting 5 U.S.C. § 706).

The plaintiffs maintain that the RIFs were not conducted in accordance with the law because, for example, competitive areas were "manipulated" in contravention of 5 C.F.R. § 351.402 to disguise that the RIFs were a vehicle for targeted firings to avoid triggering due process protections and the defendants thus acted in excess of their lawful authority.  Pls. Mem. at 45.  The very high standard for an *ultra vires* claim precludes the plaintiffs from succeeding on their contention.  To prevail on an *ultra vires* claim, a plaintiff must establish that a government official "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *accord Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir. 2002) (noting that *ultra vires* action must involve "a plain violation of an unambiguous and mandatory provision of the statute" that "is of a summa or magna quality") (emphasis omitted) (citations omitted)).  An officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984)

28

(citation omitted); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (suit must allege that official is "not doing the business which the sovereign has empowered him to do"); *Kalispel Tribe of Indians v. U.S. DOI*, 999 F.3d 683, 691 (9th Cir. 2021). This is a "very stringent standard," rendering ultra vires claims "essentially a Hail Mary pass" that "in court as in football, . . . rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.). It does not succeed here. It bears repeating that in claiming that the defendants manipulated outcomes is merely speculative and is not proof. The defendants followed the procedures pertinent to RIF actions. If errors occurred with respect to the RIF actions – and that is far from evident – there is nothing that remotely suggests that any errors amount to *ultra vires* actions.

The plaintiffs are unlikely to succeed on their claim that NIH acted arbitrarily and capriciously with respect to the RIF actions. Pls. Mem. at 46-47. What record exists shows a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A court's review under the APA "is narrow and highly deferential, meaning that [a court] look[s] only to see if there has been a clear error of judgment." *Ren v. U.S. Citizenship and Immigration Servs.*, 60 F.4th 89, 93 (4th Cir. 2023) (internal quotations and citations omitted). There is no "heightened standard" or "more searching review" applicable to changes in agency policy. *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). In *FCC v. Fox*, the Supreme Court upheld an agency action that represented a complete policy shift, even though the agency lacked objective evidence in support of its shift but instead relied on its own discretion, determination, and experience. *Id.* at 517–20. Here, in instituting the RIF actions, the Agencies provided the reasons for its actions – changes in priorities. The plaintiffs make clear their disdain for the Agencies'

29

reason, Pls. Mem. 45, but that does not convert the Agencies' actions into those that are arbitrary and capricious. The plaintiffs, like this Court, may not substitute their judgment for that of the Agencies' judgment. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Although the plaintiffs assert that the Agencies failed to consider relevant data, Pls. Mem. at 45-47, or the consequences of its actions, the RIF notices establish that the Agencies undertook a systematic review of the departments and units within each corresponding agency in light of the agencies' priorities – the relevant data – to determine the RIF actions. The APA does not require exhaustive explanation for every action. *Cf. Fox*, 556 U.S. at 514 (no heightened standard), *Ren*, 60 F.4th at 93 (deferential review). Government agencies are not required to consider "every alternative device and thought conceivable by the mind of man." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,* 435 U.S. 519, 551 (1978). A court must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox*, 556 U.S. at 513-14. The record shows reasoned consideration prior to termination, in accordance with the applicable law, which satisfies the APA.

As for the notion that the Agencies, at the moment of directing the RIFs, "were well aware that the MSPB has been spoiled to the point of futility" and that such demonstrates a failure to consider relevant statutory requirements or the "obvious" effects of their actions, Pls. Mem. at 47, that is nonsense and hardly borne out by record evidence and the plaintiffs' present no such evidence beyond a conclusory statement that they expect the Court to accept as gospel. It is not the Agencies' choice to make regarding whether a particular remedy available to the plaintiffs will be exercised by each individual plaintiff. All that the Agencies should do and did is inform the plaintiffs of their available options to contest the action. The plaintiffs' claim does not implicate a discrete or mandatory action that the Agencies were required to undertake to support a proper

APA challenge.  Plaintiffs cannot show a clear likelihood of success on the merits of this claim and injunctive relief should be denied.

### D.  Plaintiffs Do Not Face Irreparable Harm.

A "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). The Court accordingly need not and should not consider the irreparable-harm requirement in light of the preceding discussion and because of the delay in seeking preliminary injunctive relief as discussed in Argument IV.A.  Regardless, it is clear that the plaintiffs alleged injuries do not amount to irreparable harm.  To meet the irreparable harm requirement, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22.  The plaintiffs have failed to meet this standard.  The harm the plaintiffs allege flows principally from their loss of employment, resulting, they say in their declarations, in the depletion of savings, incurred debt, and the loss of health benefits sufficient to cover costs.  Pls. Mem. at 49.  *See also* ECF No. 16-1.

In *Sampson v. Murray*, 415 U.S. 61, 91 n.68 (1974), and although it did not foreclose finding such in the "genuinely extraordinary situation," the Supreme Court observed that an "insufficiency of savings or difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson* thus counsels against an irreparable harm finding in this case.  *See also TK Elevator Corp. Drzewiecki*, 2025 WL 776111, at \*5 (D.Md. Mar. 11, 2025) ("Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough" to justify a preliminary injunction).

Moreover, in *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.D.C. 1995), the court, in the context of addressing a preliminary injunction motion, stated that if economic losses are recoverable under some legal remedy, a temporary loss of income is not irreparable harm.  The possibility that adequate compensation or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.  *Sampson*, 415 U.S. at 90.  Notably, as explained previously, the MSPB may order reinstatement, backpay, and attorney's fees. 5 U.S.C. §§ 1204(a)(2), 7701(g).  The Court should therefore find an absence of irreparable harm and deny the grant of a preliminary injunction.

### E.  <u>Balance of Equities and the Public Interest Disfavor A Preliminary Injunction</u>.

When, as here, the nonmovant is the government, the last two *Winter* factors "merge." *Nken*, 556 U.S. at 435.  Although there is no need to consider these remaining two preliminary injunction requirements, they do favor the government.  To be sure, the plaintiffs assert that the public has an interest in governmental compliance with the law and the Constitution.  Pls. Mem. at 52.  No unlawfulness occurred here.

The D.C. Circuit has noted, "the public has an interest in the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), at *6.  Because personnel disputes directly concern the public fisc, Congress has limited the resolution of these potentially costly claims to specialized tribunals such as the MSPB.  *Id*.  The public interest is served when courts "respect those boundaries." *Id*.  This is no less true in the present context where the claims the plaintiffs raise are properly the preserve of the MSPB in the first instance and not this Court.  Furthermore, the government has an interest in ensuring public confidence that the government is operating efficiently and that its personnel decisions do not result in needless duplication of jobs and agencies

32

and thus lead to increased costs to the taxpayer.  Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).  The balance of equities thus weighs in the government's favor.

## F.  Plaintiffs Should Be Required to Post A Bond If Granted Relief.

Lastly, the Court may issue an injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c).  If the Court issues an injunction, the Court must require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction.   An appropriate bond would here be equal to the salaries and benefits the government must pay for any employees it would prefer to separate from federal service but is unable to do so for the duration of any preliminary relief.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction and Stay should be denied.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on June 3, 2026, the foregoing Defendants' Opposition to the

Plaintiffs' Motion for a Preliminary Injunction and Request for A Stay Pursuant to 5 U.S.C. § 705,

was filed with the Clerk of the Court using the CM/ECF system and was thus served upon

Plaintiffs' counsel of record:

Joshua Rose
DC Consumer Law Group, PLLC
1407 Highland Drive
Silver Spring, MD 20910
Jrose@dcclg.com

Amy E. Powell
Lawyers for Good Government
1319 F St. NW, Suite 301, PMB 181
Washington, D.C. 20004
amy@lawyersforgoodgovernment.org
*Attorneys for Plaintiffs*

*/s/ Tarra DeShields*_____
Tarra DeShields
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DOREEN MULLADY, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil No. 1:26-cv-00573-SAG** |
| | * | |
| **RUSSELL VOUGHT, in his** | * | |
| **official capacity as Director of the United** | * | |
| **States Office of Management and Budget,** | * | |
| **et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | ********** | |

**ORDER**

UPON CONSIDERATION of Plaintiffs' Motion for A Preliminary Injunction and Request for A Stay Pursuant to 5 U.S.C. § 705 (ECF No.16 64 and hereinafter, the "Motion"), Defendants' Opposition to the Motion, Plaintiffs' Reply to Defendants' Opposition, and the arguments of counsel at the hearing on the Motion held on _____ , 2026, it is this _____ day of _____, 2026, by the United States District Court for the District of Maryland, hereby **ORDERED** that the Motion is **DENIED**.

 

 

Stephanie A. Gallagher
United States District Judge

35