**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DOREEN MULLADY, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 1:26-cv-00573-SAG |
| | * | |
| RUSSELL VOUGHT, in his | * | |
| official capacity as Director of the United | * | |
| States Office of Management and Budget, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

**\*\*\*\*\*\*\*\*\*\***

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT**

1

Case 8:26-cv-00573-SAG    Document 24-2    Filed 06/12/26    Page 2 of 32

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................2

II.   BACKGROUND AND COMPLAINT ALLEGATIONS ...........................................4

    A.  Relevant Background - Executive Order 14151 and OPM Guidance ...............4

    B.  Plaintiffs' Complaint Allegations and the Procedural History .........................6

III.  THE LEGAL STANDARD ....................................................................................8

Motion to Dismiss - The Governing Legal Standards .....................................................8

    A.  Federal Rule of Civil Procedure 12(b)(1) - Lack of Subject Matter Jurisdiction ..................................................................................................................8

    B.  Federal Rule of Civil Procedure 12(b)(6) - Failure to State a Viable Claim .....9

IV.   ARGUMENT .....................................................................................................10

    A.  The Civil Service Reform Act Precludes This Court's Jurisdiction Over Plaintiffs' Claims Under the *Thunder Basin* Test and Dismissal is Warranted 10

        1.  The *Thunder Basin* Framework at Both Steps Supports CSRA Channeling Here .............................................................................12

            a.  The CSRA Statutory Scheme Evinces Congress's Intent to Preclude District Court Jurisdiction.........................................12

        2.  The Claims Are of The Type Intended For Review Within the CSRA's Structure .............................................................................19

            a.  Channeling Will Not Foreclose All Meaningful Judicial Review .................................................................................20

            b.  Plaintiffs' Claims Are Not Wholly Collateral to the CSRA's Review Provisions .................................................................22

            c.  The Claims Are Not Beyond the MSPB's Expertise ...............24
i

B.  The Plaintiffs Fail To State A Claim Against the MSPB Under Rule 12(b)(6) ...........................................................................................................................25

CONCLUSION................................................................................................................. 25

CERTIFICATE OF SERVICE........................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*A Soc'y Without A Name v. Virginia*,
   655 F.3d 342 (4th Cir. 2011) ............................................................................................ 9

*Alder v. Tennessee Valley Auth.*,
   43 F. App'x 952 (6th Cir. 2002) .................................................................................... 19

*Ali v. Rumsfeld*,
   649 F.3d 762 (D.C. Cir. 2011) ................................................................................. 8, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 9, 10

*Axon Enterprise, Inc. v. Federal Trade Commission*
   598 U.S. 175 (2023) ......................................................................... 12, 13, 14, 19

*Barnett v. United States*,
   193 F.Supp.3d 515 (D.Md. 2016) ................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 10

*Elev8 Baltimore, Inc. v. Corporation for National and Community Service*,
   804 F.Supp.3d 524 (2025) ........................................................................................... 13

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ....................................................................... 14, 15, 22, 24

*Gill v. Dep't of Defense*,
   92 M.S.P.R. 23 (2002) ................................................................................................. 24

*Herman v. Dep't of Justice*,
   115 M.S.P.R. 386 (2011) ............................................................................................. 24

*Houlihan v. OPM,*
   909 F.2d 383 (9th Cir. 1990) ................................................................................. 22, 23

*In re Birmingham*,
   846 F.3d 88 (4th Cir. 2017) ......................................................................................... 10

*Jackson v. Kennedy*,
   2026 WL 172440 (D.D.C. Jan. 22, 2026) ................................................................... 21

*James v. Von Zemenszky*,
   284 F.3d 1310 (Fed. Cir ................................................................................................ 2

*Johnson v. Dep't of Treasury*,
   8 M.S.P.R. 170 (1981) ................................................................................................. 24

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009)........................................................................................ 9

*Lim v. United States,*
  2011 WL 2650889 (D. Md. July 5, 2011) ........................................................... 23

*Lovern v. Edwards*,
  190 F.3d 648 (4th Cir. 1999) ................................................................................ 9

*Margolin v. NAIJ*,
  608 U.S. ----, 146 S. Ct. 1285 (2026) ........................................................... 17, 18

*Mayor & City Council of Baltimore v. Trump*,
  416 F.Supp.3d 452 (D.Md. 2019) ........................................................................ 9

*Ministry of Defence of State of Kuwait v. Naffa*,
  105 F.4th 154 (4th Cir. 2024) .............................................................................. 9

*Miriyeva v. U.S. Citizenship & Immigr. Servs.*,
  436 F. Supp. 3d 170 (D.D.C. 2019) ................................................................... 23

*National Assn. of Immigration Judges v. Owen*,
  160 F.4th 100 (4th Cir. 2025) ............................................................................ 15

*Nat'l Ass'n of Immigration Judges v. Owen*,
  139 F.4th 293 (4th Cir. 2025) .......................................... 16, 15, 16, 20-21, 21, 24

*Rodriguez v. Dep't of Veterans Affairs*,
  8 F.4th 1290 (Fed. Cir. 2021) ...................................................................... 21-22

*Seminole Tribe of Fla. v. Florida*
  517 U.S. 44 (1996) ............................................................................................ 17

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ............................................................................... 12, 13, 19

*United States ex rel. Fadlalla v. DynCorp Int'l LLC*,
  402 F.Supp.3d 162 (D.Md. 2019) ........................................................................ 9

*United States v. Fausto*,
  484 U.S. 439 (1988) ...................................................................................... 14, 18

*Velasco v. Gov't of Indonesia*,
  370 F.3d 392 (4th Cir. 2004) ............................................................................... 9

**Constitution**

U.S. Const. amend. V ……………………………………………………………………….. 7

**Statutes**

5 U.S.C. § 706 ..................................................................................................... 7
5 U.S.C. § 1204 ................................................................................................. 14
5 U.S.C. § 3502 .............................................................................................. 2, 7
5 U.S.C. § 7701 ........................................................................................... 14, 19

iv

5 U.S.C. § 7703 ................................................................................................................ 14

5 U.S.C. §§ 3502 .......................................................................................................... 2, 7

28 U.S.C. § 1331 ............................................................................................................ 12

28 U.S.C. §§ 2201-2202 ................................................................................................. 8

**Rules**

Federal Rule of Civil Procedure 12 ........................................................... 8, 9, 10, 11, 24, 25

**Regulations**

5 C.F.R. Pt. 351 .............................................................................................................. 2

5 C.F.R. § 351.205 ........................................................................................................... 2

5 C.F.R. § 351.402 ................................................................................................... 5, 6, 7

**Other**

90 Fed. Reg. 8339 (Jan. 20, 2025) .................................................................................. 4

90 Fed. Reg. 10447, 10448-49 (Feb. 24, 2025) ............................................................ 11

91 Fed. Register 5861 .................................................................................................... 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DOREEN MULLADY, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 1:26-cv-00573-SAG |
| | * | |
| RUSSELL VOUGHT, in his | * | |
| official capacity as Director of the United | * | |
| States Office of Management and Budget, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

********** 

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THE MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT
<u>FOR DECLARATORY AND INJUNCTIVE RELIEF – ECF NO. 1</u>**

In support of the motion to dismiss the plaintiffs' Complaint, the defendants, Russell Vought, Director of the United States Office of Management and Budget ("OMB") and as Acting Administrator of the United States Agency for International Development ("USAID"), Scott Kupor, Director of the Office of Personnel Management ("OPM"), Henry J. Kerner, Acting Chair of the Merit Systems Protection Board, Todd Blanche, Acting United States Attorney for the United States Department of Justice ("DOJ"), Robert F. Kennedy, Jr., the Secretary of the United States Department of Health and Human Services ("HHS"), Marco Rubio, Secretary of the United States Department of State ("State Department"), Linda McMahon, Secretary of the United States Department of Education ("Education Department"), Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS") (collectively, the "Agencies") by their attorneys, Kelly O. Hayes, United States Attorney for the District of Maryland, and undersigned counsel, submit the following memorandum.

1

## I. **INTRODUCTION**

The authority of federal agencies to conduct reductions in force (hereinafter, "RIF"), an "administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions," *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002), is entrenched under federal law.  Section 3502 of Title 5 of the United States Code vests the Office of Personnel Management ("OPM") with the authority to "prescribe regulations for the release of competing employees in a reduction in force."  5 U.S.C. § 3502(a).  The statute further provides, among other things, that agency employees and their collective bargaining representatives receive notice of a RIF, including notice of "any appeal or other rights which may be available." 5 U.S.C. §§ 3502(d)(1)(A), (d)(2)(E).[1]

The regulatory scheme attendant to the RIF authority of federal agencies, and set forth in 5 C.F.R. Pt. 351, is detailed.  It empowers OPM to address various issues ranging from the order of employee retention to competition for remaining positions.  The regulations further specify that "OPM may examine an agency's preparations for reduction in force at any stage" and require "appropriate corrective action." 5 C.F.R. § 351.205.  The federal government's recent reductions in force are at the heart of the lawsuit initiated by the plaintiffs in this case who seek to have this Court adjudicate their claims.  A special statutory review scheme may preclude district courts from exercising jurisdiction over challenges to federal agency action.  Such is the case here.  The proper place for the litigation of the claims asserted in the Complaint is the forum established by Congress in the Civil Service Reform Act because the gravamen of the plaintiffs' claims arises from the

---

[1]  Although not at issue here, the statute also provides for time-specific notice to certain states and local entities "if the reduction in force would involve the separation of a significant number of employees."  *See* 5 U.S.C. §§ 3502(d)(1)(B), (d)(3).

employment action challenged.  That forum starts first with the Merit Systems Protection Board ("MSPB"), with subsequent judicial review in the Court of Appeals for the Federal Circuit.

Although the plaintiffs assert that they should be allowed to do an end-run around the system of statutory review designed specifically to address their employment-related claims in favor of adjudication in the first instance in the district court, granting such to the plaintiffs would be counter to Congress's intent that covered employees appealing covered agency actions proceed exclusively through the Civil Service Reform Act's statutory review scheme.  Plaintiffs' claims are centered on the terms and conditions of federal employment and thus must be channeled to agency adjudication in the MSPB under the Civil Service Reform Act, not in district court.  The MSPB serves precisely the role Congress intended for it, and the Federal Circuit remains available to provide fulsome judicial review to any employee dissatisfied with the outcome of the MSPB's administrative review.  For those reasons, judicial review in this case is not available in federal district court, and the Court should dismiss the plaintiffs' Complaint for lack of subject matter jurisdiction in recognition of district court jurisdiction preclusion.

Allowing the plaintiffs to pursue this action in district court while simultaneously litigating identical issues before the MSPB would essentially give them exactly what the Civil Service Reform Act was designed to prevent: two chances at the same apple.  Since the plaintiffs have already triggered the Act's remedial process by filing MSPB appeals for the same RIF removals, permitting parallel litigation in district court would undermine Congress's intent to ensure a single, consistent avenue for resolving federal employment disputes. It would also risk inconsistent outcomes and revive the "wasteful and irrational" patchwork of remedies that the Act was enacted to eliminate.  Because the plaintiffs are seeking identical relief—reinstatement, back pay, and

3

invalidation of the removal decision—in two different forums, their claims clearly fall within the Civil Service Reform Act and should be addressed exclusively through its procedures.

Additionally, because the MSPB, a named defendant in the plaintiffs' Complaint but was not the agency that made the employment decisions at issue in the instant lawsuit, it must be dismissed as a party-defendant based upon the plaintiffs' failure to state a claim upon which relief can be granted as pertains to the MSPB.

## II.  BACKGROUND AND COMPLAINT ALLEGATIONS

### A.  Relevant Background – Executive Order 14151 and OPM Guidance

On January 20, 2025, the newly elected United States President issued Executive Order 14151—*Ending Radical and Wasteful Government DEI Programs and Preferencing*.  Exec. Order No. 14151,[2] 90 Fed. Reg. 8339 (Jan. 20, 2025) (hereinafter, "EO").  The EO provided, in pertinent part, that "[t]he Director of the Office of Management and Budget (OMB), assisted by the Attorney General and the Director of the Office of Personnel Management (OPM), shall coordinate the termination of all discriminatory programs, including illegal DEI and 'diversity, equity, inclusion, and accessibility' (DEIA) mandates, policies, programs, preferences, and activities in the Federal Government, under whatever name they appear." *Id.* at 8339; EO at § 2(a).  The EO further provided, in relevant part, that "[e]ach agency, department, or commission head, in consultation with the Attorney General, the Director of OMB [Office of Management and Budget], and the Director of OPM, as appropriate, shall . . . . terminate, to the extent allowed by law, all DEI, DEIA, and 'environmental justice' offices and positions (including but not limited to 'Chief Diversity

---

[2]    Executive Order 14151 repealed Executive Order 14035, *Diversity, Equity, Inclusion and Accessibility in the Federal Workforce* (June 25, 2021).

Officer' positions)…." *Id.*  The EO also provided that it "shall be implemented consistent with applicable law and subject to the availability of appropriations."  *Id*.; EO at § 4(b).

On January 21, 2025, OPM issued a memorandum entitled "Initial Guidance Regarding DEIA Executive Orders."  Off. Person. Mgmt., Initial Guidance Regarding DEIA Executive Orders at 1 (Jan. 21, 2025).  The memorandum advised agencies of the steps that should be taken to close DEIA offices, including by planning for the execution of a reduction in force or "RIF."  Agencies were instructed to notify "all employees of DEIA offices that they are being placed on paid administrative leave effective immediately as the agency takes steps to close/end all DEIA initiatives, offices and programs."  *Id*. at 1, § 1b.  The OPM Initial Guidance further instructed agencies to submit to OPM "a written plan for executing a reduction-in-force action regarding the employees who work in a DEIA office." *Id*. at 1, § 3a.  Subsequently, on January 24, 2025, OPM issued another memorandum – "Guidance Regarding RIFs of DEIA Offices."  Off. Person. Mgmt., Guidance Regarding RIFs of DEIA Offices at 1 (Jan. 24, 2025).  Referencing Section 351.402 of Title 5 of the Code of Federal Regulations, the regulation defining, *inter alia*, what constitutes a competitive area,[3] the January 24, 2025 OPM Guidance advised agencies that they could "and should begin issuing RIF notices to employees of DEIA offices now" and that "[a]gencies are reminded to define the competitive area solely in terms of the DEIA office where the employees worked. *See* 5 C.F.R. § 351.402." Off. Person. Mgmt., Guidance Regarding RIFs of DEIA Offices at 1, ¶ 3, lines 3-4.

---

[3]  Section 351.402(b) of Title 5 of the Code of Federal Regulations provides that a "competitive area must be defined solely in terms of the agency's organizational unit(s) and geographical location and, except as provided in paragraph (e) of this section, it must include all employees within the competitive area so defined. A competitive area may consist of all or part of an agency. The minimum competitive area is a subdivision of the agency under separate administration within the local commuting area.

**B.  Plaintiffs' Complaint Allegations and the Procedural History**

On February 13, 2026, the plaintiffs, who were employed by six of the nine named defendant agencies, filed suit in this District, in a four-count Complaint, following their separation from federal employment by way of their employing agency's RIF actions.  *See* Plaintiffs' Complaint for Declaratory and Injunctive Relief, ECF No. 1 (hereinafter "Compl.").  The plaintiffs, seventy-four of whom were employed by the Department of State, forty-one by the United States Agency for International Development ("USAID"), sixteen by the Department of Education, four by the Bureau of Alcohol, Tobacco and Firearms, a component of the Department of Justice ("ATF"), six by the Department of Homeland Security ("DHS"), and one by the Department of Health and Human Services ("HHS"), *see* ECF No. 1-1, Exhibit A, all challenge the RIF actions conducted by their former employers.  Specifically, the plaintiffs allege that their terminations were labeled as RIFs but did not follow the regulations prescribing the manner in which RIF actions must be effected "often with the goal of eliminating certain federal employees instead of positions and denying federal employees their retention rights."  Compl. at ¶¶ 42-44.

Referencing the RIF regulations, the plaintiffs aver that RIF actions require consideration of competitive areas, levels, and retention registers which should identify tenure, length of service, veterans' preference and performance for the purpose of determining which employees would be subject to the RIF action but such action was taken before completion of the necessary analysis. *Id*. at ¶¶ 87-90, 107.  The plaintiffs allege that competitive areas were inaccurately defined or "manipulated" in that they were either reduced in size or expanded to "ensure that employees in those competitive areas were blocked from any retention rights."  *Id*. at ¶¶ 69, 77, 92-96.  The Department of Education, the plaintiffs allege, failed to prepare *any* retention register.  *Id*. at ¶ 77.

6

The plaintiffs allege further that certain RIF notices issued to the plaintiffs had service computation dates listed that were erroneous and were missing performance rating information. *Id*. at ¶ 57.

The plaintiffs also allege that the defendants retrieved and shared information with, for example, OPM and OMB, culled from employment-related record systems reflecting personnel status, performance history, attendance, position classification, tenure, veterans' preference, retirement eligibility, and "programmatic function," to group positions and employees for comparison purposes. *Id*. at ¶¶ 108-110. According to the plaintiffs, the records relied upon to make the RIF-related decisions did not accurately correspond to certain of the plaintiffs' actual duties, work assignments or operational functions. *Id*. at ¶¶ 61, 108, 110-13. The plaintiffs allege that the defendants relied upon records that were "rife with inaccuracies and omissions" about the plaintiffs' service computation dates, tenure status, retirement eligibility, and veterans' preference. *Id*. at ¶ 114.

The plaintiffs maintain that the RIF actions were carried out without providing the plaintiffs with an opportunity to "identify errors, supply missing context, or correct the information relied upon." *Id*. at ¶ 115. They further allege that "Administration officials" made stigmatizing and disparaging statements about "all of the [p]laintiffs to this action." *Id*. at ¶¶ 40, 43, 55-56, 65, 68, 74-75. 85. The plaintiffs aver that they had no opportunity to "defend themselves" against such statements. *Id*. at ¶ 78. The plaintiffs allege further that the "procedural" irregularities attendant to the RIF actions violated the Due Process Clause of the Fifth Amendment to the United States Constitution (Count I) and the Administrative Procedure Act ("APA") (Count II) in that the RIF actions were not in accordance with the law and were arbitrary and capricious and thus constituted violations of 5 U.S.C. § 706(2)(a). The plaintiffs also allege that the RIF actions violated 5 U.S.C. §§ 552a(g)(1)(C) and (D), (o), (p) and (q) of the Privacy Act (Count III) in that the defendants

purportedly used inaccurate and unverified records to make its decisions regarding the plaintiffs' terminations.  Compl. at ¶¶ 119-144.  The plaintiffs also invoke, as a separate standalone count, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, (Count IV), and request that the Court "clarify" the parties rights and "establish the unlawfulness of the current process."[4]  Compl. at ¶¶ 147-48.

On April 24, 2026, two months after the filing of the instant Complaint, certain of the plaintiffs, 84 in number, filed a motion seeking a preliminary injunction.[5]  *See* ECF No. 16.  The defendants against whom such injunctive relief is sought filed an Opposition to the motion on June 3, 2026.  *See* ECF No. 23.  Any Reply thereto by the plaintiffs is due on June 19, 2026.  ECF No. 22.

### III.  LEGAL STANDARDS

### Motions to Dismiss -- The Governing Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(1) – Lack of Subject Matter Jurisdiction

A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the question of whether the court has the competence or authority to hear the case.  If it does not, then the Rule authorizes dismissal of the case for lack of subject matter jurisdiction.  *Barnett v. United States*, 193 F.Supp.3d 515, 518 (D.Md. 2016).  The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the

---

[4]  Count IV of the Complaint, the Declaratory Judgment Act count, does not create a stand-alone cause of action. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).  It should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

[5]  The motion for a preliminary injunction was filed by the plaintiffs formerly employed by the Department of State, USAID, ATF, Department of Education, and the Department of Homeland Security defendants. *See* Motion for Preliminary Injunction, ECF No. 16.

evidence. *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F.Supp.3d 162, 176 (D.Md. 2019). *See also Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (same).

A challenge to subject matter jurisdiction can be either facial or factual. The former proceeds on the premise that "the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Mayor & City Council of Baltimore v. Trump,* 416 F.Supp.3d 452, 479 (D.Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). A factual challenge is based on the assertion that the "jurisdictional allegations of the complaint [are] untrue." *Id*. In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). In a factual challenge, the court need not accord as gospel the complaint allegations. *Kerns*, 585 F.3d at 192. The court may decide disputed issues of fact with respect to jurisdiction and regard the pleadings as "mere evidence" on the issue, considering evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6) – Failure to State a Viable Claim

A challenge under Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon which relief can be granted. In considering such, "[a] court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action.").

Stated simply, a complaint must allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. What this means is that the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Twombley*, 550 U.S. at 555, 570. The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).

## IV.  ARGUMENT

### A.  The Civil Service Reform Act Precludes This Court's Jurisdiction Over Plaintiffs' Claims Under the *Thunder Basin* Test and Dismissal is Warranted.

Consonant with Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Court should dismiss the plaintiffs' Complaint for the inarguable reason that precedent requires that they seek the relief proposed in the Complaint before the MSPB and not in this Court. Notably, the plaintiffs acknowledge that they have all appealed the RIF actions at issue to the MSPB. Compl. at ¶ 2, 43. Appeals in that forum are now pending. Despite that conceded fact, *id.*, the plaintiffs maintain that they should be allowed to short circuit the already-in-progress special statutory review scheme that exists under the Civil Service Reform Act ("CSRA") to pursue their claims, really three in number, in this Court where they request the same remedies available to them under the CSRA. The plaintiffs allege that their claims should not be channeled into the CSRA's integrated system of statutory review because the "MSPB's statutory independence has been deliberately eliminated by

10

the [Trump] Administration and its processes and procedures have been broken to the point where any appeals to it are futile." *Id*. at ¶ 2.

In support of that allegation, the plaintiffs point to the February 2025 firing of the former MSPB Chair, Cathy Harris, and the subsequent issuance of Executive Order 14215, 90 Fed. Reg. 10447, 10448-49 (Feb. 24, 2025).[6]  That EO, they maintain, operates to impose Presidential "control" over independent agencies, including the MSPB.  Compl. at ¶¶ 97-99.  A testament to such, the plaintiffs further allege, is that the EO: prohibits an Executive employee from advancing a legal interpretation that conflicts with the opinion of the President or Attorney General on a legal matter; gives the OMB authority to establish performance standards for the MSPB Chair and to review agency obligations and adjust agency apportionments to align with Presidential policies and priorities; and agency heads are required to establish a White House liaison. *Id*.  The plaintiffs also aver that the scale of the RIFs and other personnel actions compromises the ability of the MSPB to hear appeals expeditiously and so they should not have to air their challenges to the RIFs

---

[6]  Executive Order 14215, *Ensuring Accountability for All Agencies*, aims, to the extent consistent with applicable law, to "improve the administration of the executive branch and to increase regulatory officials' accountability to the American people, it shall be the policy of the executive branch to ensure Presidential supervision and control of the entire executive branch."  EO 14215 at § 1.  Under the EO, The Director of OMB "shall establish performance standards and management objectives for independent agency heads, as appropriate and consistent with applicable law, and report periodically to the President on their performance and efficiency in attaining such standards and objectives. *Id*. at § 4.  Section 5 of the EO provides that the OMB Director shall periodically review agencies' obligations to assure that they align with the President's policies and priorities and consult with the agencies to adjust, as permitted by law, their apportioned appropriations. *Id*. at § 5(a)-(b).  Under Section 7 of the EO, "The President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch.  The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties. No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General." *Id*. at § 7, 90 Fed. Reg. 10447-49 (Feb. 18, 2025).

in that forum. *Id*. at ¶ 100-04. These allegations are nothing more than unsupported conclusions that this Court is not bound to accept or accord any weight. They do not compel displacing the applicability of the CSRA's procedural protections and review provisions. To do so would ignore its primacy and the weight of authority holding that Congress may remove certain claims from the general jurisdiction of the federal courts in order to channel the claims into a system of statutory review. The framework set forth by the Supreme Court in determining district court jurisdiction preclusion establishes that the plaintiffs' Complaint must be dismissed.

    1.  **The *Thunder Basin* Framework at Both Steps Supports CSRA Channeling Here.**

    **(a).  The CSRA Statutory Scheme Evinces Congress's Intent to Preclude District Court Jurisdiction.**

Ordinarily, federal district courts have exclusive "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As noted by the Supreme Court in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 185 (2023), Congress may, by way of an alternative scheme of review, preclude that district court authority. The preclusion of district court jurisdiction may be express or implied. *Id*. The latter may be apparent from the specification of a different mechanism to resolve claims about agency action. *Id*.

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994), the Supreme Court enunciated a two-part test for determining whether an alternative statutory review scheme is intended to supplant district court jurisdiction. There, a mining company objected to adhering to the Mine Safety & Health Administration's ("MSHA") directive, upon the institution of a fine, that the company post information identifying mine workers' designated union representative. *Id*. at 204-05. The mining company sued in federal district court requesting pre-enforcement

injunctive relief, asserting, *inter alia*, that requiring it to challenge the MSHA's interpretation of the Mine Safety and Health Amendment Act and certain of its regulations through the statutory review process established under that Act would violate the company's Fifth Amendment due process rights.  *Id*.  The Supreme Court held that district court jurisdiction was precluded by the Act despite its making no mention of applicability to pre-enforcement claims and that Congress intended to direct challenges under the Mine Act to a single review process.  *Id*. at 208-15.  In so holding, the Court drew on several considerations.

First, a court must consider whether there is "fairly discernable" Congressional intent to channel initial review to an administrative body.  *Thunder Basin*, 510 U.S. at 207.  *See also Elev8 Baltimore, Inc. v. Corporation for National and Community Service,* 804 F.Supp.3d 524 (2025) (discussing the factors).  In determining whether the statute is intended to preclude judicial review, courts may consider its language, structure, purpose, and legislative history.  *Thunder Basin*, 510 U.S. at 207; *see also Axon*, 598 U.S. at 185.  If the court answers yes at the first step, it must move on to ask, "whether the statutory review scheme, though *exclusive* where it applies, reaches the claim[s] in question." *Axon*, 598 U.S. at 186.  In other words, the court must determine "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'" *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 212).  In considering the second question, courts apply three factors identified in *Thunder Basin*: (1) whether "precluding district court jurisdiction" would "foreclose all meaningful judicial review of the claim," (2) whether the claim is "wholly collateral to [the] statute's review provisions," and (3) whether the claim is "outside the agency's expertise." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13) (alteration in *Axon*).  "When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction.' . . . . . But the same conclusion might follow if the factors

13

point in different directions." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489, (2010)).

The statutory scheme laid out by Congress in the CSRA evinces its intent to preclude district court jurisdiction in cases like this one.  The CSRA "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees."  *United States* v. *Fausto*, 484 U.S. 439, 455 (1988).  It provides that "[a]n employee . . . may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation."[7] 5 U.S.C. § 7701(a).  The MSPB also has an arsenal of remedies available to it should it find in the employee's favor.  The MSPB can order relief to prevailing employees that includes reinstatement, backpay, attorney's fees and even declaratory relief.  5 U.S.C. § 1204(a)(2), 7701(g).  Indeed, these are remedies that all of the plaintiffs in this case ask this Court to order should the Court assume jurisdiction.  Compl., Prayer for Relief.  Under the CSRA's administrative and judicial review scheme, the Federal Circuit has exclusive jurisdiction to review most final decisions of the MSPB, absent two exceptions not relevant here.[8]  5 U.S.C. § 7703(b)(1)(A).  In evaluating if the review scheme created in the CSRA divests district courts of their ordinary jurisdiction over cases like the instant one, the Supreme Court has answered that question affirmatively in *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012).  The Court there held, "[T]he CSRA's elaborate framework … indicates that extrastatutory review is not available to

---

[7]  On February 10, 2026, OPM issued a proposed regulation that would rescind MSPB's jurisdiction over RIF appeals and move such appeals to OPM instead.  91 Fed. Register 5861, 2026 WL 358155 (Feb. 10, 2026).  The rule has not been finalized and will likely be prospective in any event.  It will therefore not deprive the MSPB of jurisdiction over the plaintiffs' current appeals now pending before the MSPB.

[8]  Those exceptions are for whistleblower cases, 5 U.S.C. § 7703(b)(1)(B), and mixed cases, that is, where employment discrimination is alleged as the basis for the personnel action.  5 U.S.C. § 7703(b)(2).

14

those employees to whom the CSRA grants administrative and judicial review." *Id*. (quotation cleaned up). "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11–12.

To depart from *Elgin* at step one of the *Thunder Basin* analysis and accept the plaintiffs' allegation that the MSPB is no longer functioning as Congress intended is to reward speculation, not fact. So too should the Court reject the plaintiffs' principal argument that the MSPB is insufficiently "independent" from the head of the Executive Branch to support applying the premise upon which *Elgin's* channeling analysis depends and so they should not be required to submit to the CSRA's review scheme. Compl. at ¶¶ 2, 97-100. True enough, in *Nat'l Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025), *stay denied sub nom. Margolin v. Nat'l Ass'n of Immigration Judges*, No. 25A662 (U.S. Dec. 19, 2025) (hereinafter, "*NAIJ*"), the Fourth Circuit Court of Appeals remanded the case to the district court to conduct a factual inquiry into whether the CSRA continues to provide a functional adjudicatory scheme as Congress intended.[9] A closer reading of the case dispels any notion that it weights conclusively against district court jurisdiction preclusion. In *NAIJ*, immigration judges brought a pre-enforcement challenge to an employee policy requiring the judges to obtain permission before speaking publicly on immigration-related issues, arguing that the policy constituted a prior restraint and was void for vagueness and so violated their First and Fifth Amendment rights. 139 F.4th at 299. The district court dismissed the case for lack of jurisdiction, concluding that the policy could be contested

_____

[9] The Court of Appeals denied rehearing en banc. *See National Assn. of Immigration Judges v. Owen*, 160 F.4th 100 (4th Cir. 2025).

15

through the CSRA.  *Id*.  The immigration judges appealed that decision, thereby calling upon the Court of Appeals to weigh in on whether the CSRA stripped the district court of jurisdiction.

In considering that issue, the Fourth Circuit traced the history of the CSRA in the context of applying the *Thunder Basin* analysis for district court jurisdiction preclusion.  *Id*. at 302-05. Although the Fourth Circuit concluded that the second step of the *Thunder Basin* framework *was* satisfied, it noted that during the pendency of the case, whether the CSRA was functioning as Congress intended—step one of the *Thunder Basin* test—was called into question.  *Id*. at 305.  It's reasoning in this regard was predicated on two circumstances.  First, the Fourth Circuit noted that the MSPB then lacked a quorum because the Special Counsel and two MSPB members had then been removed.[10]  *Id*.  The Fourth Circuit went on to say that these removals suggested that the CSRA's "framework" might not function "[i]f … the Senate-confirmed roles in the MSPB and Special Counsel go unfilled."  *Id.*  That concern is not implicated in this case where the Special Counsel plays no role and the Board now has a Senate-confirmed quorum.  Secondly, the Court of Appeals suggested that "Congress may well have intended the CSRA to strip district courts of jurisdiction only because it understood that the President could not exercise unfettered control over the Special Counsel and MSPB."  *Id*. at 307.  It then observed that, "[i]f that understanding proves to be incorrect, then a reevaluation of Congress's intent under *Thunder Basin* may be required. We leave that issue, should it arise, to the district court to address in the first instance."  *Id*.

---

[10]  The Board's quorum was restored in October 2025.  *See* MSPB FAQ About the Lack of Quorum Period and Restoration of the Full Board (Nov. 14, 2025) at http//www.mspb.gov (last visited June 12, 2026).  Moreover, the Fourth Circuit incorrectly stated that two MSPB members were removed.  *See NAIJ*, 139 F.4th at 308.  In fact, as explained in the FAQ, only Chair Harris was removed; Member Raymond Limon retired from federal service upon the conclusion of his statutory term.  Additionally, the Special Counsel heads a separate, independent office – the Office of Special Counsel – and is not an MSPB member or otherwise part of the MSPB.

Notably, the Supreme Court has cast doubt on the premise put forth by the Fourth Circuit in *NAIJ*. Specifically, in *Margolin v. NAIJ*, 608 U.S. ----, 146 S. Ct. 1285, 1288 (2026) (per curiam), the Supreme Court, granting certiorari review, reversed the Fourth Circuit's panel decision in *NAIJ* for ruling on a question not presented, thus violating the party presentation principle. The Supreme Court pointed out that the question presented in *NAIJ* was whether the immigration judges' claims were covered and thus precluded by the CSRA; but in addition to (correctly) determining that they were so precluded in the ordinary course, the Fourth Circuit improperly reached beyond that narrow question to address whether the CSRA might not—in light of current conditions—channel *any* claims. *Id*. Relevant here too is the extra step taken in the two-justice concurrence explaining why the Fourth Circuit's opinion is actually wrong on the merits.

Justice Thomas, joined by Justice Barrett, observed that under its precedent, and *Elgin* in particular, the district court lacked jurisdiction over the NAIJ's challenge to a federal workplace policy and NAIJ's claims had to be brought through the CSRA's administrative scheme, something which the Fourth Circuit acknowledged. *Id*. at 1289. Justice Thomas went on to state that "[n]either the President's view that he can remove federal executive officials . . . nor his having done so, change the meaning of the statute or the binding nature of this Court's interpretation of it. Conditions may have changed, but the statute has not." *Id*. at 1289-90 (cleaned up). Citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996), Justice Thomas noted that "[c]ourts may not 'rewrite the statutory scheme in order to approximate what [courts] think Congress might have wanted had it known that' the President or courts may conclude that its removal restrictions were "beyond its authority." 146 S. Ct. at 1290. He wrote further that, "[s]tatutes change only when

17

Congress changes them, not when judges decide that they no longer vindicate Congress's purposes. *Id*. (citing U. S. Const., Art. I, §§ 1, 7).  This Court should heed that reasoning and apply it here.

Irrespective of the head of the Executive Branch's exercise of his removal power and the issuance of EO 14215, the CSRA is still best understood to maintain its preclusive effect because the MSPB continues to perform the essential task that Congress envisioned for it prefatory to the enactment of the CSRA: providing a single administrative body for covered federal-employment disputes and thereby ensuring a uniform system of remedies and body of law.  In creating the MSPB, Congress sought to jettison the "wasteful and irrational" system of judicial review that had preceded it.  *Fausto*, 484 U.S. at 445.  Importantly, and by clear Congressional design, adequate and independent judicial review of any claim brought to the MSPB remains available in the Federal Circuit (or, for certain claims, for example, whistleblower claims, another judicial forum).  That all of the plaintiffs in this case have availed themselves of the CSRA's review scheme serves as their tacit acknowledgement of the legitimacy and proper functioning of the forum despite their allegations to the contrary in *this* forum.  Compl. at ¶ 2, 43.  Creating, as plaintiffs would have it, a second avenue for relief in district court is counter to Congress's intent in enacting the CSRA. Permitting parallel litigation in district court would only undermine Congress's intent to ensure a single, consistent avenue for resolving federal employment disputes and mark a return to the "wasteful and irrational" patchwork of remedies that *Fausto* explains the CSRA was meant to eliminate.  484 U.S. at 445.  It bears repeating that the remedies sought by the plaintiffs— reinstatement, backpay, attorney's fees, declaratory relief—mirror those available through the MSPB.

Though the plaintiffs seemingly allege that the CSRA is not the exclusive forum for the appeal of RIFs, *see* Compl. at ¶¶ 36-37, Congress expressly authorized MSPB review of "any

18

action which is appealable to the Board under any law, rule, or *regulation*." 5 U.S.C. § 7701(a) (emphasis added).  Given such authorization, there is no reason to think that allowing federal employees to bypass available review in the MSPB and the Federal Circuit based merely on the source of such right to seek MSPB review was intended by Congress.  *See also Alder v. Tennessee Valley Auth.*, 43 F. App'x 952, 956 (6th Cir. 2002) (describing a "reduction-in-force decision" as "a fundamental employment claim subject to MSPB review"), *cert. denied*, 537 U.S. 1112 (2003). Moreover, whether exclusive or not, logic and practicality counsel in favor of declining exercising jurisdiction here where appeals under the CSRA are proceeding.  The preservation of the Courts resources are not served otherwise.  In sum, Congress's intent to preclude district court jurisdiction is "fairly discernible" in the CSRA's statutory scheme and so the first step of the *Thunder Basin* test is satisfied.

## 2. The Claims Are Of The Type Intended For Review Within the CSRA's Structure.

With regard to the second step of the analysis, *Thunder Basin* instructs that the question to be answered is whether the particular claims asserted are "of the type Congress intended to be reviewed within this statutory structure."  510 U.S. at 208, 212.  In considering the second question, courts apply three factors three factors identified in *Thunder Basin*: (1) whether "precluding district court jurisdiction" would "foreclose all meaningful judicial review of the claim," (2) whether the claim is "wholly collateral to [the] statute's review provisions," and (3) whether the claim is "outside the agency's expertise." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212–13) (alteration in *Axon*).  When the answer to all three questions is yes, it is clear that Congress did not intend to limit jurisdiction.  *Id*.  Here, all three factors militate against this Court exercising jurisdiction over the plaintiffs' Complaint.

19

**(a). <u>Channeling Will Not Foreclose All Meaningful Judicial Review.</u>**

Whether meaningful judicial review of a claim is available is the "most important" factor in the second step of the *Thunder Basin* test. *NAIJ*, 139 F.4th at 308 (quoting *Bennett v. SEC*, 844 F.3d 174, 183 n.7 (4th Cir. 2016). Precluding district court jurisdiction in this case would not foreclose all meaningful judicial review of the plaintiffs' claims. The Supreme Court decided that question in *Elgin*. "The CSRA makes MSPB jurisdiction over an appeal dependent *only on the nature of the employee and the employment action at issue.*" *Elgin*, 567 U.S. at 18 (emphasis added). The plaintiffs nowhere assert in their Complaint that they are not covered by the CSRA and that their removals, whether effected by the vehicle of a RIF or not, fall outside of the CSRA.

The fact that they bring claims pursuant to the Constitution and the APA are of no moment in terms of any argument that they assert claims that are different than that for which the statutory scheme is designed. As was observed in *NAIJ*, in relevant part, "[m]eaningful judicial review . . . does not require the involvement of a district court." 139 F.4th at 310. *Elgin* has held that the CSRA provides meaningful judicial review where its administrative processes authorize the Federal Circuit to consider and decide constitutional claims. 567 U.S. at 21. "Review of an agency's action in a court of appeals can alone meaningfully address a party's claims." *Axon*, 598 U.S. at 190 (quoting *Thunder Basin*, 510 U.S. at 215). That holds true even if the claims are APA-based as is the case here. APA review is available only if there is no other adequate remedy in a court. 5 U.S.C. § 704. Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship. *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000). Notwithstanding the plaintiffs' allegation that the employment actions against the plaintiffs were contrary to law and were arbitrary and capricious, *see* Compl. at ¶¶ 130-31, the bottom line is that they cannot evade that their APA claims, like their

20

Due Process claims, are the vehicle by which they seek to reverse the RIF-related removal decision, thus bringing the APA claims within the ambit of the CSRA. *See Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1013-15 (D.C.Cir. 2009) (CSRA precludes bringing federal employment claims as APA claims in district court; such claims must be channeled through the MSPB).

No different result should be reached simply because the plaintiffs allege violations of the Privacy Act stemming from the Agencies' asserted sharing and reliance upon inaccurate personnel records to make the employment-related decisions about the plaintiffs. Compl. at ¶ 136. At bottom, the plaintiffs seek relief for alleged employment-related injuries and those claims, even if characterized as Privacy Act violations, are within the province of the CSRA. The plaintiffs' complaints about reliance upon and sharing of "inaccurate records," Compl. at ¶¶ 108-114, is predicated on their assertion that the records were used "to make adverse employment determinations"— the RIFs. *Id*. The plaintiffs here may not circumvent the CSRA by using the Privacy Act to collaterally attack agency personnel decisions. *But see Jackson v. Kennedy*, Civ. Action No. 25-1750-BAH, 2026 WL 172440, at *9-11 (D.D.C. Jan. 22, 2026) (in context of motion to dismiss Privacy Act claims arising from federal employment terminations, rejecting CSRA jurisdiction preclusion of such claims under controlling D.C. Circuit precedent which has taken a narrow view of CSRA preemption in Privacy Act cases and looks to whether plaintiff's claim regards the accuracy of records, not the personnel claim).

Neither is all meaningful judicial review unavailable to the plaintiffs because they allege that the MSPB will not be able to timely adjudicate their claims because of the volume of cases likely occasioned by the RIF actions. Compl. at ¶¶ 2, 100-03. Such an allegation is speculative and tantamount to a legal conclusion that the Court need not treat as fact. *Accord Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1309 (Fed. Cir. 2021) (holding that delays in MSPB

21

adjudications, even if caused by a "severe backlog" of cases "does not render the statutory adjudication scheme constitutionally suspect" so as to permit petitioner to proceed in court before the MSPB issues a final decision). Speculation about delay or dissatisfaction with the tribunal does not create district court jurisdiction.

**(b).** **Plaintiffs' Claims Are Not Wholly Collateral to the CSRA's Review Provisions.**

Plaintiffs' claims are not wholly collateral to the CSRA scheme regardless of how they label their claims as Constitutional, APA-based, or Privacy Act-based. At root, what the plaintiffs challenge is their removals. As the Supreme Court explained in *Elgin*, what matters for purposes of the collateralism inquiry is whether the subject of the plaintiffs' challenge is a matter covered by the CSRA, not how the plaintiffs choose to describe the claims they are advancing. 567 U.S. at 22. Here, the subject of the plaintiffs' actions is fundamentally their separation from federal employment via RIF actions. Regarding the Privacy Act count, an assessment of the sufficiency of Plaintiffs' Privacy Act claims necessarily entails an assessment of the propriety of Plaintiffs' separations, including whether those separations were caused by inaccurate personnel information. Plaintiffs' claims are therefore embedded within—not wholly collateral to—the CSRA's review scheme.

As regards the Privacy Act claims, the Ninth Circuit Court of Appeals explained in *Houlihan v. OPM,* if a plaintiff could use claims of inaccurate records under the Privacy Act to challenge a termination or other adverse personnel decision, courts "would have to compare [the agency's] decision to the decision it would have made had the agency properly maintained its records," which "would necessitate a careful review of the [agency's adverse personnel] decision." 909 F.2d 383, 385 (9th Cir. 1990). This review "'would open the back door to judicial review to perhaps an overwhelming number' of CSRA claims, thereby frustrating Congress's decision to

assign to the [Office of Special Counsel] the task of policing alleged prohibited personnel practices.  A disgruntled federal employee would need only to argue that her employer failed to comply with the Privacy Act to obtain judicial review of an employment decision." *Id.* (citation omitted).  That is not the scheme for judicial review of adverse personnel decisions that Congress created, and courts therefore lack jurisdiction over Privacy Act claims that merely collaterally attack agency personnel decisions. *Id.* As *Elgin* teaches, "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Id.  See also Lim v. United States*, No. 10-cv-2574, 2011 WL 2650889, at *8 (D. Md. July 5, 2011) ("[W]hile labeled as a Privacy Act violation, [plaintiff] is ultimately challenging the basis for his discharge, a personnel decision which cannot be challenged outside the framework of the CSRA.").

Furthermore, the remedies the plaintiffs urge this Court to provide them if it grants them preliminary injunctive relief are substantially the same as could be provided through the CSRA statutory scheme – restoration to their positions with backpay and benefits.  *See* Compl. Prayer for Relief at ¶¶ d & h.  To be sure, the relief available through the CSRA's review scheme is not identical to the relief that Plaintiffs seek under the Privacy Act.  Plaintiffs request for statutory damages and declaratory relief, *see id.*, does not render Plaintiffs' claims sufficiently collateral to evade the exclusive scheme that Congress created through the CSRA. *Cf. Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 436 F. Supp. 3d 170, 185 (D.D.C. 2019), ("[T]here is no requirement that the alternative remedy be identical."), *aff'd*, 9 F.4th 935 (D.C. Cir. 2021).

As in *Elgin*, the plaintiffs' "constitutional claims [and the APA and Privacy Act claims] are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the employment

23

action. 567 U.S. at 22. In *NAIJ*, the Fourth Circuit Court of Appeals made clear the plaintiffs cannot bypass the CSRA's post-enforcement procedures "simply by alleging a constitutional challenge and framing it as 'structural,' 'prophylactic,' or 'preventative.'" 139 F.4th at 310.

### (c). The Claims Are Not Beyond the MSPB's Expertise.

Lastly, the substantive claims alleged by the plaintiffs (Counts I through III) are sufficiently intertwined with matters on which the MSPB can bring to bear its expertise. As referenced above, despite the constitutional and statutory garb in which the plaintiffs dress their claims, the subject of the claims are their removals and that the RIFs were effected contrary to the statutory and regulatory requirements attendant to RIF actions. The application of the RIF regulations, and the statutes governing agency operations are indeed matters on which administrative agencies have expertise even if only to address preliminary questions pertinent to the issue.

Unquestionably the MSPB possesses the expertise necessary to resolve Privacy Act claims; indeed, it routinely adjudicates asserted violations of the Privacy Act when directly implicated in matters over which the MSPB has jurisdiction. *See*, *e.g.*, *Herman v. Dep't of Justice*, 115 M.S.P.R. 386, 391 (2011) (determining that the appellant raised a nonfrivolous allegation of a protected disclosure based on an alleged violation of the Privacy Act); *Gill v. Dep't of Defense*, 92 M.S.P.R. 23, 31-33 (2002) (finding in a demotion appeal that the agency failed to prove its charge that the appellant violated the Privacy Act); *Johnson v. Dep't of Treasury*, 8 M.S.P.R. 170, 178 n.5 (1981) (holding employee's "rights under the Privacy Act were not violated"). Under such circumstances, there is no reason to conclude that Congress intended to exempt the plaintiffs' claims from exclusive review within the CSRA scheme. Given that all factors of the *Thunder Basin* favor preclusion of district court jurisdiction, the plaintiffs' Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Given that the plaintiffs' Declaratory Judgment Act

24

claim (Count 4) rises and falls with their Due Process, APA, and Privacy Act claims, dismissal of those claims requires dismissal of the action in its entirety.

### B. The Plaintiffs Fail To State A Claim Against the MSPB Under Rule 12(b)(6).

The plaintiffs have named as a defendant in their Complaint the MSPB.  Compl. at ¶ 20. Yet there are no actions related to their contested employment separations that were undertaken by the MSPB and alleged by the plaintiffs.  *Id*. at ¶¶ 38-118.  The employment decisions at issue were made by the plaintiffs' employing agencies, not the MSPB.  Therefore, the Complaint, as to the MSPB, must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  Additionally, Count IV of the Complaint, the Declaratory Judgment Act count, does not create a stand-alone cause of action. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).  It too should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## V.  CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court grant the defendant's motion to dismiss the plaintiffs' Complaint in its entirety.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2026, the foregoing Defendants' Motion to Dismiss the Plaintiffs' Complaint – ECF No. 1, was filed with the Clerk of the Court using the CM/ECF system and was thus served upon Plaintiffs' counsel of record:

Joshua Rose
DC Consumer Law Group, PLLC
1407 Highland Drive
Silver Spring, MD 20910
Jrose@dcclg.com

Amy E. Powell
Lawyers for Good Government
1319 F St. NW, Suite 301, PMB 181
Washington, D.C. 20004
amy@lawyersforgoodgovernment.org
*Attorneys for Plaintiffs*

/s/ Tarra DeShields
Tarra DeShields
Assistant United States Attorney

26