# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DOREEN MULLADY,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **RUSSELL VOUGHT, in his official capacity as Director of the United States Office of Management and Budget,** *et al.*, <br><br> **Defendants.** | **Civil No. 1:26-cv-00573-SAG** |

### PLAINTIFFS' REPLY MEMORANDUM OF LAW
### <u>SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION</u>

## Table of Contents

*Table of Authorities*............................................................................................................. *ii*

*I. INTRODUCTION* ............................................................................................................ *1*

*II. THE CSRA DOES NOT PRECLUDE JURISDICTION.*............................................... *1*

   *A. Congress Did Not Intend to Channel These Claims to a Captured MSPB.* ........... 1

   *B. The Thunder Basin Factors Confirm District Court Jurisdiction.* ........................ 4

      1. Meaningful Review................................................................................................. 6

      2. Wholly Collateral................................................................................................... 7

      3. Agency Expertise ................................................................................................... 7

*III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR DUE PROCESS CLAIMS.* .............. *8*

   *A. Defendants Denied Plaintiffs Any Meaningful Opportunity to Prevent the Deprivations.* .... 9

   *B. The Notices Confirm Rather Than Cure the Constitutional Violations.* ............................ 10

   *C. Defendants Violated Plaintiffs' Liberty Interest without Due Process.* ............................. 11

   *D. Post-Deprivation Review by the MSPB also Violates Due Process.* ................................. 13

*IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR APA CLAIMS.* ............................... *13*

   *A. Defendants Respond to an APA Claim Plaintiffs Did Not Bring.* ..................................... 13

   *B. Defendants Acted Contrary to Law.* ............................................................................... 14

   *C. Defendants Acted Arbitrarily and Capriciously.* ............................................................ 15

*V. PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE HARM.* ........................................ *16*

   *A. The Injunction Should Not Be Denied for Delay* ............................................................. 17

   *B. Plaintiffs Continue to Suffer Ongoing Constitutional Injury.* .......................................... 17

   *C. Plaintiffs Continue to Suffer Irreparable Harm.* ............................................................. 18

   *D. The MSPB Process Does Not Remedy Plaintiffs' Injuries and Continues to Inflict Them.* . 19

*VI. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR RELIEF* ....................... *19*

*VII. NO BOND SHOULD BE REQUIRED.*.......................................................................... *20*

*VIII. CONCLUSION* ........................................................................................................ *20*

**Table of Authorities**

**Cases**

*Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) ................................................ 17

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191–95 (2023) ...................................................... 4, 6

*Barry v. Barchi*, 443 U.S. 55, 66 (1979)...................................................................................... 13

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)....................................... 12

*Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985)*................................................ 9

*Comans v. EOP et. al*, 25-cv-01237 ............................................................................................... 2

*Comey v. DOJ*, 25-cv-07625 (S.D.N.Y) ........................................................................................ 2

*DNC v. Trump*, 25-cv-00587 (D.D.C.) ........................................................................................... 2

*Does v. Musk, No. CV 25-0462-TDC, 2025 WL 2346258, at 7 (D. Md. Aug. 13, 2025)*................ 5

Does v. Musk, No. CV 25-0462-TDC, 2026 WL 242062 (D. Md. Jan. 29, 2026) ......................... 5

*Dombrowski v. Pfister*, 380 U.S. 479, 489–90 (1965)................................................................... 18

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012)........................................................... 1, 2, 5, 6

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)........................................................... 15

*Gold v. Eng'g Contractors Inc.*, 831 F. Supp. 2d 856, 860 (D. Md. 2011) .................................. 17

*Goldberg v. Kelly*, 397 U.S. at 261, 267-68.............................................................................. 9, 13

*Gordon v. EOP*, 25-cv-02409 (D.D.C.) .......................................................................................... 2

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 328 (4th Cir. 2021) ............................................................................................................................................. 3

*Jackler & Jaroch Consol. v. Dep't of Justice*, 2026 MSPB 3 (Mar. 20, 2026) ............................. 2

*Jackler v. Dep't of Justice*, No. DA-0752-25-0330-I-1 ................................................................. 2

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) ....... 18, 20

*League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) .............. 20

*Margolin v. NAIJ*, 146 S. Ct. 1285, 1288 (2026) ........................................................ 3, 4

*Mayor of Baltimore v. Azar*, 973 F.3d 258, 292 (4th Cir. 2020) ................................. 15

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991) ............................... 7

*Morris v. McCaddin*, 553 F.2d 866, 870 (4th Cir. 1977) ........................................... 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). 15, 16

*Muffley ex rel. N.L.R.B. v. Spartan Mining Co.*, 570 F.3d 534, 544 (4th Cir. 2009) .................... 17

*National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) .............. 3, 4

*Nken v. Holder*, 556 U.S. 418, 435 (2009) ................................................................. 19

*Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) ................................................... 20

*Roe v. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020) ............................................. 16

*Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ................................................. 18

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................................. 17, 19

*Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) ......................... 12

*Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) ................ 16

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ........................................... 1, 4, 8

*Tumey v. Ohio*, 273 U.S. 510, 523 (1927) ................................................................. 13

*Withrow v. Larkin*, 421 U.S. 35, 47 (1975) ............................................................... 13

*Zimbelman v. Savage,* 228 F.3d 367, 369 (4th Cir. 2000) ........................................... 6

**Statutes**

5 U.S.C. § 7512 ........................................................................................................... 1, 5

5 U.S.C. §§ 3501-3504 ............................................................................................... 14

5 U.S.C. §§ 706(2)(A), (C), (D) .................................................................................. 13

**<u>Regulations</u>**

5 C.F.R. pt. 351 ................................................................................................................ 14

**<u>Legislative Material</u>**

S. Rep. No. 95-969, at 6–7, 24 (1978) ............................................................................. 3

**<u>Statutes - Session Law</u>**

Civil Service Reform Act 92 Stat. 1111 ................................................................... 1, 3, 4

**<u>Executive Orders</u>**

Executive Order 14215 ................................................................................................. 2, 7

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 105.2, Plaintiffs, by and through their counsel, respectfully submit this Reply in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 16 (the "Motion").

## I. INTRODUCTION

Defendants' ("Government") Response ignores or mischaracterizes the bases for Plaintiffs' claims. Plaintiffs challenge the legality of the MSPB process itself and present substantial evidence supporting their claims. The Motion should be granted.

## II. THE CSRA DOES NOT PRECLUDE JURISDICTION.

The framework set out in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) does not preclude jurisdiction over the claims here. *Elgin* addressed a statutory review scheme Congress established for covered adverse actions and assumed it would operate through an independent adjudicatory body. Plaintiffs challenge both. First, the Supreme Court in *Elgin* assumed the continued existence of the independent review mechanism that Congress created through the Civil Service Reform Act ("CSRA"). As Plaintiffs and the Administration agree, the independence presupposed by *Elgin* no longer exists. Second, an examination of Plaintiffs' RIF claims confirms that these structural challenges to the process are not the types of claims channeled to the MSPB, particularly given that Congress did not classify RIFs as adverse actions under 5 U.S.C. § 7512. Plaintiffs do not ask the Court to review individual MSPB decisions, but the structure and adequacy of the MSPB's process.

### A. Congress Did Not Intend to Channel These Claims to a Captured MSPB.

Plaintiffs do not dispute that, in the ordinary course, Congress intended many employment disputes to proceed through the MSPB or that *Elgin* generally requires channeling of most claims regarding covered adverse actions through the review process established by Congress. But neither

1

*Elgin* nor its progeny addressed the situation presented here: whether agency actions that are *not* covered adverse actions can be forced to proceed exclusively through an MSPB that has lost all independence and functionality.

It bears repeating: Plaintiffs are in complete agreement with the Administration on the factual question of whether the MSPB is operating independently. Through Executive Order 14215 (the "EO") and related actions, the Administration has asserted authority to direct and supervise independent agencies, including the MSPB, and subject those agencies to centralized control. The EO also expressly provides that "[t]he President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties," and that Executive Branch employees may not advance contrary legal positions without authorization. Exec. Order No. 14215, 90 Fed. Reg. 10,447, 10,448–49 (Feb. 24, 2025). DOJ has repeatedly advanced the same position in litigation involving independent agencies and officials. Those arguments appear in matters involving the MSPB, NLRB, and other independent adjudicatory bodies.[1] Plaintiffs here rely upon a consistent government position that independent agencies remain subject to Presidential direction and control.[2] At no point do Defendants deny the government has adopted this position. They ignore it and ask the Court to simply assume the MSPB remains independent.

This compromised and broken MSPB is inconsistent with Congressional intent, which was

---

[1] *See, e.g., Jackler v. Dep't of Justice*, No. DA-0752-25-0330-I-1, Agency's Mot. for Leave to File Additional Pleadings and Alternative Mot. to Remand, pgs. 3-4, 6 (Sept. 27, 2025); *Comans v. EOP et. al*, 25-cv-01237, tr. of motion hearing at 17-18 (Feb. 13, 2026); *DNC v. Trump*, 25-cv-00587 (D.D.C.) motion hearing transcript at 46-48 (Apr. 9, 2025); *Comey v. DOJ*, 25-cv-07625 (S.D.N.Y) MTD reply brief at 12; *Gordon v. EOP*, 25-cv-02409 (D.D.C.) MTD reply brief at 4.
[2] While in *Jackler* the MSPB declined to rule on whether it was bound to follow OLC's opinion, it strains credulity to ignore that after holding for 46 years that it lacked the authority to decide the constitutionality of statutes, the MSPB reversed its position in a decision that mirrored the outcome and reasoning of OLC's opinion. *Jackler & Jaroch Consol. v. Dep't of Justice*, 2026 MSPB 3 (Mar. 20, 2026).

reflected in the Senate Report accompanying the CSRA, which described the MSPB as a "strong, independent agency" intended to operate outside direct Presidential control. S. Rep. No. 95-969, at 6–7, 24 (1978). If Congress intended channeling because it understood that MSPB would function as an independent adjudicatory body, the Executive's assertion of authority over that body necessarily bears on the channeling analysis. Indeed, the Fourth Circuit has already recognized that MSPB independence bears directly on Congressional intent. In *National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) ("*NAIJ I*"), the Court explained that Congress may have intended channeling because it expected MSPB and OSC to function as independent entities capable of providing meaningful review. Although *NAIJ I* was later reversed on party-presentation grounds, *Margolin v. NAIJ*, 146 S. Ct. 1285, 1288 (2026) (*NAIJ II*), vacated opinions remain persuasive authority. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 328 (4th Cir. 2021).

Congress enacted the CSRA to create an orderly and effective merit system capable of providing meaningful review of federal personnel actions. *NAIJ I* expressly recognized that Congress's purposes would be undermined if the review mechanism ceased functioning as intended. As the Fourth Circuit explained:

> If the agencies fail to perform their duties such that covered employees' claims are not adequately processed, then the framework of the CSRA would be thwarted. Either situation would defeat congressional intent, as Congress enacted the CSRA for the express purpose that the merit system function and that claims be addressed adequately and efficiently.

*NAIJ I*, 139 F.4th at 305.

Defendants' attempt to distinguish *NAIJ I* by observing that the MSPB currently possesses a quorum. Plaintiffs, however, do not contend the MSPB lacks a quorum. Plaintiffs contend the Executive Branch has asserted authority fundamentally inconsistent with the independence Congress expected the MSPB to possess. To the extent Defendants rely upon the concurring

3

opinion in *NAIJ II,* suggesting that changed circumstances cannot alter statutory meaning, that argument again misses the point.[3] Plaintiffs do not contend the EO amended the CSRA. Plaintiffs contend the EO and surrounding executive actions have changed the factual and constitutional circumstances in which this Court must determine whether channeling remains appropriate under *Thunder Basin* and *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191–95 (2023), both of which require courts to evaluate the practical operation of the review scheme Congress created. The court in *NAIJ I* anticipated this question and left it to the district court to address, should it arise. Plaintiffs respectfully submit that the question has now arisen and must be addressed.

### B. The Thunder Basin Factors Confirm District Court Jurisdiction.

Even if the Fourth Circuit was substantively wrong in *NAIJ I* and the current non-functionality of the MSPB is irrelevant, Plaintiffs' claims are not appropriate for channeling. Two fundamental factors influence each of the *Thunder Basin* factors. First, Plaintiffs challenge the structure and adequacy of the review mechanism itself. Defendants never explain why Congress would have intended challenges to the legality and structure of MSPB review to be litigated before the MSPB. Plaintiffs are not required to sue the MSPB in the MSPB. Nor are they required to pursue claims challenging the legality of the review structure through the very process alleged to be unlawful. That is the core teaching of *Axon*. The claims presented here challenge the legality and constitutionality of the review process Defendants seek to impose.

---

[3] Two of the nine justices would have reversed the Fourth Circuit's decision on the merits, arguing that changed circumstances are not a reason to change the interpretation of the statute. *NAIJ II*, 146 S. Ct. at 1290. But the Fourth Circuit did not find that the statute had changed. It reasoned that *Elgin* had interpreted the scope of statutory preclusion to include a Congressional intent to channel certain claims to an independent MSPB, based in part on undisputed facts about the MSPB's independence and the nature of the process at MSPB. *NAIJ I*, 139 F.4th at 305-08. When such facts are disputed and the nature of the process is both changed and at issue in the underlying claims, it would stretch Congressional intent too far to claim that Congress intended to channel different kinds of claims to a different kind of process. *Id*. at 305.

Second, *Elgin* involved a covered adverse action expressly addressed by the statutory review scheme. RIFs occupy a materially different position. Unlike removals and other adverse actions enumerated in Chapter 75, RIFs are not included within 5 U.S.C. § 7512. Defendants do not identify any statute directing that constitutional challenges arising from RIFs must proceed exclusively through MSPB review. Rather, MSPB review of RIF actions exists through regulations promulgated pursuant to OPM's general authority. That distinction matters. Congress never expressly made MSPB review of RIFs exclusive, nor did Congress expressly require channeling of constitutional challenges directed at the legality and structure of the review process itself. Defendants ask the Court to infer congressional intent from regulations implementing a review process Congress never expressly made exclusive.

The distinction is particularly important because Congress specifically excluded RIFs from Chapter 75 adverse-action review. *See* 5 U.S.C. § 7512. As one court recently observed, RIFs do not fall within the adverse-action framework addressed in Chapter 75. *See Does v. Musk*, No. CV 25-0462-TDC, 2025 WL 2346258, at *7 (D. Md. Aug. 13, 2025), *motion to certify appeal denied*, 2026 WL 242062 (D. Md. Jan. 29, 2026). Whether or not that decision ultimately proves persuasive on every point, it correctly recognizes that RIFs occupy a distinct statutory position from the adverse actions at issue in *Elgin*. Congress has never expressly provided that every constitutional challenge arising from a RIF must be channeled through MSPB review, much less a challenge directed at the legality and independence of the MSPB itself. Defendants' theory of channeling would dramatically expand *Elgin* beyond both the statutory scheme Congress enacted and the reasoning the Supreme Court employed.[4]

---

[4] Defendants argue the statute permits the Government to direct MSPB review of RIFs by regulation. *See* Gov. Opp. at 19-20 (citing 5 U.S.C. § 7701(a)). The authority to direct additional actions to the MSPB does not mean courts should infer *exclusive channeling* in all situations where

The question therefore is not whether Congress intended some review of RIF actions to be allowed before the MSPB, but whether Congress intended employees challenging the legality and constitutionality of the review structure itself to be denied immediate Article III review. Neither *Elgin* nor the CSRA answers that question and each of the *Thunder Basin* factors points in favor of district court jurisdiction.[5]

**1. Meaningful Review**

Channeling would foreclose meaningful review of Plaintiffs' claims. Plaintiffs challenge the constitutionality of the review process itself. Those claims necessarily require inquiry into MSPB policies, guidance, procedures, communications, and relationships with OMB, OPM, DOJ, OLC, and other Executive Branch entities. Those subjects are not peripheral to Plaintiffs' claims; they are the claims. *See generally* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. at 10–23, ECF No. 16-2 ("Pls.' Mem."). *Axon* recognized that being forced to proceed through the process alleged to be unconstitutional is itself a structural injury not remedied by later appellate review.[6]

The MSPB also is an object of inquiry. Plaintiffs' claims require examination of the structure, operation, and asserted independence of the MSPB. Defendants' position is that the MSPB can oversee an inquiry into its own independence, oversight, and operations and then rule

---

challenges are directed to the MSPB by regulation alone, particularly where Congress excluded the action from review processes under Chapter 75.

[5] Defendants' citation to *Zimbelman v. Savage,* 228 F.3d 367, 369 (4th Cir. 2000) is not helpful to them. There the Fourth Circuit declined to create a *Bivens* remedy for federal employees denied an MSPB remedy. The Court did not opine on the availability of injunctive relief for federal employees who were guaranteed and then effectively denied an MSPB remedy.

[6] It is unclear when, if ever, these cases could make their way to the Federal Circuit. State Department employees who filed MSPB appeals last September still have received no action whatsoever on those appeals. There is no effective mechanism for MSPB appellants to seek relief from the MSPB or the Federal Circuit, and they are left to wait, no matter the validity or urgency of their claims. The burden imposed to go through the broken system is enormous. In *Axon*, the Supreme Court found such structural injury of having to go through the very process being challenged to be the type of claim not remedied by future court review. *Axon*, 598 U.S. at 192.

on the Constitutional sufficiency of itself. But a review process that cannot realistically develop the factual record necessary to adjudicate a claim may provide only the illusion of review. *Cf. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991) (holding that "restricting judicial review to the courts of appeals as a component of the review of an individual deportation order is the practical equivalent of a total denial of judicial review" of certain constitutional claims that required factual development beyond that could be developed in immigration courts). Plaintiffs cannot meaningfully litigate their claims about the MSPB before the MSPB.

Finally, even if the MSPB could conceivably rule that its own administrative process was a Due Process violation, it could not do so without the concurrence of Administration officials empowered by the EO. In other words, in light of the constraints placed on the MSPB by the EO, the only way the MSPB could rule those constraints violate Due Process is with the concurrence of the very people currently arguing they do not. That is not contemplated by *Elgin* or the CSRA.

### 2. <u>Wholly Collateral</u>

Plaintiffs' claims are wholly collateral to the merits of their individual RIF appeals. As in *Axon*, they challenge having to proceed through the administrative structure. The constitutional and APA injuries arise not only from any individual separation but from Defendants' use of procedures, labels, and review mechanisms Plaintiffs contend were irrelevant before they were invoked. Plaintiffs challenge the legality of the structure through which those actions were conceived, implemented, and reviewed. The relief sought confirms the point. Plaintiffs seek declaratory and injunctive relief addressing the adequacy of the process itself. *See* Pls.' Mem. at 52. Such relief extends beyond anything the MSPB could provide in an ordinary RIF appeal.

### 3. <u>Agency Expertise</u>

The MSPB possesses no special expertise regarding the constitutional independence of

itself. Nor does it possess special expertise regarding whether the EO, Executive control over independent agencies, or the challenged review structure satisfy constitutional requirements. These questions do not require specialized federal employment expertise. They require constitutional analysis. Defendants identify no reason the MSPB possesses any comparative advantage in deciding whether the Executive may exercise the authority it now claims over the very tribunal Defendants insist must adjudicate Plaintiffs' claims. Accordingly, all three *Thunder Basin* factors confirm that district court jurisdiction exists.

### III. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR DUE PROCESS CLAIMS.

Otherwise, Defendants' response mischaracterizes Plaintiffs' constitutional claims. Plaintiffs do not contend that every violation of a RIF regulation creates a constitutional violation or that federal employees are entitled to procedures beyond those required by law whenever an agency conducts a lawful RIF. Plaintiffs' claims are narrower and more fundamental. Defendants did not use RIF procedures to determine who would remain employed and who would be separated. Defendants chose the employees they intended to remove and then treated the required procedures as obstacles to be avoided rather than satisfied whenever those procedures pointed toward a different result. Defendants ignored RIF procedures and broke the MSPB specifically to deprive Plaintiffs of any meaningful pre- or post-deprivation due process. *See* Pls.' Mem. at 10–23. The effect of the changes to the RIF and MSPB process is a deprivation of liberty and property interests without meaningful notice and opportunity to be heard.

Plaintiffs have presented substantial evidence that Defendants repeatedly rejected or bypassed requirements of reassignment opportunities, retention options, vacancy placements, and other pre- or post-termination procedures capable of changing the outcome whenever those mandated procedures pointed toward continued employment rather than removal. *Id.* The

8

Constitution does not permit Defendants to predetermine the result and then invoke the existence of procedures they refused to follow when those procedures threatened the result they wanted.

### A. Defendants Denied Plaintiffs Any Meaningful Opportunity to Prevent the Deprivations.

The Government argues that Plaintiffs received due process because they received RIF notices identifying the action, the reasons for the action, and the procedures available for administrative review. Gov. Opp. at 24-25. This argument assumes the very fact in dispute. Plaintiffs do not contend that a lawful reduction in force necessarily requires a pre-termination hearing beyond the procedures Congress and OPM have prescribed. Those procedures may suffice in a normal RIF. Nor do Plaintiffs contend that every violation of a RIF regulation creates a constitutional violation. Plaintiffs contend that Defendants decided who would be removed before permitting the procedures that ordinarily justify a RIF separation to operate, while smearing the RIF'd employees. That distinction matters. The constitutional question is not just whether procedures existed on paper. It is whether Defendants allowed those procedures to perform the function that Due Process required: serving as a meaningful check on whether a particular employee would be separated at all. The record shows that they did not. Pls.' Mem., 14-22. Defendants cannot justify these deprivations by pointing to procedures they prevented from influencing the outcome.

The Supreme Court's Due Process decisions focus on function, not labels. In *Loudermill*, the Court explained that pre-deprivation procedures serve as "an initial check against mistaken decisions." 470 U.S. at 545. Their purpose is to invoke "the discretion of the decisionmaker before the termination takes effect." *Id.* at 543. *Mathews* directs courts to examine the adequacy of the procedures actually employed and the risk created by those procedures. 424 U.S. at 335. *Goldberg v. Kelly* likewise makes clear that the availability of later proceedings does not answer whether

required process was provided before the deprivation occurred. 397 U.S. at 261, 267-68.

Defendants repeatedly point to the existence of RIF procedures as though that resolves Plaintiffs' claim. It does not. Plaintiffs do not challenge whether lawful RIF procedures can satisfy Due Process. Plaintiffs challenge whether Defendants allowed those procedures to do what they were designed to do: determine whether employees should be separated at all. Competitive-area determinations, retention standing, reassignment obligations, vacancy analyses, and related protections exist because they can change outcomes. Defendants cannot justify these separations by pointing to procedures they prevented from determining the outcome.

At ATF, the Bureau approved a plan identifying positions through which affected employees could be retained, yet DOJ implemented OPM-directed competitive areas and separation notices for their removal. Pls.' Mem. at 12–14. At USAID, there was concern that ordinary RIF procedures would not produce the desired personnel outcomes because decisionmakers were focused on determining which individuals would be kept rather than allowing neutral RIF procedures to operate. *Id.* at 14–17. Time and again, Defendants placed employees on administrative leave, stripped them of access to systems, and told them they would be separated before completing the analyses and procedures they now invoke as proof Due Process was satisfied. *Id*. at 12–23; Ex. 1 Decls. generally.

### B. The Notices Confirm Rather Than Cure the Constitutional Violations.

Because there is no dispute Plaintiffs possessed a property interest in their jobs, Defendants rely heavily on the contents of the notices to dispute violation of Plaintiffs' Due Process rights. Gov. Opp. at 7. But the issue is not whether the notices contained information. The issue is whether Defendants truthfully described the actions they were taking; they did not.

Defendants represented in the notices that employees were being separated through lawful

10

RIFs governed by procedures designed to determine who should remain employed and who should be separated. Yet Plaintiffs have presented substantial evidence Defendants had already determined the outcomes, that reassignment and retention options existed but were disregarded, that work continued after the employees were removed, and that Defendants treated required procedures as obstacles they ignored whenever those procedures pointed toward retention rather than separation. Pls.' Mem., 14-23. Defendants informed employees that personnel actions flowed from neutral workforce procedures while contemporaneous communications reflected efforts to achieve predetermined personnel outcomes. *Id*. 14-17. Defendants informed employees that reassignment rights were unavailable even where reassignment opportunities had already been identified and approved by the employing Agency. *Id*. 13. Defendants informed employees that positions were being eliminated even where the underlying work continued. *Id*. 20-21.

The notices also do not inform employees the Administration has captured the MSPB. Defendants do not address the evidence that the Administration was aware the MSPB had been rendered incapable of providing an independent review process and procedurally immobile, even as they informed employees of their appeal rights to the MSPB. Defendants simply declare these contentions to be "nonsense" and that "plaintiffs present no such evidence beyond conclusory statement[s] that they expect the Court to accept as gospel." Gov. Opp. at 30. But no amount of spellcasting can make it so. These foundational errors in the notices were compounded by widespread factual errors, additional proof there was no meaningful notice. *See* Pls.' Mem. at 35–38; Ex. 1 Decls. generally. A notice cannot provide meaningful process if it obscures the actual basis for the action it purports to explain and conceals the actual nature of the appeal process it purports to provide.

### C. Defendants Violated Plaintiffs' Liberty Interest without Due Process.

11

Plaintiffs have also demonstrated a substantial likelihood of success on their liberty-interest claims. Under *Roth* and *Sciolino*, a plaintiff establishes a liberty-interest violation where stigmatizing and false statements are publicly made in connection with termination and the employee is denied a meaningful opportunity to clear their name. That is precisely what occurred here. Exhibit 9 contains extensive statements by senior Administration officials, including the President, Stephen Miller, Karoline Leavitt, Elon Musk, and others, repeatedly characterizing the employees being removed as corrupt, discriminatory, radical, hostile to American interests, obstructive of government objectives, incompetent, or unwilling to perform their jobs. ECF No. 16 at 11. Defendants did not make those statements in a vacuum. They repeatedly offered those statements as explanations for the removals. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972); *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007).

The Government responds that none of those statements were directed at any Plaintiff individually. Gov. Opp. at 26-27. Tellingly, Defendants cite no authority requiring a stigmatizing statement to identify an employee by name. The relevant question is whether Defendants directed the statements at an identifiable group and made them in connection with those employees' termination. Here they plainly did. Just as importantly, the statements illuminate the nature of the actions being challenged. When Defendants explained why employees were being removed, they did not discuss abolished positions, budget reductions, workforce restructuring, or organizational needs. Instead, they described the employees as corrupt, radical, discriminatory, disloyal, obstructive, incompetent, or unwilling to work. Those statements therefore do more than support Plaintiffs' liberty-interest claims. They reveal Defendants' actual justifications for the removals. It was never about the positions. It was about the employees in those positions.

The record also demonstrates that these statements produced real-world consequences.

12

Professional contacts expressed concern about hiring affected employees. Community members repeated and believed the accusations. Former federal employees were advised to distance themselves from agencies in which they had proudly served. ECF No. 16-3, Morrison Decl. ¶ 25; ECF No. 16-3, Sharma Decl. ¶ 13; ECF No. 16-3, Templeton Decl. ¶ 22; ECF No. 16-3, Nenon Decl. ¶ 7. Plaintiffs need not prove the full extent of their damages to establish a liberty-interest violation. The record demonstrates that the reputational injuries were real and immediate.

### D. Post-Deprivation Review by the MSPB also Violates Due Process.

As discussed at length in the Jurisdiction section above, it is undisputed the MSPB is no longer independent. As a result, the MSPB cannot provide post-deprivation reviews consistent with constitutional requirements. *Goldberg,* 397 U.S. at 271 ("[O]f course, an impartial decision maker is essential."); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Barry v. Barchi*, 443 U.S. 55, 66 (1979). Even if every other part of the RIF process were found to meet constitutional standards, the inability to provide a post-deprivation hearing consistent with the Due Process Clause, by itself, is sufficient to find Plaintiffs are likely to succeed on the merits of their Due Process claim.

### IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR APA CLAIMS.

### A. Defendants Respond to an APA Claim Plaintiffs Did Not Bring.

Defendants begin by attacking an *ultra vires* claim Plaintiffs did not assert. Plaintiffs do not seek review under the narrow non-statutory *ultra vires* doctrine. Plaintiffs bring claims under the Administrative Procedure Act (APA) itself. The APA authorizes courts to set aside agency action that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," "without observance of procedure required by law," or "arbitrary" and "capricious." 5 U.S.C. §§ 706(2)(A), (C), (D). Defendants therefore devote substantial attention to a heightened

13

standard that does not govern the claims before this Court. The question is not whether Plaintiffs can satisfy the extraordinary requirements for non-statutory *ultra vires* review. The question is whether Defendants complied with the statutes and regulations governing RIFs and whether Defendants engaged in reasoned decision-making. Plaintiffs have demonstrated a substantial likelihood of success on both questions because the record shows Defendants predetermined the outcomes and then disregarded statutory, regulatory, and procedural requirements whenever those requirements threatened those outcomes.

## B. Defendants Acted Contrary to Law.

The Fourth Circuit's rule is straightforward: "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its actions cannot stand and courts will strike it down." *Morris v. McCaddin*, 553 F.2d 866, 870 (4th Cir. 1977). Here, Congress authorized RIFs through a detailed statutory and regulatory framework. *See* 5 U.S.C. §§ 3501-3504; 5 C.F.R. pt. 351. Those provisions require agencies to establish lawful competitive areas, apply retention procedures, satisfy reassignment obligations, and determine whether positions are genuinely being abolished. Plaintiffs have presented substantial evidence that Defendants disregarded those requirements. The record shows artificially narrowed competitive areas, functions that continued after employees were removed, funded positions that remained available, reassignment opportunities that Defendants disregarded, and outcomes that Defendants determined before the procedures they now invoke were done. Defendants cannot satisfy the APA simply by labeling those actions RIFs.

Defendants' response ignores this evidence. Instead, Defendants repeatedly assert that the actions complied with governing law because they were labeled RIFs and because notices were issued. Labels do not determine legality. Compliance with the statutes and regulations does.

14

### C. Defendants Acted Arbitrarily and Capriciously.

Defendants fare no better under the APA's arbitrary-and-capricious standard. Defendants insist that the Agencies undertook a systematic review of agency priorities and implemented the challenged actions accordingly. Gov. Opp. at 29-30. Yet Defendants point to no more than the notices themselves as evidence that such analysis occurred. The notices are not proof that the required analysis occurred; they are among the actions Plaintiffs challenge.

The Fourth Circuit has rejected exactly that approach. As the Court explained, the arbitrary-and-capricious standard is not "a carte blanche for agencies to issue a rule, and then defend it only by saying, 'because we said so.'" *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292 (4th Cir. 2020). *State Farm* requires agencies to examine relevant data, consider important aspects of the problem, and articulate a rational connection between the facts found and the choices made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). Defendants did not do so.

Defendants attempt to rely on *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009), but *Fox* does not help them. *Fox* recognizes that agencies may change policy. It does not permit agencies to disregard governing statutes, ignore existing regulations, or abandon reasoned decision-making. To the contrary, *Fox* recognizes that an agency may not "simply disregard rules that are still on the books." *Id*. at 515. That distinction is critical here. Plaintiffs do not challenge a change in regulations. Plaintiffs challenge Defendants' decision to implement removals while disregarding the statutory and regulatory requirements still governing those removals. The APA permits agencies to change priorities. It does not permit agencies to ignore the law.

Nor does the record support Defendants' assertion that the Agencies meaningfully considered the relevant facts before implementing these actions. Plaintiffs have presented

15

substantial evidence that Defendants conducted their RIFs backwards – systematically deciding who to RIF before applying the regulations; as a result, the agencies ignored reassignment opportunities, disregarded alternatives to separation, continued the work supposedly being eliminated, and treated governing procedures as problems they overruled whenever those procedures pointed toward retention rather than removal. *State Farm* does not permit agencies to ignore such requirements. And even if, as they argue, Defendants failed to consider that implementing RIFs on an unprecedented scale would generate a correspondingly unprecedented pool of MSPB appellants, this would still be arbitrary and capricious because it entirely " fail[s] to consider an important aspect of the problem." *Roe v. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020), *as amended* (Jan. 14, 2020) (citing *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018)) (internal citations and quotations omitted).

Defendants defend procedures, notices, and agency priorities. They do not address Plaintiffs' evidence that Defendants predetermined the outcomes, disregarded statutory and regulatory requirements, and continued the very work supposedly eliminated. The APA requires compliance with governing law and reasoned decision-making grounded in the record. Plaintiffs have shown that neither occurred.

### V. PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE HARM.

Defendants' irreparable-harm argument reduces Plaintiffs' "regrettable" injuries to the temporary loss of employment and income. That is not the record before the Court. Plaintiffs do not seek preliminary relief because they missed a paycheck. They seek relief because Defendants deprived them of constitutional rights, publicly branded them as corrupt, discriminatory, lazy, radical, disloyal, or hostile to American interests, destroyed professional reputations built over decades of public service, disrupted medical care and retirement plans, forced many into severe

financial distress, and now continue to compel them to pursue relief through the very MSPB process they challenge in this action. *Sampson v. Murray*, 415 U.S. 61 (1974), did not involve anything resembling this.

### A. The Injunction Should Not Be Denied for Delay

The Government argues the Preliminary Injunction should be denied because of delay by Plaintiffs. Gov. Opp. at 11-12. Such argument ignores the evidence that the Government provided misleading notices to Plaintiffs about the nature of the RIFs and the functioning of the MSPB. Developing sufficient information and evidence to challenge firings the Government has deliberately tried to conceal behind the RIF label takes time and investigation. Additionally, courts have declined to find that delay militates against irreparable harm where the movants were pursuing other remedies. *See, e.g., Muffley ex rel. N.L.R.B. v. Spartan Mining Co.*, 570 F.3d 534, 544 (4th Cir. 2009) (18-month delay troubling but not determinative); *Gold v. Eng'g Contractors Inc.*, 831 F. Supp. 2d 856, 860 (D. Md. 2011) (4 months pursuing administrative remedy did not prevent granting of PI). Moreover, delay in filing a motion "is not particularly probative in the context of ongoing, worsening injuries. *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). Here, the Plaintiffs did as they were instructed and pursued the apparently available administrative remedy, seeking relief in the MSPB within 30 days. They were repeatedly told to wait, including through the lengthiest government shutdown in history. As time passed, it became increasingly apparent that the MSPB was broken and Plaintiffs organized to file suit. Those with the worst, accumulating injuries sought emergency relief. They can hardly be penalized for first attempting the avenue urged by the Government.

### B. Plaintiffs Continue to Suffer Ongoing Constitutional Injury.

The denial of a constitutional right itself is irreparable harm for purposes of equitable

17

relief. *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987). Where a plaintiff demonstrates a likely constitutional violation, the irreparable-harm requirement is satisfied because the injury is the ongoing deprivation of the right itself. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (*en banc*). That principle applies here in two ways. First, Plaintiffs continue to suffer the ongoing deprivation of their property and liberty interests without adequate process. Second, Defendants continue to compel Plaintiffs to seek relief through the same MSPB process that Plaintiffs challenge as constitutionally inadequate and structurally compromised. The injury did not end when Plaintiffs lost their jobs. It continues every day Plaintiffs remain separated from federal service and every day they are forced to pursue relief through a constitutionally-defective process. Injunctive relief is appropriate when legal process is used not to provide an impartial forum for the resolution of legal disputes, but rather to impede the exercise of federal rights. *Cf. Dombrowski v. Pfister*, 380 U.S. 479, 489–90 (1965).

### C. Plaintiffs Continue to Suffer Irreparable Harm.

Plaintiffs' injuries extend far beyond the loss of salary. The record documents the loss of homes, depletion of retirement savings, mounting debt, loss of health insurance, disruptions to medical treatment, damage to professional standing, loss of career opportunities, and severe emotional and psychological distress affecting Plaintiffs and their families. Plaintiffs have produced undisputed evidence regarding the harms suffered. Pls.' Mem., 48-51. Many of these injuries are irreversible. For example, Plaintiff Smith and his wife lost the opportunity to pursue IVF treatment before medically necessary surgeries rushed before the loss of health insurance eliminated that possibility. *Id.* at 49. No future monetary award can restore that lost opportunity.

The Government concedes that irreparable harm may exist in a "genuinely extraordinary situation." Gov. Opp. at 31 (*quoting Sampson*, 415 U.S. 61, 91 n.68). If publicly branding

18

thousands of career civil servants as corrupt, discriminatory, radical, lazy, disloyal, or hostile to their country, *see, e.g.*, Ex. 9, while simultaneously terminating their employment does not qualify as a genuinely extraordinary situation, it is difficult to imagine what would. Those statements continue to inflict harm as Plaintiffs must seek employment, rebuild careers, and support their families while carrying the stigma of accusations broadcast by the President of the United States and other senior officials.

### D. The MSPB Process Does Not Remedy Plaintiffs' Injuries and Continues to Inflict Them.

Defendants repeatedly assert that the MSPB can award reinstatement, back pay, and attorney's fees. Gov. Opp. at 16, 32. That argument misunderstands both the nature of Plaintiffs' injuries and the relief sought in this action. Plaintiffs' injuries are not frozen in time while administrative proceedings unfold. They continue to accumulate. Every month that passes brings additional financial damage, additional professional harm, additional medical consequences, additional reputational injury, and additional uncertainty for Plaintiffs and their families. Nor can Defendants defeat irreparable harm by directing Plaintiffs to the very MSPB process whose adequacy, independence, and ability to provide meaningful relief are challenged in this action. The MSPB process is not the answer to Plaintiffs' irreparable-harm showing. It is part of the continuing injury. Even if every Plaintiff ultimately prevailed some years from now, no future award could restore years of untreated medical conditions, repair destroyed credit, return lost homes, restore lost career opportunities, rebuild damaged professional reputations, or erase the stigma Defendants have attached to Plaintiffs' names.

### VI. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR RELIEF

Where the Government is a party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors favor relief here. Defendants have no

19

legitimate interest in continuing actions that violate the Constitution, the APA, and governing federal employment laws. *See Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (*en banc*) ("upholding constitutional rights surely serves the public interest"); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (generally, "no public interest in the perpetuation of unlawful agency action."). By contrast, Plaintiffs continue to suffer ongoing constitutional, professional, reputational, medical, and financial harm every day. The public has a compelling interest in ensuring federal agencies comply with the Constitution, the APA, and the statutes and regulations governing federal employment. Because Plaintiffs have demonstrated a likelihood of success on the merits and continuing irreparable harm, both the balance of equities and the public interest strongly favor preliminary relief.

### VII. NO BOND SHOULD BE REQUIRED.

Defendants' request for a bond should be denied. Federal Rule of Civil Procedure 65(c) grants district courts broad discretion to require no bond or only a nominal bond where the circumstances warrant. *See Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013). This case presents compelling reasons to exercise that discretion. Plaintiffs seek to prevent ongoing constitutional and statutory violations, not to obtain a commercial advantage or preserve a private economic interest. Fundamentally, Defendants ask the Court to require security from individuals whom Defendants themselves irreparably harmed. A bond under these circumstances undermines the purpose of the requested relief. No bond should be required.

### VIII. CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction and award such further relief as the Court deems just and proper.

June 18, 2026                                    Respectfully submitted,

                                                /s/ Joshua Rose
                                                Joshua Rose (Bar No. 18714)
                                                DC Consumer Law Group, PLLC
                                                1407 Highland Drive
                                                Silver Spring, MD 20910
                                                Tel: (202) 288 5643
                                                Jrose@dcclg.com

                                                /s/ A. Gregory Pinto
                                                A. Gregory Pinto (*pro hac vice*)
                                                DC Law Collective, PLLC
                                                1629 K St., NW, Suite 300
                                                Washington, DC 20006
                                                Tel: (202) 599-8459
                                                Fax: (202) 318-0271
                                                gregpinto@dclawcollective.com

                                                /s/ Amy E. Powell
                                                Amy E. Powell (*pro hac vice*)
                                                Lawyers for Good Government
                                                1319 F St. NW, Suite 301, PMB 181
                                                Washington, DC 20004
                                                Tel: (646) 246-4633
                                                Email: amy@lawyersforgoodgovernment.org

                                                *Counsel for Plaintiffs*

21