**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

DOREEN MULLADY,

Plaintiffs 2-323 (Exhibit A),

*Plaintiffs,*

**Civil No. 8:26-cv-00573-SAG**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

v.

OFFICE OF MANAGEMENT AND BUDGET
725 17th Street, NW, Washington, DC 20503;

U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT
c/o Office of Management and Budget;

RUSSELL VOUGHT, in his official capacities
as Director of the Office of Management and Budget,
as Acting Administrator of U.S. Agency for International Development,
and as the successor of Elon Musk and DOGE as the head of the
Information Technology Oversight Reform Program
c/o Office of Management and Budget;

OFFICE OF PERSONNEL MANAGEMENT
1900 E Street NW, Washington, DC 20415;

SCOTT KUPOR, in his official capacity
as Director of the Office of Personnel Management;
c/o Office of Personnel Management;

MERIT SYSTEMS PROTECTION BOARD
1615 M Street, NW, Washington, DC 20419;

JAMES J. WOODRUFF, II, in his official capacity
as Chair of the Merit Systems Protection Board
c/o: Merit Systems Protection Board;

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave., NW, Washington, DC 20530;

TODD BLANCHE, in his official capacity
as Attorney General of the United States

c/o U.S. Department of Justice;

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
200 Independence Avenue SW, Washington, DC 20201;

ROBERT F. KENNEDY, JR., in his official capacity as
Secretary of the Department of Health and Human
Services, c/o Department of Health and Human Services;

U.S. DEPARTMENT OF STATE
2201 C Street NW, Washington, DC 20520;

MARCO RUBIO, in his official
capacity as Secretary of State,
c/o U.S. Department of State;

U.S. DEPARTMENT OF EDUCATION
400 Maryland Avenue, SW, Washington, D.C. 20202;

LINDA MCMAHON, in her official
capacity as Secretary of Education,
c/o U.S. Department of Education;

U.S. DEPARTMENT OF HOMELAND SECURITY
2707 Martin Luther King Jr Ave SE, Washington, DC 20528-0525;

MARKWAYNE MULLIN, in his official capacity
as Secretary of the U.S. Department of Homeland Security
c/o U.S. Department of Homeland Security;

GENERAL SERVICES ADMINISTRATION
1800 F Street NW, Washington, DC 20405;

EDWARD FORST, in his official capacity as
Administrator for the General Services
Administration c/o General Services Administration;

FEDERAL DEPOSIT INSURANCE CORPORATION
550 17th Street, NW, Washington, DC 20429; and

TRAVIS HILL, in his official capacity as
Chairman of the Federal Deposit Insurance
Corporation c/o Federal Deposit Insurance
Corporation.

*Defendants*.

# TABLE OF AUTHORITIES

**Cases**

Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011) .......... 35
*Am. Fed'n of Teachers v. Bessent,* 152 F.4th 162 (4th Cir. 2025).......... 6
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......... 10
*Axon*,.......... 15, 17
*Bivens*.......... 21
*Bowen v. Massachusetts*, 487 U.S. 879, 903–08 (1988) .......... 25
*Cf. Alder v. Tennessee Valley Auth*., 43 F. App'x 952, 956 (6th Cir. 2002), *cert. denied*, 537 U.S. 1112 (2003).......... 14
*Cf. Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1309 (Fed. Cir. 2021) .......... 16
*Doe v. Chao*, 540 U.S. 614, 618 (2004).......... 6
*Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012).......... 1, 13, 16, 21, 26, 27
*Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018).......... 26
*Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 287 (2012).......... 6
*Filebark v. United States Department of Transportation*, 555 F.3d 1009 (D.C. Cir. 2009), . 22, 25
*Free Enterprise* .......... 13, 22
*Goodman v. Lutnick*, No. 8:25-CV-02097-LKG, 2026 WL 2858591, at *7 (D. Md. Sept. 23, 2026). .......... 28, 32
*Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000) .......... 14
*Hubbard v. U.S. E.P.A. Adm'r*, 809 F.2d 1 (D.C. Cir. 1986).......... 27
*Ingleson v. Burlington Med. Supplies, Inc*., 141 F. Supp. 3d 579, 584 (E.D. Va. 2015) .......... 33
*Jackson v. Kennedy*, No. CV 25-1750 (BAH), 2026 WL 172440 (D.D.C. Jan. 22, 2026) ... 27, 28
*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). .......... 10
*Kleiman v. Department of Energy,* 956 F.2d 335, 339 n.5 (D.C. Cir. 1992).......... 27
*Lucero v. Early*, 873 F.3d 466, 469 (4th Cir. 2017). .......... 10, 31
*N.A. of Immigration Judges v. Owen,* 139 F.4th 293, 305-308 (4th Cir. 2025).......... 2
*NAIJ I*, 139 F.4th at 305-08 .......... 2, 5, 12
*Pinar v. Dole*, 747 F.2d 899 (4th Cir. 1984.......... 21
*Sorenson v. Bureau of Land Management*, 2026 WL 1893652 (D. Nev. July 1, 2026),.......... 33
*Thompson v. Dep't of State*, 400 F. Supp. 2d 1 (D.D.C. 2005) .......... 32
*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) .......... 1, 13, 14, 16, 20, 21, 28
*Thurston v. United States*, 696 F. Supp. 680 (D.D.C. 1988) .......... 33
*United States v. Fausto*, 484 U.S. 439 (1988).......... 21

**Statutes**

22 U.S.C. § 4010a ........................................................................................................7
42 U.S.C. § 1985 ........................................................................................................22
5 U.S.C. § 1204(a). ........................................................................................................6
5 U.S.C. § 552a ........................................................................................................ 7, 8, 27, 31
5 U.S.C. § 704 ........................................................................................................26
5 U.S.C. §§ 1201–1204; ........................................................................................................ 4, 13
5 U.S.C. §§ 3501–3504 ........................................................................................................5

**Other Authorities**

2026 WL 172440, at *10 ........................................................................................................29
91 FR 49178 (Aug. 3, 2026). ........................................................................................................12
Exec. Order No. 14215, 90 Fed. Reg. 10,447, 10,448–49 (Feb. 24, 2025). ........................ 10, 14
S. Rep. No. 95-969, at 6–7, 24 (1978) ........................................................................................................ 4, 6
U.S. Dep't State, 3 FAM 2580 Reduction in Force – Foreign Service, ....................................7

**Regulations**

5 C.F.R. § 351 ........................................................................................................5, 6, 13
5 C.F.R. § 351.201(a). ........................................................................................................5
5 C.F.R. § 351.402 ........................................................................................................5
5 C.F.R. § 351.402(c). ........................................................................................................5
5 C.F.R. §§ 351.205, 402(c), 506(b)(2), 702(d), 801(b), 901 ................................................13

# TABLE OF CONTENTS

**I. INTRODUCTION** .......... 1

**II. STATUTORY AND REGULATORY BACKGROUND** .......... 2

**A. The Civil Service Reform Act and Implementing Regulations** .......... 2

**B. The Foreign Service Act and Implementing Regulations and Guidance** .......... 4

**C. The Privacy Act** .......... 5

**III. FACTUAL BACKGROUND** .......... 6

**IV. LEGAL STANDARDS** .......... 9

**V. ARGUMENT** .......... 10

**A. The Civil Service Reform Act Does Not Preclude Jurisdiction Over Plaintiffs' Claims.** .......... 10

1. The MSPB's participation in the constitutional violations forecloses meaningful judicial review through the process Defendants seek to enforce. .......... 13

2. Plaintiffs' challenge to the Administration's control and use of the MSPB is collateral to the personnel disputes the CSRA ordinarily channels. .......... 15

3. The MSPB lacks expertise or authority to adjudicate plaintiffs' claims. .......... 17

4. Defendants' remaining authorities are not to the contrary. .......... 19

5. The APA claims are not precluded by the CSRA. .......... 21

a. *The FAC identifies operative Administration decisions, not merely a general workforce policy.* .......... 22

*b. The CSRA does not transform actions by central Administration personnel who cannot be brought before the MSPB into unreviewable personnel determinations.* .......... 22

6. The Privacy Act claims are not precluded by the CSRA. .......... 24

**B. The FAC States A Claim Against The MSPB For Its Affirmative Participation In The Continuing Constitutional Violations.** .......... 26

**C. Count V Plausibly States A Claim Under The Privacy Act.** .......... 28

**D. Defendants' Arguments Do Not Warrant Dismissal Of Counts VI And VII.** .......... 31

1. Count VI challenges the implementation of rescinded RIF actions under the APA, not merely violations of spending statutes. .......... 31

2. Count VII seeks declaratory relief for the substantive violations pleaded in Counts I through VI. .......... 32

**VI. CONCLUSION** .......... 32

## I. INTRODUCTION

Defendants seek dismissal of a case Plaintiffs did not bring. The First Amended Complaint ("FAC") is not a collection of ordinary Reduction-In-Force ("RIF") appeals. Plaintiffs challenge a centralized Administration directive, implemented through multiple agencies, to remove hundreds of career federal employees without constitutionally required process and prevent independent scrutiny of those violations by bringing the Merit Systems Protection Board ("MSPB") fully under Administration control. The Administration directed predetermined firings disguised as RIFs across multiple agencies, disregarded the statutory safeguards governing genuine workforce reductions, and deprived Plaintiffs of their positions, pay, benefits, and reputations without a meaningful opportunity to contest the grounds for their removal. It then asserted control over the institution Congress established to review those actions. The MSPB has affirmatively participated in perpetuating the violations by restricting Plaintiffs' appeals and obstructing access to evidence of the central Administration decisions that produced their separations.

Defendants invoke the Civil Service Reform Act ("CSRA") to compel Plaintiffs to pursue their claims exclusively through that same institution. But Congress established an independent MSPB to protect federal employees, not an Administration-controlled tribunal that participates in the violations it is charged with reviewing. Under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), *Free Enter. Fund & Beckstead & Watts, LLP v. Pub. Co.*, 561 U.S. 477 (2010), and *Axon Enter. v. Fed. Trade Commission*, 598 U.S. 175 (2023), the existence of a statutory review scheme does not foreclose district court jurisdiction over structural constitutional challenges to the adjudicatory process itself. *Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012) does not require a different result. Plaintiffs challenge not merely the initial deprivations, but the Administration's

use of the MSPB to continue those violations and prevent meaningful independent judicial review.

Defendants' remaining arguments likewise fail to address the FAC as pleaded. The APA claims challenge operative Administration decisions imposed across multiple agencies, not merely individual personnel determinations. The Privacy Act claims invoke separate remedies Congress expressly provided for unlawful recordkeeping and disclosure practices that caused adverse determinations and injuries. And the claims against the MSPB arise from its own affirmative conduct, not from the initial firing decisions. Defendants cannot obtain dismissal by substituting ordinary personnel disputes for the constitutional and statutory violations Plaintiffs actually challenge.

## II. STATUTORY AND REGULATORY BACKGROUND

### A. The Civil Service Reform Act and Implementing Regulations

In 1978, Congress enacted the CSRA to comprehensively overhaul the federal civil service system. *See N.A. of Immigration Judges v. Owen,* 139 F.4th 293, 305-308 (4th Cir. 2025) (discussing the CSRA's establishment of an independent MSPB and the statutory protections designed to preserve that independence), reversed on party-presentation grounds *sub nom. Margolin v. Nat'l Ass'n of Immigr. Judges,* 608 U.S. 339 (2026) (hereinafter, *"NAIJ I").* Congress took this step in reaction to the spoils system that allowed the party in power to use federal appointments and removals as rewards and punishments for political support, and expressly provided that federal employees should receive protection through a strengthened and independent MSPB, set in the Executive Branch but insulated by the statute from political and Presidential control. *See* 5 U.S.C. §§ 1201–1204; Civil Service Reform Act of 1978; Pub. L. No. 95-454, § 3; S. Rep. No. 95-969, at 6–7, 24 (1978).

Among other components, the CSRA establishes the statutory framework governing RIFs in the federal civil service. 5 U.S.C. §§ 3501–3504. Those provisions are implemented through regulations promulgated by the Office of Personnel Management ("OPM") in 5 C.F.R. pt. 351. Unlike private-sector layoffs, federal reductions in force are governed by detailed statutory and regulatory safeguards designed to ensure that position eliminations are carried out through objective, impersonal criteria rather than individualized discretion.

OPM has issued regulations and guidance as to how and when RIFs may be conducted to ensure compliance with the CSRA and its implementing regulations. Pursuant to OPM's regulations, RIFs must be based upon one of six justifications: "lack of work; shortage of funds; insufficient personnel ceiling; reorganization; the exercise of reemployment rights or restoration rights; or reclassification of an employee's position due to erosion of duties when such action will take effect after an agency has formally announced a reduction in force in the employee's competitive area and when the reduction in force will take effect within 180 days." 5 C.F.R. § 351.201(a)(2). Although employees may be separated as a consequence of a RIF, the purpose of the RIF is to abolish positions; it is not used to remove particular employees. 5 C.F.R. § 351.201(a).

OPM regulations also require agencies to define competitive areas (the groupings within which employees must be ranked before determining who among them would be subject to a RIF action) based on organizational structure and geographic location and to include all employees within a defined area in the retention process. *See* 5 C.F.R. § 351.402. Importantly, the regulations provide that the minimum competitive area must be a subdivision of the agency under "separate administration" within the local commuting area and establish specific definitions for those terms. 5 C.F.R. § 351.402(c). These requirements, along with others like retention scoring and ranking, position and function analyses, bump and retreat provisions, and

waterfalling based on tenure and performance history, distinguish a genuine reduction in force, conducted through neutral structural criteria, from employee removals for cause. *See generally* 5 C.F.R. § 351; MSPB REPORT TO CONGRESS, REDUCTION IN FORCE: THE EVOLVING GROUND RULES (1987).

To be clear: Plaintiffs do not ask this Court to adjudicate routine compliance with Part 351; they cite these requirements because Defendants' wholesale departure from them is evidence of the Administration's directed inter-agency use of the "RIF" label as mere pretext and as a shield from scrutiny to effectuate predetermined employee separations—stigmatizing, life-altering, accusation-based firings—while invoking exclusive administrative channeling and dodging pre-deprivation due process requirements.

OPM regulations further provide that civil service employees challenging the legality of separations by a reduction in force must submit their appeals to the MSPB. 5 C.F.R. § 351.901. In addition to establishing standards for reductions in force, the CSRA created the MSPB as an adjudicatory body intended to operate independently in reviewing federal personnel actions. 5 U.S.C. §§ 1201–1204. Congress created the MSPB as a "strong and independent" body, insulated from political pressure and independent of direct presidential control. S. Rep. No. 95-969, at 6–7, 24 (1978). The MSPB is an agency within the Executive Branch staffed by civil service employees and charged with hearing and adjudicating matters within its statutory jurisdiction. 5 U.S.C. § 1204(a). Its independence is therefore crucial to the statutory scheme. See *NAIJ I*, 139 F.4th at 305-08.

**B. The Foreign Service Act and Implementing Regulations and Guidance**

Foreign service members are federal employees who undergo specialized training and are appointed to a worldwide service designed for rotational assignments across posts and positions.

By statute, members of the foreign service are part of a portable professional corps rather than tied to a single fixed organizational unit.

Reductions in force involving the foreign service are governed by the Foreign Service Act rather than the CSRA. *See* 22 U.S.C. § 4010a. Like the CSRA framework, however, the FSA requires that workforce reductions be conducted according to structured statutory criteria, including consideration of organizational needs, employee qualifications, tenure, performance, and veterans' preference. Implementing regulations and agency guidance issued by the Department of State ("State") and USAID reflect similar structural safeguards intended to distinguish neutral workforce restructuring from individualized removal decisions. *Compare, e.g.*, U.S. Dep't State, 3 FAM 2580 Reduction in Force – Foreign Service, https://perma.cc/S5UT-4LRK; U.S. Dep't State, 3 FAM 2580 Reduction in Force – Civil Service, https://perma.cc/4PJK-R6SH.

**C. The Privacy Act**

The Privacy Act of 1974, "contains a comprehensive and detailed set of requirements for the management of confidential records held by [federal agencies]," and provides a cause of action for failure to maintain accurate records of individuals, including employees of federal agencies. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 287 (2012) ; *Doe v. Chao*, 540 U.S. 614, 618 (2004); 5 U.S.C. § 552a.

Among other requirements, the Privacy Act requires agencies to maintain records used in making determinations about individuals with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness in those determinations. 5 U.S.C. § 552a(e)(5). Subsection 552a(b) also places strict conditions on the disclosure of information from a system of records. Subsection (g)(1) recognizes a civil action for agency misconduct fitting within any of four categories, 5 U.S.C. §§ 552a(g)(1)(A)-(D)and then makes separate

provision for the redress of each. *Doe v. Chao*, 540 U.S. 614, 618 (2004); *see also Am. Fed'n of Teachers v. Bessent,* 152 F.4th 162 (4th Cir. 2025) . As relevant here, Subsection (g)(1)(C) specifically creates a cause of action for an agency's failure to maintain an adequate record on an individual, when the result is a determination "adverse" to that person and Subsection (g)(1)(D) speaks of a violation when someone suffers an "adverse effect" from any other failure to hew to the terms of the Act. *See Doe v. Chao*, 540 U.S. 614, 619 (2004). For either type of claim, a plaintiff who can prove intentional or willful violation and any pecuniary loss is entitled to statutory damages of $1,000 or "actual damages," whichever is greater. § 552a(g)(4)(A).

## III. FACTUAL BACKGROUND

As set forth in the FAC, the current Administration has engaged in widespread efforts to reshape the federal workforce along partisan and ideological lines. FAC ¶¶ 1-11. As part of these efforts, Defendants directed unlawful mass terminations of federal employees, including each of the so-called RIF actions that resulted in Plaintiffs' separations. *Id*. ¶¶ 55-120.

Defendants DOGE, OMB, and OPM directed and oversaw wholesale firings of federal workers across the Executive Branch for political reasons. FAC ¶¶ 60-73, 81-82, 89-90. To give these illegal firings a sheen of legality and to channel any challenges to the captured MSPB, they labelled these actions as RIFs. Specifically, they directed other agency Defendants to use the RIF label and mechanisms to remove targeted employees, dictated competitive areas, required implementation before or without required agency determinations, and overruled agency decisions to retain affected employees. *See, e.g.*, Off. of Mgmt. & Budget & Off. of Pers. Mgmt., Memorandum M-25-22 for Heads of Executive Departments and Agencies, Guidance on Agency RIF and Reorganization Plans Requested by Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative (Feb. 26, 2025), https://perma.cc/TKZ9-9YKT ("OMB/OPM Memorandum"). For example, OPM explicitly

ordered all Executive Branch agencies to implement specifically defined RIFs within 60 days, without any identified agency determination that one of the permissible bases for a RIF existed and without any authority to make such an order. *See* Off. of Pers. Mgmt., Guidance Regarding Reductions in Force (RIFs) of DEIA Offices (Jan. 24, 2025), https://perma.cc/79T4-VGQP. These same Defendants rejected agency plans to transfer or retain employees in other positions consistent with the RIF regulations. FAC ¶¶ 65-67.

The Defendant employing agencies (DOJ, DHS, HHS, OPM, State, USAID, Ed, GSA, FDIC) each implemented those directives and decisions to terminate disfavored groups of employees. And they did so without regard to existing RIF standards and regulations. FAC ¶¶ 82-90. Since implementing these firings dressed up as RIFs, Defendant Agencies have hired and sought new employees to perform functions and fill the positions formerly performed by Plaintiffs and theoretically abolished by the RIFs. *Id.* ¶ 75. In conducting these purported RIFs, the Administration did not merely announce a policy favoring workforce reductions and leave individual agencies to implement lawful RIFs. OMB, OPM, DOGE, and other Administration personnel directed which offices and employees would be eliminated, prescribed the procedures agencies were required to follow, and overrode decisions to retain or reassign employees when those decisions conflicted with predetermined outcomes. The employing agencies then implemented decisions imposed upon them rather than independently determining which positions could lawfully be abolished and which employees could be separated.

While terminating Plaintiffs, Defendants also systematically and intentionally smeared them, attacking their reputations and careers. FAC ¶¶ 74-78. Among other things, ED Plaintiffs were derided as "radical left Marxist bureaucrats" and FDA staff were called industry "sock puppets." *Id.* For each RIF, the Administration made clear that the goal was removing undesirable employees and not slimming down the size of federal government. Defendants took

further steps to interfere with their employment within and outside of the federal government. For example, Defendant agencies did not comply with their Career Transition Assistance Plan (CTAP) obligations prior to Plaintiffs' separations and have manipulated CTAP to allow them to retain handpicked personnel regardless of RIF retention priority. They also did not comply with their re-employment Priority List (RPL) obligations requiring priority consideration of Plaintiffs for rehiring. *Id.*

At the same time, the Administration seized control of the MSPB. On February 8, 2025, the President removed MSPB Chair Cathy Harris. Ten days later, the President issued Executive Order ("EO") 14215, asserting centralized Presidential authority over "so called independent agencies," including the MSPB. The Order provides that no Executive employee acting in an official capacity may advance a legal interpretation that contravenes the President's or the Attorney General's opinion on a matter of law, including positions related to any litigation. Exec. Order No. 14215, 90 Fed. Reg. 10447, 10448–49 (Feb. 24, 2025). The FAC further describes direct interference with adjudication, including instructions communicated to MSPB leadership concerning the outcome of a pending case. FAC ¶¶ 91–101. The Administration further used its administrative control over the MSPB to ensure that it lacks the resources or authority to perform its statutory role. *Id.* ¶¶ 102-09. The impact of these decisions is so catastrophic that many of the Plaintiffs have had MSPB appeals pending for over a year with no action. *Id.* ¶107.

The MSPB did not merely experience the effects of those actions. It actively participated in the continuing violations. It surrendered its independence, coordinated decisions restricting Plaintiffs' ability to pursue their appeals, and obstructed efforts to obtain evidence concerning the Administration personnel who directed the challenged separations. FAC ¶¶ 100–109, 128–134. Its conduct protected the Administration's actions from scrutiny while compelling Plaintiffs to litigate within the Administration-controlled process.

Having carried out mass illegal firings under the guise of RIFs, Defendants now seek to channel Plaintiffs' challenges to their illegal firings to the MSPB under the CSRA. Each of the Plaintiffs was terminated pursuant to one of these unlawful RIF actions directed and implemented by the Defendants. Each has filed an MSPB appeal that cannot and will not address their injuries. FAC ¶¶ 18-27 & Appendix A. In the FAC, Plaintiffs allege that the Administration's actions that led to their separations and the Administration's capture of the MSPB and the actions of the MSPB itself violate (i) their pre- and post-deprivation Due Process rights under the Fifth Amendment to the Constitution; (ii) their First Amendment Rights; (iii) the Administrative Procedures Act; and (iv) the Privacy Act. FAC ¶¶ 121-161. As a result, Plaintiffs are entitled, among other things, to declaratory and injunctive relief. *Id.* ¶¶ 162-165.

## IV. LEGAL STANDARDS

In considering a facial challenge under Rule 12(b)(1), "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Similarly, under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts" and "construe them in the light most favorable to the plaintiff." *Lucero v. Early*, 873 F.3d 466, 469 (4th Cir. 2017). A complaint need not include "detailed factual allegations," but "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a probability requirement." *Id.* (quotation marks omitted).

## V. ARGUMENT

### A. The Civil Service Reform Act Does Not Preclude Jurisdiction Over Plaintiffs' Claims.

Defendants' attempts to repurpose the FAC as a mere collection of individual challenges to RIF removals ignore the full scope of Plaintiffs' claims: that Defendants first directed and implemented the unconstitutional and unlawful removal of Plaintiffs across multiple agencies through actions mischaracterized as RIFs and now perpetuate those constitutional violations by bringing the MSPB under the Administration's control and obstructing any meaningful independent judicial scrutiny. Defendants invoke the CSRA to insist that Plaintiffs must seek relief exclusively through that same adjudicatory institution. Their argument, however, would allow the Administration to direct unlawful personnel actions, dictate the reviewing tribunal simply by labeling such action as a RIF regardless of whether any of the regulations or procedures were lawfully invoked or followed, and then use the statutory jurisdiction of that tribunal to insulate the entire undertaking from meaningful review by an Article III court.[1]

Such a process would fly in the face of the system Congress expressly established through the CSRA and FSA. Congress established the RIF mechanism through the CSRA and FSA, but such mechanism comes with significant employee protections. Under the CSRA, Congress also created the MSPB to provide independent adjudication of federal personnel disputes, 5 U.S.C. §§ 1201–1204; that independence – like the application of the neutral RIF factors – is crucial to the framework of the CSRA. *NAIJ I*, 139 F.4th at 305. The FAC establishes that the Administration eliminated that independence, asserted authority over the MSPB's legal

---

[1] Far from speculation, this is precisely the regime the Administration has installed for all RIFs noticed on or after September 2, 2026. *Reduction in Force*, 91 FR 49178 (Aug. 3, 2026). Pursuant to the amended regulations, federal employees may only appeal RIF actions to OPM, the same agency charged with inspecting, reviewing, instructing, correcting, and approving RIFs across the executive branch. 5 C.F.R. §§ 351.205, 402(c), 506(b)(2), 702(d), 801(b), 901. A final decision by OPM is not subject to judicial review. 5 C.F.R. § 351.909(e).

positions and adjudicatory outcomes, and enlisted the MSPB's affirmative participation in restricting Plaintiffs' ability to challenge the coordinated government-wide removal actions. FAC ¶¶ 91–109. The MSPB's role is not incidental to these constitutional violations. Rather, its participation is essential to their continuation.

Defendants' motion omits the thrust of Plaintiffs' claims and allegations in the FAC in order to treat the separations as independent agency personnel RIF decisions and the MSPB as an independent reviewing tribunal. It then invokes the CSRA's ordinary review provisions to shield the targeted illegal firings and a biased adjudicatory process from constitutional scrutiny. Wishing, however, does not make it so. Defendants cannot establish congressional intent to preclude original jurisdiction by ignoring the full scope of Plaintiffs' allegations or by assuming the very institutional independence that their actions have eliminated.[2]

In dismissing these assertions as "mere speculations," Defendants flatly contradict the plain language of Executive Order 14215, in which the Administration asserts authority to direct and supervise independent agencies, including the MSPB, and subject those agencies to centralized control. The Executive Order further provides that "[t]he President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties," and that Executive Branch employees may not advance contrary legal positions without authorization. Exec. Order No. 14215, 90 Fed. Reg. 10,447, 10,448–49 (Feb. 24, 2025).

---

[2] Contrary to Defendants' unavailing efforts, the Supreme Court's opinion in *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, (2026), provides no opinion on the Fourth Circuit's analysis of the MSPB's independence as it relates to Congressional intent. As to Defendant's references to Justice Thomas' concurrence, it is well-settled that concurrences – even ones that provide meaningful insight into the author – do not constitute binding precedent. *Maryland v. Wilson*, 519 U.S. 408, 412-13, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997); *Dababnah v. Keller-Burnside*, 208 F.3d 467, 471 n.3 (4th Cir. 2000).

As Defendants are well aware, DOJ has repeatedly advanced the same positions in litigation involving independent agencies and officials.[3]

Contrary to Defendants' interpretations, the Supreme Court's decisions in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012), *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) do not require this court to ignore Plaintiffs' constitutional challenges to the structure and authority of an administrative adjudicatory process simply because that process involves employment actions. Rather, *Thunder Basin*, *Elgin*, *Free Enterprise*, and *Axon* require a full examination of the claims actually presented and the constitutional injury for which relief is sought.

Plaintiffs do not question whether the CSRA and FSA, and their implementing regulations, ordinarily channel individual RIF appeals to the MSPB. Plaintiffs challenge the Administration's unauthorized multi-agency directive to implement legally insufficient RIFs and whether Congress intended to make the MSPB's statutory channel exclusive when the Administration has converted the institution administering it into a participant in the constitutional and statutory violations being challenged, and when requiring Plaintiffs to proceed through that institution perpetuates the very injury they seek to remedy.[4]

---

[3] *See, e.g., Jackler v. Dep't of Justice*, No. DA-0752-25-0330-I-1, Agency's Mot. for Leave to File Additional Pleadings and Alternative Mot. to Remand, pgs. 3-4, 6 (Sept. 27, 2025); *Comans v. EOP et. al*, 25-cv-01237, tr. of motion hearing at 17-18 (Feb. 13, 2026); *DNC v. Trump*, 25-cv-00587 (D.D.C.) motion hearing transcript at 46-48 (Apr. 9, 2025); *Comey v. DOJ*, 25-cv-07625 (S.D.N.Y) MTD reply brief at 12; *Gordon v. EOP*, 25-cv-02409 (D.D.C.) MTD reply brief at 4.

[4] *Cf. Alder v. Tennessee Valley Auth*., 43 F. App'x 952, 956 (6th Cir. 2002), *cert. denied*, 537 U.S. 1112 (2003) (channeling a claim of wrongful termination where plaintiffs challenged the implementing agency's internal pre-decisional deliberative process); *Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000) (channeling a challenge to managerial practices against an individual employee that allegedly led to termination).

1. <u>The MSPB's participation in the constitutional violations forecloses meaningful judicial review through the process Defendants seek to enforce.</u>

Defendants contend that Plaintiffs can obtain meaningful judicial review by pursuing their MSPB appeals and eventually seeking review in the Federal Circuit. ECF No. 50 at 23–25. That might be the case if Plaintiffs challenged only the legal sufficiency of individual RIF actions before an independent administrative tribunal. But that is not the case here. The FAC establishes that the Administration took control of the tribunal and is using it to continue implementing unconstitutional violations while obstructing Plaintiffs' efforts to challenge those same violations. Defendants cannot rely on the existence of a statutory avenue of review when their own actions have foreclosed meaningful judicial review.

The distinction is central to the Supreme Court's analysis in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). Applying the framework established in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Court in *Axon* held that structural constitutional challenges to administrative adjudication could proceed in district court notwithstanding a statutory review scheme. The injury in *Axon* arose from subjection to proceedings before an unconstitutional adjudicatory structure, not merely from an unfavorable decision that could later be reversed. *Axon*, 598 U.S. at 190–92. In other words, where the relevant injury has already occurred through the initial proceedings themselves, it cannot be redressed through subsequent appellate review.

*Axon*'s analysis is directly on point. If Plaintiffs' claims are channeled through the MSPB, they will be harmed simply by being forced to go through an unconstitutional proceeding. The Federal Circuit cannot redress this harm on appeal: it will already have occurred. But Plaintiffs' injury would be compounded beyond what the Supreme Court saw in *Axon* given the MSPB's affirmative, ongoing and unconstitutional participation in these violations. The Administration

removed the MSPB Chair, asserted authority over its operations, funding, legal positions, and adjudicatory outcomes, and directly interfered with adjudication. The MSPB then declined to confront challenges to its independence, restricted Plaintiffs' ability to pursue their appeals, and obstructed access to evidence concerning the Administration personnel responsible for the separations. FAC ¶¶ 91–109. Plaintiffs would therefore be compelled to pursue their rights through an institution that is both participating in the continuing violations of those rights and is precluded by executive order from finding over the Administration's objections that such violations occurred.

The structural nature of Plaintiffs' challenge is demonstrated clearly throughout the FAC. Plaintiffs allege that their separations resulted from coordinated Administration decisions rather than independent agency determinations. The FAC identifies specific efforts to obtain evidence concerning those decisions through the MSPB process, including requests directed at key Administration personnel, and the refusals, failures to respond, and administrative restrictions that prevented Plaintiffs from obtaining it. FAC ¶ 109. Moreover, the Administration personnel who directed and controlled the separations cannot be made defendants in Plaintiffs' MSPB appeals. Those proceedings are against the employing agencies that implemented the decisions, not the officials who imposed them. Although the MSPB may consider evidence concerning those officials' conduct, it cannot adjudicate claims against them or grant relief directly addressing their responsibility. Defendants nevertheless insist that subsequent Federal Circuit review resolves the constitutional problem. However, in addition to failing to address the constitutional injury caused by forced participation in MSPB proceedings, any appellate review would be based exclusively upon a record developed through proceedings that exclude the

responsible actors as parties and thus restrict meaningful discovery of any evidence of their conduct.[5]

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012), cited at length by Defendants, does not apply to Plaintiffs' claims which challenge the constitutionality of the administrative process and not of the CSRA. In *Elgin*, the Supreme Court held that constitutional objections to the statute underlying the plaintiff's removal belonged within the CSRA's review scheme. *Id.* at 10–23. The employees did not challenge the constitutional independence of the MSPB or its participation in perpetuating the challenged violations. Defendants' extensive discussion of the comprehensiveness of the CSRA's review system are therefore inapposite: Plaintiffs' challenge is to the structure, not the statute.

*Axon* and *Elgin* apply the same *Thunder Basin* framework to different injuries. The constitutional challenge here concerns not merely the legality of the initial separations, but the Administration's use of the MSPB to perpetuate those deprivations and obstruct independent review. As in *Axon*, forcing Plaintiffs through an unconstitutional adjudicatory structure creates an injury that cannot be redressed through subsequent judicial review.

2. <u>Plaintiffs' challenge to the Administration's control and use of the MSPB is collateral to the personnel disputes the CSRA ordinarily channels.</u>

Defendants argue that Plaintiffs' claims are not wholly collateral to the CSRA because they arise from their separations and seek reinstatement, back pay, and other employment-related

[5] Defendants' dismissal of the FAC's allegations regarding the MSPB's inability to provide timely relief to Plaintiffs, FAC ¶¶ 102-07, similarly ignores the structural nature of Plaintiffs' claims. The MSPB's inability to process Plaintiffs' RIF appeals is not the result of an incidental backlog, but rather a key element and direct result of the Administration's coordinated and unconstitutional approach to this government-wide RIF. *Cf. Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1309 (Fed. Cir. 2021).

relief. ECF No. 50 at 25–27. That argument again ignores the full scope of the constitutional violations Plaintiffs allege.

The FAC does not ask this Court to decide whether individual employees were properly placed on retention registers, whether their competitive areas were correctly defined, or whether particular RIF notices complied with applicable regulations. Those facts establish part of the process through which implementing agencies carried out the Administration's coordinated directives for the government-wide RIF.[6] Plaintiffs also challenge subsequent elements of that process: the Administration's subordination of the MSPB and its use of that institution to protect the unlawful removals from independent judicial scrutiny. That constitutional injury exists independently of the outcome of any individual RIF appeal.

The Supreme Court recognized the distinction in *Axon*. The plaintiffs there challenged the constitutional legitimacy of the administrative proceedings themselves. Their claims were collateral to the statutory review scheme because they did not seek review of the merits of an agency enforcement determination. *Axon*, 598 U.S. at 192–94. Likewise, *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 489–91 (2010) permitted a structural constitutional challenge to proceed in district court notwithstanding the availability of administrative review of agency action.

The same reasoning applies here. The MSPB's statutory authority to adjudicate RIF appeals does not encompass independent adjudication of coordinated control across executive

[6] The deficiencies of these pre-deprivation actions carried out by the Administration through the implementing agencies, implicate their own due process concerns that are similarly outside the CSRA's statutory review scheme, as they do not challenge the merits of the implementing agencies' decisions, but rather the structural lack of an opportunity to respond before the deprivation is executed. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–47 (1985).

branch agencies over the separations, nor does it encompass adjudication of the MSPB itself. The existence of a statutory scheme to review individual employment actions cannot transform the MSPB's own participation in continuing constitutional violations into an ordinary personnel matter. The individual RIF appeals concern whether Plaintiffs' separations can be sustained under the applicable personnel laws. This action challenges the coordinated actions that produced those separations and then corrupted the institution responsible for reviewing them.

The overlap in requested relief does not eliminate that distinction. Restoring Plaintiffs' positions and pay would remedy important consequences of Defendants' actions, but it would not resolve the separate constitutional injury caused by compelling Plaintiffs to submit to an adjudicatory process controlled by the Administration personnel responsible for those consequences. Defendants cannot convert that injury into an ordinary employment dispute simply by observing that Plaintiffs also seek restoration of what the Administration unlawfully took from them.

Nor do Plaintiffs' protective MSPB appeals establish otherwise. Plaintiffs filed those appeals to preserve their statutory rights after receiving notices directing them to the MSPB. Defendants now attempt to transform compliance with those requirements into acceptance of the MSPB's constitutional legitimacy and forfeiture of access to an independent court. Filing an appeal to avoid losing statutory rights does not surrender the right to challenge the constitutionality of the proceedings through which those rights must be pursued.

3. <u>The MSPB lacks expertise or authority to adjudicate plaintiffs' claims.</u>

Defendants yet again mischaracterize the FAC as primarily based upon challenges to individual personnel actions in order to assert that the MSPB has sufficient expertise on the issues at hand. ECF No. 50 at 27–28. The MSPB indeed possesses expertise in applying RIF statutes and regulations to matters such as retention standing, competitive areas, and

reassignment rights. However, that expertise is simply inapplicable to claims regarding the constitutionality of executive control over independent agencies and challenged review structures. Nor does the MSPB possess expertise regarding the constitutionality of its own independence and alleged participation in ongoing constitutional violations.

Under *Axon*, analysis of the MSPB's expertise is based upon the nature of the claim, not the subject matter from which the dispute arose. As the Supreme Court held, structural constitutional questions concerning the legitimacy of administrative adjudication fall outside an agency's specialized expertise even when the underlying proceedings concern matters ordinarily entrusted to that agency. *Axon*, 598 U.S. at 194–96.

Defendants' argument is particularly untenable here because the MSPB is not challenged based on the general unconstitutionality of its review structure. It is also a direct participant in the Administration's overarching RIF process which violated Plaintiffs' constitutional and statutory rights. The FAC establishes that the Administration asserted control over the MSPB's legal positions and adjudicatory outcomes, directly interfered with its decision-making, and obtained the MSPB's participation in restricting Plaintiffs' ability to challenge the coordinated actions. FAC ¶¶ 91–109. The question is therefore not merely whether the MSPB is qualified to adjudicate RIF regulations. It is whether the MSPB can independently adjudicate the Administration's control over its own proceedings and its own conduct in protecting the violations under review.

The three *Thunder Basin* considerations thus converge. Subsequent appellate review cannot undo the injury inflicted by compelled participation in an Administration-controlled process that obstructs Plaintiffs' ability to establish their claims. The constitutional challenge to the MSPB's independence and affirmative participation is collateral to the individual RIF

determinations that the CSRA ordinarily channels. And the MSPB's personnel expertise does not extend to independent adjudication of its own constitutional subordination and misconduct. Defendants' motion seeks to convert the CSRA from a statutory system intended to protect the rights of federal employees into a shield for the Administration's coordinated deprivation of their constitutional rights. Through the CSRA, Congress established an independent MSPB to review personnel actions, not an Administration-controlled institution through which unlawful removals could be perpetuated and insulated from Article III scrutiny. *Thunder Basin* does not require this Court to embrace that arrangement.

4. Defendants' remaining authorities are not to the contrary.

Defendants cite numerous authorities for the proposition that federal employees ordinarily cannot circumvent the CSRA by repackaging personnel disputes as constitutional, statutory, or other claims. They do not establish that Congress authorized the Administration to control the institution charged with reviewing its personnel actions, enlist that institution in perpetuating constitutional violations, and then invoke the CSRA to prevent independent judicial scrutiny of those actions.

In *United States v. Fausto*, 484 U.S. 439 (1988) , the Supreme Court enforced Congress's deliberate allocation of remedies within the CSRA, rejecting an effort to obtain judicial review of a personnel action outside the statutory scheme. *Fausto* establishes the importance of the remedial structure Congress enacted. It does not resolve a constitutional challenge to the Administration's destruction of the independence of the adjudicatory institution Congress created to administer that structure. The distinction is not whether the CSRA is comprehensive. It is whether the claims presented fall within the review process Congress intended to establish. That is the inquiry the Supreme Court subsequently applied in *Thunder Basin*, *Elgin*, and *Axon*.

The Fourth Circuit's decisions in *Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000) and *Pinar v. Dole*, 747 F.2d 899 (4th Cir. 1984), likewise prevent employees from circumventing the CSRA by asserting alternative claims arising from personnel actions. In *Hall*, the Fourth Circuit held that the CSRA precluded Fifth Amendment *Bivens* and 42 U.S.C. § 1985(1) conspiracy claims arising from federal employment decisions. Plaintiffs do not dispute that principle. But the constitutional violations here extend beyond the personnel actions themselves. Defendants directed the unlawful separations and then brought the MSPB under the Administration's control to perpetuate those violations and obstruct independent review. The MSPB's affirmative participation is part of the conduct challenged, not simply the administrative setting in which Plaintiffs seek to reverse their removals.

Defendants' reliance on *Filebark v. United States Department of Transportation*, 555 F.3d 1009 (D.C. Cir. 2009), is similarly misplaced. *Filebark* concerned an FAA pay dispute in which air traffic controllers sought to use the APA to obtain judicial review unavailable through the federal employment remedial scheme. It prevents employees from using the APA to obtain an alternative avenue of review for personnel decisions governed by that scheme. But the FAC does not simply invoke the APA to obtain a second review of individual RIF determinations. It identifies Administration decisions directing the manner, scope, and implementation of the coordinated RIFs, including actions by OMB, OPM, and DOGE that employing agencies were required to carry out. FAC ¶¶ 141–147. Those actions also establish the central direction and control underlying Plaintiffs' constitutional claims. Whether particular agency actions satisfy the APA's requirements presents questions addressed separately under Count IV; *Filebark* does not dispose of the constitutional challenge to the Administration's control and use of the MSPB.

The Supreme Court's subsequent decisions in *Free Enterprise* and *Axon* foreclose treating the existence of a comprehensive administrative scheme as the end of the jurisdictional

inquiry. The Court must determine whether the scheme encompasses the constitutional injury actually presented. Here, that injury includes the Administration's control of the MSPB and the MSPB's affirmative participation in preventing Plaintiffs from exposing and obtaining independent adjudication of the underlying violations. None of Defendants' remaining CSRA authorities answer that claim. Their jurisdictional argument therefore fails.

5. <u>The APA claims are not precluded by the CSRA.</u>

Defendants seek dismissal of Count IV by treating the APA claim as another attempt to obtain district court review of individual RIF decisions. That characterization again disregards the actual actions challenged and Defendants' role in the coordinated multi-agency RIFs. The FAC identifies decisions by OPM, OMB, DOGE, and other Administration actors that prescribed the manner in which implementing agencies would carry out the removals, identified specific employees and offices to be eliminated, and overrode agency decisions inconsistent with those outcomes. FAC ¶¶ 110–116, 141–147. Those directives were not incidental communications preceding independent agency personnel decisions. They were the means through which Defendants imposed and executed the RIFs.

Defendants cannot defeat the APA claim simply by observing that the challenged actions ultimately resulted in employment separations. The FAC establishes that central Administration personnel exercised decision-making authority over the employing agencies, imposed requirements governing implementation, and rejected agency efforts to retain or reassign employees. Those actions must be evaluated according to their substance and legal effect, rather than recast as "recommendations" to violate the law that the employing agencies independently and coincidentally chose to follow.

a. *The FAC identifies operative Administration decisions, not merely a general workforce policy.*

The FAC identifies decisions by central Administration personnel that directed the challenged RIFs across multiple agencies, prescribed mandatory procedures for their implementation, and overrode employing agencies' decisions to retain or reassign employees. Those were not general policy statements or recommendations that agencies remained free to disregard. They were operative decisions imposed on employing agencies and carried out through the resulting separations.

The implementation of those directives supplies the factual context connecting those decisions; it is not itself presented as a single, undifferentiated action by the implementing agency. Count IV challenges the decisions through which Defendants directed and implemented the RIFs, rather than seeking wholesale review of the Administration's workforce policies. The fact that those decisions were implemented through personnel actions by employing agencies does not transform them into independent personnel determinations or eliminate their significance under the APA.

*b. The CSRA does not transform actions by central Administration personnel who cannot be brought before the MSPB into unreviewable personnel determinations.*

Defendants invoke the CSRA to argue that Plaintiffs cannot challenge the central Administration decisions under the APA because those decisions resulted in personnel actions. That argument ignores the distinction between the actions challenged and the limited scope of the proceedings Defendants insist are exclusive. The FAC establishes that OPM, OMB, DOGE, and other Administration personnel centrally directed the separations, dictated their implementation, and overrode employing agencies' decisions inconsistent with the Administration's predetermined objectives. The employing agencies carried out those directives,

but they did not independently make the decisions Plaintiffs challenge. FAC ¶¶ 110–116, 141–147.

The Administration personnel who directed and controlled the RIFs cannot be made defendants in Plaintiffs' MSPB appeals. Those proceedings are limited to the employing agencies that implemented the central decisions. Although the MSPB may consider evidence concerning the Administration's central conduct when determining the legality of a particular separation, it cannot adjudicate claims against those actors or grant relief directly addressing their responsibility. The FAC does not merely name additional defendants in a challenge to an individual employment action in order to evade the CSRA. Plaintiffs challenge decisions imposed across multiple agencies by officials who cannot be brought before the tribunal Defendants insist must provide the exclusive remedy.

Defendants' reliance on *Filebark v. United States Department of Transportation*, 555 F.3d 1009 (D.C. Cir. 2009), does not resolve that distinction. *Filebark* prevents federal employees from using the APA to obtain alternative judicial review of personnel disputes governed by the federal employment remedial scheme. Plaintiffs do not seek a second review of individual RIF determinations. They challenge the operative decisions of central Administration personnel who directed those determinations, while the same decisions establish the coordinated actions underlying their constitutional claims.

Section 704 further requires that no other adequate remedy be available in a court. 5 U.S.C. § 704; *Bowen v. Massachusetts*, 487 U.S. 879, 903–08 (1988). Defendants identify MSPB appeals against the employing agencies, followed by Federal Circuit review, as an adequate remedy. Those proceedings may determine whether particular separations violated federal personnel laws and may provide remedies for those separations. However, they do not provide a means to adjudicate claims against the central Administration personnel who imposed the

challenged decisions or obtain relief directly addressing those central decisions. The availability of relief against implementing agencies does not establish an adequate judicial remedy for the distinct agency actions challenged in Count IV.

The FAC further establishes that both the Administration's control of the MSPB and the MSPB's affirmative participation have obstructed Plaintiffs' efforts to obtain evidence concerning these central decisions. FAC ¶¶ 91–109. Defendants thus seek to confine Plaintiffs to proceedings in which the responsible Administration personnel cannot be brought before the adjudicator, evidence of their conduct has been obstructed, and subsequent judicial review depends on the record developed through insufficient proceedings. The CSRA's provisions for reviewing individual personnel actions do not establish that Congress intended to insulate the central Administration decisions from judicial scrutiny under those circumstances. Defendants' attempt to collapse those decisions into ordinary RIF determinations does not justify dismissal of Count IV.

6. <u>The Privacy Act claims are not precluded by the CSRA.</u>

In addition to the reasons set forth above, the Privacy Act claims specifically are not precluded by the CSRA. Congress set forth separate remedies in the Privacy Act that Defendants would prefer to read out of the statute, arguing that the CSRA erases remedies available through the Privacy Act in federal district court even though the CSRA does not mention the Privacy Act or its remedies anywhere in the text. *See* MTD at 24-26. However, courts are "not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up), and this Court should give meaning and effect to both statutory schemes. Congress has vested the district court with jurisdiction over precisely these claims; *Elgin* does not divest that Congressional grant of

authority. *See* 5 U.S.C. § 552a(g)(1) ("[T]he district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.").

Although the Fourth Circuit has never addressed the issue in a published decision, Defendants' theory was rejected by the D.C. Circuit in *Hubbard v. U.S. E.P.A. Adm'r*, 809 F.2d 1 (D.C. Cir. 1986) , where the court concluded that "the Privacy Act permits a federal job applicant to recover damages for an adverse personnel action actually caused by an inaccurate or incomplete record." *Id*. at 5; *see also Kleiman v. Department of Energy,* 956 F.2d 335, 339 n.5 (D.C. Cir. 1992) ("[N]othing we say today should be taken to cast doubt on Hubbard's statement that 'the Privacy Act permits a federal job applicant to recover damages for an adverse personnel action actually caused by an inaccurate or incomplete record.'"). Although both D.C. Circuit cases ultimately rejected Privacy Act claims, they did so because each plaintiff had failed to make out a necessary factual element—not because the courts lacked jurisdiction under the CSRA. *See Hubbard*, 809 F.2d at 5; *Kleiman*, 956 F.2d at 338. And a recent D.D.C. case denied a motion to dismiss on similar grounds. *See Jackson v. Kennedy*, No. CV 25-1750 (BAH), 2026 WL 172440 (D.D.C. Jan. 22, 2026); *see also id*. at *8 (collecting cases applying these principles). The district court in *Jackson* reasoned in part that, unlike the constitutional claims at issue in *Elgin*, the Privacy Act contained a detailed set of requirements and remedies that must also be given effect, and that a finding of preclusion would eliminate any effective remedy for these statutory violations. *Id*. at *9. The court emphasized that "the Privacy Act contains its own express grant of jurisdiction to the federal courts . . . which also weighs strongly against the applicability of CSRA preclusion." *Id*. at *10.

The *Thunder Basin* factors likewise favor jurisdiction over the Privacy Act claims. As the *Jackson* court reasoned, "Privacy Act claims cannot be brought before the MSPB, with the result that adoption of defendants' argument would effectively eliminate any forum to hear plaintiffs'

Privacy Act claims." *Id*. at *9. Moreover, the data integrity and systems permissions issues presented in a Privacy Act claim are not within any purported expertise of the MSPB; in fact, many of the issues presented in the Privacy Act claim, such as improper disclosures and reputational damage, are collateral to the issues at the MSPB.

Defendants rely primarily on a recent decision from this district, which concluded that the Privacy Act claims articulated there were precluded. *See Goodman v. Lutnick*, No. 8:25-CV-02097-LKG, 2026 WL 2858591, at *7 (D. Md. Sept. 23, 2026). To the extent the court held that any challenge to a federal personnel action must be brought only in the MSPB, that is inconsistent with plain language of the statute and intent of Congress. Neither the Supreme Court nor the Fourth Circuit have ever read CSRA preclusion so broadly. As the *Jackson* court opined, a careful, statute-specific analysis allows issue-specific statutes like the Privacy Act to be read consistently with the CSRA. *See* 2026 WL 172440, at *10. Defendants have not attempted this analysis and cannot read the Privacy Act remedies out of existence.

**B. The FAC States A Claim Against The MSPB For Its Affirmative Participation In The Continuing Constitutional Violations.**

Defendants seek dismissal of the MSPB under Rule 12(b)(6) because the MSPB did not make the decisions to separate Plaintiffs from federal service. ECF No. 50 at 30–31. That argument does not address the claim pleaded. Plaintiffs do not contend that the MSPB issued their RIF notices or initially selected them for separation. They contend that the MSPB is participating in the coordinated centrally-directed RIFs by perpetuating the resulting constitutional violations and violating Plaintiffs' Due Process rights by obstructing Plaintiffs' efforts to obtain independent adjudication of them. The fact that other Defendants carried out the initial removals does not absolve the MSPB of responsibility for its own subsequent conduct.

Here, the FAC identifies the Administration's actions to bring the MSPB under its control, including removal of its Chair, assertion of authority over its operations and legal positions, and interference with its adjudicatory decisions. FAC ¶¶ 91–99. It also identifies the MSPB's affirmative conduct, including its failure to disclose or respond to challenges to its independence, participation in decisions restricting Plaintiffs' ability to pursue their appeals, and obstruction of efforts to obtain evidence concerning the Administration officials who directed and controlled the separations. FAC ¶¶ 100–109. These are not speculative objections to how the MSPB might decide Plaintiffs' appeals. They are actions already taken that continue to injure Plaintiffs.

Count II expressly challenges the resulting deprivation of constitutionally required post-deprivation process. FAC ¶¶ 128–134. Plaintiffs have been compelled to pursue their claims before an institution whose independence has been eliminated, whose conduct restricts their ability to establish the coordinated actions, and whose proceedings perpetuate the constitutional injuries arising from their separations. The FAC further establishes that the administrative record developed through those proceedings cannot support meaningful independent judicial scrutiny of the conduct Plaintiffs challenge. FAC ¶¶ 131–134.

As set out in the FAC, the MSPB, through its Board Members and other employees, is an active participant in this post-deprivation denial of Plaintiffs' Due Process rights. *Id.* ¶¶ 91-109. Defendants' argument would permit the MSPB to avoid responsibility for its actions with regard to those violations because it did not participate in the initial decision to enact government-wide RIFs or in the implementation of individual RIF notices. But the constitutional injury for which Plaintiffs seek relief against the MSPB arises from the MSPB's own post-separation conduct and the continuing deprivation of constitutionally required review. The FAC therefore states a claim against the MSPB based on what it has done, not on decisions made by other Defendants.

Defendants' motion does not address the MSPB's conduct identified in FAC ¶¶ 100–109 or the post-deprivation constitutional violations pleaded in Count II. Instead, it creates a claim that the MSPB made the initial separation decisions, observes that it did not, and seeks dismissal on that basis. Because Plaintiffs' actual claim rests on the MSPB's affirmative participation in continuing constitutional violations, that argument provides no basis for dismissal under Rule 12(b)(6).

**C. Count V Plausibly States A Claim Under The Privacy Act.**

Defendants argue that Plaintiffs have failed to plead that their injuries were caused by the Privacy Act violation. MTD at 29-30. Accepting the allegations in the FAC as true, Defendants systematically failed to maintain adequate records about the Plaintiffs, their positions, offices, and performance records, and intentionally used those false and unverified records to effectuate predetermined employment outcomes. FAC paras. 110-20, 148-57.[7] As set forth in greater detail *supra*, the Privacy Act requires agencies to maintain records used in making determinations about individuals with the accuracy, relevance, timeliness, and completeness reasonably necessary to assure fairness. 5 U.S.C. § 552a(e)(5). Section 552a(g)(1)(C) authorizes a civil action when an agency fails to comply with that requirement and consequently makes an adverse determination about an individual. Section 552a(g)(1)(D) separately authorizes an action for other violations of the Act that cause an adverse effect. Count V expressly invokes both provisions. FAC ¶¶ 148–157.

Defendants do not challenge the adequacy of the pleading on any of these elements other than causation, arguing that even if there were willful errors in the records relied upon in the RIF,

---

[7] Defendants argue that Plaintiffs failed to exhaust the Privacy Act's administrative record-amendment process under 5 U.S.C. § 552a(g)(1)(A) as would be required to seek amendment of records under the Privacy Act. ECF No. 50 at 30. Plaintiffs did not bring an amendment of records claim under the Privacy Act.

and willful improper disclosures of private information, those errors might not have caused the adverse events and damages. MTD, at 30. Construing the allegations in the light most favorable to Plaintiffs, however, *see Lucero v. Early,* 873 F.3d 466 at 469 (4th Cir. 2017) , Plaintiffs have pled sufficient factual matter to conclude that the errors caused the adverse effects described in the FAC.

The FAC expressly alleges systemic violations and that the records relied upon and used to implement the RIF were rife with errors. *See, e.g.*, FAC ¶ 111 (errors in grouping, position); ¶ 112 (errors caused by use of AI-generated information); ¶ 114 (specific examples). The FAC also alleges that Defendants used and disclosed records without complying with the Act's requirements, including disclosures from systems of records that were neither authorized routine uses nor made with Plaintiffs' written consent. FAC ¶¶ 113, 154. And the FAC offers multiple specific examples of errors that led directly to the RIF actions and reputational injuries in question. *See, e.g.*, ¶¶ 114-15 (multiple specific examples where errors led to adverse outcomes). That is more than sufficient at this stage. *See also Lowy v. Daniel Def.*, LLC, 167 F.4th 175, 199 (4th Cir. 2026) ("allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible.") (citation omitted).

Defendants rely principally on *Goodman v. Lutnick*, Civil Action 8:25-cv-02097-LKG, 2026 WL 2858591 (D. Md. Sep 23, 2026) , and *Thompson v. Dep't of State*, 400 F. Supp. 2d 1 (D.D.C. 2005) to argue for what appears to be a heightened pleading standard for causation, and that alternative explanations are sufficient to invalidate the explanation here. Neither case supports such weight, and neither finds that additional unlawful motivations undermine an otherwise adequate pleading of causation. In *Goodman*, for example, the court found that the

pleading did not sufficiently connect the asserted inaccuracies in personnel records to the challenged terminations. *Id.* at *10; *see also Thompson,* 400 F. Supp. 2d at 19 (requiring a causal connection between a recordkeeping violation and an adverse determination). The *Goodman* court considered the plaintiffs' attribution of their terminations to hostility toward federal employees, but that reasoning does not establish that an agency cannot pursue a politically motivated objective by using inaccurate records to accomplish it. The demonstrated animus tends to support the willfulness element of Plaintiffs' claims here; it does not undermine the causation element. The FAC establishes that Defendants pursued predetermined employment outcomes through a process that relied on inaccurate, incomplete, manipulated, and unverified records. The Administration's reasons for selecting employees for removal do not negate its use of those inaccurate records to implement the decisions, determine employees' treatment, justify the outcomes, and conceal the violations. Political motivation and unlawful recordkeeping are coordinating, not competing, explanations. The relevant question remains whether the agency's failure to maintain accurate records resulted in an adverse determination, not whether the agency also had an unlawful reason for seeking that outcome. At most, Defendants have argued that there may be a factual dispute about whether the agency could have found some other way to accomplish the same outcome with proper records, but that dispute is not the proper subject of a motion to dismiss.[8]

Defendants' motion to dismiss Count V should be denied.

---

[8] In any event, even if Defendants were correct that animus towards the civil service were somehow inconsistent with the keeping of inaccurate records as a cause of the injuries, Plaintiffs would be entitled to plead alternative theories of causation. *See, e.g., Ingleson v. Burlington Med. Supplies, Inc*., 141 F. Supp. 3d 579, 584 (E.D. Va. 2015).

**D. Defendants' Arguments Do Not Warrant Dismissal Of Counts VI And VII.**

1. Count VI challenges the implementation of rescinded RIF actions under the APA, not merely violations of spending statutes.

Defendants seek dismissal of Count VI on the ground that neither the Anti-Deficiency Act nor the Continuing Resolution creates an independent private right of action. ECF No. 50 at 31. They rely on *Sorenson v. Bureau of Land Management*, 2026 WL 1893652 (D. Nev. July 1, 2026), and *Thurston v. United States*, 696 F. Supp. 680 (D.D.C. 1988). But Count VI expressly invokes the APA, a claim Defendants' argument does not address.

The FAC establishes that the Department of State separated Plaintiffs Sheffler, House, Hicks, and Murphy during the October 2025 lapse in appropriations; that State subsequently reinstated them under court order following enactment of the Continuing Resolution; and that OMB, OPM, and DOJ directed State to construe the legislation in a manner that unlawfully narrowed its protections. FAC ¶¶ 159–160. Acting on those directions, State gave continuing force and effect to RIF actions Congress had rescinded. In May 2026, State again separated Sheffler, House, Murphy, and other affected employees without initiating new RIF actions or issuing new RIF notices. FAC ¶ 161.

These facts identify affirmative agency conduct that Plaintiffs challenge under the APA. The claim is not simply that Plaintiffs possess an implied private cause of action to enforce the Anti-Deficiency Act or the Continuing Resolution. It is that Defendants implemented and gave legal effect to rescinded RIF actions contrary to the governing statute and then carried out additional separations without the procedures required for new RIF actions.

The absence of an independent private right of action under a substantive statute does not dispose of an APA claim challenging agency action as contrary to that statute. The APA claim remains subject to its own requirements, including reviewability and the CSRA issues addressed

above. But Defendants cannot obtain dismissal of the entire count by addressing only the existence of an implied cause of action under the spending statutes while ignoring the APA claim actually pleaded.

Defendants also object to Count VI's references to other similarly situated employees because Plaintiffs have not brought a class action. ECF No. 50 at 31. Those references describe the scope of the challenged conduct. Count VI identifies named Plaintiffs who were subjected to that conduct and seek relief for their own injuries. FAC ¶¶ 159–161. Whether relief may extend to nonparties or other Plaintiffs is a separate question; it does not justify dismissal of the named Plaintiffs' claims.

2. Count VII seeks declaratory relief for the substantive violations pleaded in Counts I through VI.

Defendants correctly observe that the Declaratory Judgment Act does not create an independent substantive cause of action. *See* Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011) . But Count VII does not depend on such a cause of action. It incorporates the preceding counts and seeks declaratory relief for the constitutional and statutory violations established there. FAC ¶¶ 162–165.

Whether Count VII is maintained as a separately numbered count does not determine the availability of declaratory relief on Plaintiffs' substantive claims. Defendants' observation that the Act creates no independent cause of action therefore supplies no basis to eliminate that relief if those claims survive.

**VI. CONCLUSION**

Defendants' motion rests on a characterization of this case that the FAC does not support. Plaintiffs do not merely challenge individual RIF determinations. They challenge a coordinated, centralized undertaking implemented across multiple agencies that deprived them of their

constitutional rights and then institutionalized those violations through Administration control of the MSPB, the very institution Congress established to provide independent review.

The CSRA does not require an Article III court to enforce that arrangement. Nor do Defendants' remaining arguments dispose of the APA, Privacy Act, and other claims actually pleaded.

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss the First Amended Complaint.

Dated: November 9, 2026
Respectfully submitted,

*/s/ A. Gregory Pinto*

A. Gregory Pinto (*pro hac vice*)

Pamela J. Hicks (*pro hac vice*)

DC Law Collective, PLLC
1629 K St., NW, Suite 300
Washington, DC 20006
Tel: (202) 599-8459; Fax: (202) 318-0271
gregpinto@dclawcollective.com

*/s/ Jocelyn E. Skinner*

Jocelyn (Josie) E. Skinner

Jill Siegelbaum (*pro hac vice*)

SLIGO LAW GROUP, PLLC
1717 K St. NW, Suite 900
Washington, DC 20006
Tel: (202) 888-2084
josie@sligolawgroup.com

*/s/ Amy E. Powell*

Amy E. Powell (*pro hac vice*)
Lawyers for Good Government
1319 F St. NW, Suite 301, PMB
181
Washington, DC 20004
Tel: (646) 246-4633
Email: amy@lawyersforgoodgovernment.org

***Counsel for Plaintiffs***